JAMES R. HAWKINS (SBN 192925)
  james@jameshawkinsaplc.com
MALTE L. L. FARNAES (SBN 222608)
  malte@jameshawkinsaplc.com
CHRISTINA M. LUCIO (SBN 253677)
  christina@jameshawkinsaplc.com
MITCHELL J. MURRAY (SBN 285691)
  mitchell@jameshawkinsaplc.com
**JAMES HAWKINS, APLC**
9880 Research Drive, Suite 200
Irvine, CA 92618
Tel.: (949) 387-7200
Fax: (949) 387-6676

Attorneys for Plaintiff RACHAEL SHAY,
on behalf of herself and all others similarly situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL SHAY, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>v.<br><br>APPLE INC., a Delaware corporation; APPLE VALUE SERVICES, LLC, a Virginia limited liability corporation; and DOES 1 through 10, inclusive,<br><br>                          Defendants. | Case No. 3:20-cv-1629-JO-BLM<br><br>**CLASS ACTION**<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:        January 11, 2023<br>Time:       9:30 a.m.<br>Judge:      Hon. Jinsook Ohta<br>Courtroom: 4C, 4th Floor<br><br>Complaint Filed:  May 28, 2020<br>Removal Filed:   August 21, 2020<br>Trial Date:       None Set |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**Table of Contents**

I.     INTRODUCTION…………………………………………..……………1

II.    SUMMARY OF COMMON EVIDENCE………………………………..2

       A.    Ms. Shay's Experience in Purchasing a Compromised iTunes Gift Card Is Typical of the Putative Class………………………………………2

       B.    Numerous Customers Complain That Their Gift Cards Were Redeemed Prior to Their Redemption Attempt………………………………4

       C.    Apple's Design and Sale of iTunes Gift Cards…………………………4

       D.    Apple's Terms and Conditions for Gift Cards…………………………6

       E.    Apple Keeps Extensive Records Regarding Each Gift Card…………...7

       F.    Apple's No Refund Policy for Prior Redeemed Gift Cards……………8

III.   LEGAL ARGUMENT SUPPORTING CLASS CERTIFICATION…………8

       A.    Class Certification Should Be Granted…………………………………8

       B.    Plaintiff has Standing to Represent a Class of Out-of-State Consumers…………………………………………………………9

       C.    The Class is Adequately Defined and Ascertainable…………………10

       D.    The Requirements of Fed. R. Civ. P. 23 (a) are Met…………………11

             1.   The Proposed Nationwide Class and California Class Are So Numerous that Joinder is Impracticable………………………11

             2.   Plaintiff's Claims Raise Issues Common to the Class………..13

             3.   Plaintiff's Claims are Typical of the Class……………………15

             4.   Plaintiff and Her Counsel Will Fairly and Adequately Protect the Interests of the Class………………………………………17

       E.    The Predominance Requirement of Rule 23(b)(3) is Met……………..18

             1.   Common Questions of Fact or Law Predominate………………18

             2.   Common Evidence Will Prove Plaintiff's Remedies……………22

             3.   A Class Action is Superior to Other Methods of Adjudication……23

i

F.   Certification of an Issue Class Would Advance this Litigation……….24

ii

# Table of Authorities

**CASES**

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D.Cal. 2013)..............................................11

*Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708 (9th Cir. 2010)............................8

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975).....................................................23

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)...............................10

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171 (9th Cir. 1990)..............................................................................................................................14

*Chavez v. Blue Sky Natural Bev.*, 268 F.R.D. 365 (N.D. Cal. 2010) ...................19, 22

*Collins v. eMachines, Inc.*, 202 Cal.App.4th 249 (2011).........................................25

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)..............................................13, 18

*Delarosa v. Boiron, Inc.*, 275 F.R.D. at 594 ............................................................24

*Doe 1 v. AOL LLC,* 719 F. Supp. 2d 1102 (N.D. Cal. 2010) .....................................22

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011).................................9

*Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n. 5 (9th Cir. 1977) ........................................................................................................................12

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982)............................................13, 17

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982) ......................................................17

*Gusman v. Comcast Corp.,* 298 F.R.D. 592 (S.D. Cal. 2014) ...................................13

*Gutierrez v. Carmax Auto Superstores California*, 19 Cal.App.5th 1234 (2018) .....25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................16, 19, 23

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)...................................16

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) .............12

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ............................................9

*In re Brazilian Blowout Litig.*, No. CV 10-8452-JFW (MANx), 2011 WL 10962891 (C.D. Cal. Apr. 12, 2011) ...............................................................................21

*In re ConAgra Foods, Inc.*, 90 F. Supp 3d 919 (C.D. Cal. 2015) ........................10, 20

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*In re Emulex Corp.*, 210 F.R.D. 717 (C.D. Cal. 2002) ............................................... 18

*In re Facebook, Inc., PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012) ............................................................................................................................... 12

*In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011) ............................................... 17

*In re Google Referrer Header Privacy Litigation*, 869 F.3d 737 (9th Cir. 2017) ..... 23

*In re Hitachi Telev. Optical Block Cases*, No. 08cv1746 DMS (LS), 2011 U.S. Dist. LEXIS 135 (S.D. Cal. Jan. 3, 2011) ....................................................................... 19

*In re Morning Song Bird Food Litigation,* 320 F.R.D. 540 (S.D. Cal. 2017) ............ 11

*In re Tableware Antitrust Litig.,* 241 F.R.D. 644 (N.D. Cal. 2007) .......................... 13

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) ............................................ 19

*Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164 (N.D. Cal. 2015) ........... 24

*Kesler v. IKEA U.S., Inc.*, 2008 U.S. Dist. LEXIS 97555 (C.D. Cal. Feb. 4, 2008).. 17

*Krueger v. Wyeth, Inc.*, 310 F.R.D 468 (S.D. Cal. 2015) .......................................... 10

*Kwikset v. Sup. Ct.*, 51 Cal. 4th 310 (2011) ................................................................ 9

*McCabe v. Crawford & Co.*, 210 F.R.D. 631(N.D.Ill. 2002) .................................... 13

*Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634 (2009) ................................................ 9

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006) ........... 23

*Pecover v. Elec. Arts Inc.*, 2010 U.S. Dist. LEXIS 140632  (N.D. Cal. Dec. 21, 2010) ............................................................................................................................... 16

*Postpichal v. Cricket Wireless, LLC*, 2021 U.S. Dist. LEXIS 146166 (N.D. Cal. Aug. 4, 2021) ................................................................................................................. 14

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .................. 14

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) .................................................. 16

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ................................... 9

*Soto v. Diakon Logistics (Delaware), Inc.,* No. 08-CV-33-L WMC, 2013 WL 4500693 (S.D. Cal. Aug. 21, 2013) ...................................................................... 24

*Stearns v. Ticketmaster*, 655 F.3d 1013 (9th Cir. 2011) ...................................... 14, 20

*Tait v. BSH Home Appliances, Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ................. 20

iii

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL–CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010)..8

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) .............................24

*Valenzuela v. Union Pac. R.R. Co.*, 2017 WL 1398593 (D. Ariz. Apr. 19, 2017) ....24

*Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935 (9th Cir. 2009) ..................24

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................8, 13, 14, 16

*Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 U.S. Dist. LEXIS 173789 (N.D. Cal. Dec. 15, 2014)...........................................................20

*Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 233-34 (C.D. Cal. 2003) ...........................................................................................................12, 22

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)..................................20

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ...13, 19, 23

*World Travel, Inc. v. AMR Corp.,* 218 F.R.D. 223 (C.D. Cal. 2003) ..................12, 22

**STATUTES**

Cal. Civ. Code § 1770 ................................................................................19, 21, 24

Cal. Civ. Code §1770(a)(5)........................................................................passim

Civ. Code § 1780.......................................................................................22

**RULES**

Fed. R. Civ. P. 23 ......................................................................................passim

**TREATISES**

Newberg on Class Actions ..........................................................................22, 23

**JURY INSTRUCTIONS**

CACI No. 4700 ..........................................................................................25

iv

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I.   INTRODUCTION

This case about Defendant Apple, Inc.'s ("Apple") marketing of compromised App Store & iTunes gift cards ("iTunes gift cards") to unwitting consumers as original, valuable, and secure. Apple leads consumers to believe that the iTunes gift cards they purchased confer a right to store credit on Apple's iTunes Store and App Store (collectively, the "App Store"). However, when they attempt to redeem the gift card they are surprised to discover that the gift card has already been redeemed even though *they* scratched off the PIN code sticker. For some consumers, like Plaintiff Rachael Shay, the gift card is redeemed by a third party ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. To add insult to injury, Apple asks consumers to provide proof of purchase ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that its policy is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As one consumer stated, "Apple kept me on the phone for an hour and a half knowing what the result would be. They do nothing." In the end, Apple keeps the consumer's money, and the consumer is left with nothing.

The common evidence shows that Apple is aware ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In this case, Apple sold Ms. Shay an iTunes gift card that had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *before* Ms. Shay purchased it. When Ms. Shay selected the iTunes gift card from the hanger at Walmart on April 3, 2020, she had no way to know that there were ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Despite Apple's exclusive knowledge, Apple failed to warn Ms. Shay and other consumers of ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Instead, Apple continued to represent to consumers that that their gift cards were secure including those that Apple knew had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, when the gift cards were subject to unauthorized redemption as part of this scheme, Apple refused to honor its obligation to provide the promised credit to the consumer or refund the sums associated with these gift cards. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

████████████████████████████████████████████████ Apple's failure to take measures to protect or warn consumers is nothing more than corporate greed.

As discussed below, the Court should grant class certification because Plaintiff has met all the requirements of Rule 23(a), Rule 23(b)(3), and Rule 23(c)(4).

## II.   SUMMARY OF COMMON EVIDENCE

### A.   Ms. Shay's Experience in Purchasing a Compromised iTunes Gift Card Is Typical of the Putative Class

On April 3, 2020, Ms. Shay purchased a typical $50 App Store & iTunes gift card from Walmart in Encinitas, California as a gift for her son. (Shay Decl. ¶ 2; Exs. 1 and 2 [1]). Ms. Shay understood from the gift card packaging and labelling that the gift card entitled her (or her son) to $50 of store credit on the App Store.[2] (*Id*. ¶ 4). Ms. Shay stored the gift card in a secure location in her home before surprising her son with the gift card for his birthday on April 16, 2020. (*Id*. ¶ 2). Ms. Shay did not lose, misplace, or allow anyone else to use the gift card. (*Id*.).

When her son attempted to redeem the gift card, he received a message that the gift card had already been redeemed. (*Id*. ¶ 5). Ms. Shay and her son made multiple attempts to redeem the gift card using various devices, each with the same result. (*Id*.). Ms. Shay then contacted Apple for assistance with redeeming the card. (*Id*. ¶ 7). Between April 25, 2020 and May 6, 2020, Ms. Shay, determined to resolve the issue and believing that Apple would not make her bear the loss of the gift card, communicated extensively with Apple to resolve the problem. (Id. ¶¶ 7-17; Ex. 3). Apple provided Ms. Shay with instructions on how to look up the gift card balance on her account and requested that she provide photos of the gift card. (*Id*.). Eventually, Ms. Shay was informed that the gift card was redeemed by another account on April 3, 2020 (the same day she purchased the card). Apple would not provide any additional information about the owner of the account that redeemed the code, other than it was

---

[1] All exhibits are attached to the Compendium of Evidence.

[2] As discussed *infra*, Ms. Shay's understanding of the representation is common amongst other consumers of iTunes gift cards.

2

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

not related to Ms. Shay or her son. (*Id*.). Apple informed Ms. Shay that there was nothing else they could do for her, that her case was closed, any further contact would go unanswered, and that she should contact Walmart instead. (*Id*.).

Ms. Shay learned for the first time in discovery that the gift card she purchased on April 3, 2020 was ████████████████████████████ Apple's records show there were ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████ ████████

██████████████████████████████████████

███████████████████████ ██████████████████

████████████████████████████████████████

████████ When Ms. Shay contacted Apple, they feigned an investigation. However, it didn't matter what proof Ms. Shay, or any other consumer, provided because Apple has a company-wide policy ████████████████████████████

████████████████████████████

In short, Ms. Shay did everything right by protecting and using the gift card exactly as instructed and designed by Apple, and she still received no credit for her purchase. Her money and her son's gift were gone ████████████████

████████ Apple could have deactivated the gift card, disabled the Apple account, reversed the store credit, or refunded her store credit but Apple chose to do nothing. In the end, Ms. Shay, like thousands of other consumers, suffered the harm while Apple continued to collect millions of dollars from its sale of compromised gift cards.

---

[3] Apple objected to providing the Apple ID for the account that redeemed Plaintiff's gift card. Plaintiff intends to bring a motion to compel this information.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**B.    Numerous Customers Complain That Their Gift Cards Were Redeemed Prior to Their Redemption Attempt**

Apple produced approximately 1,300 heavily redacted records from its ███████████████████████████████████████ which it represented was a "statistically significant" number of records "potentially related to the type of gift card fraud alleged in the SAC" during the relevant period. (Lucio Decl. ¶ 12; Ex. 7 (complaint exemplars); Ex. 8; Ex. 17 at 171:13-17; Ex. 9, Responses to RFP Nos. 4, 10 and 19). ████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████     ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████    Frequently, consumers were caught in a game of a "hot potato" where neither Apple nor the retailer accepted responsibility for their loss. When exasperated consumers returned to Apple after their refund requests were also rejected by the retailer, Apple finally informed them of what Apple knew all along – ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████     Numerous consumers have complained about this phenomenon publicly. (*See*, Ex. 21; *see also*, Exs. 23-25).

**C.    Apple's Design and Sale of iTunes Gift Cards**

Apple advertised and sold "iTunes gift cards" for purchases on the App Store. (Dkt. No. 30[4], at ¶ 13). ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[4] Page numbers are based on the CM/ECF pagination

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████ iTunes gift cards are sold through third party retailers nationwide, such as Walmart. ███████████ From 2017 to June 2020, Apple represents that there were ████████████████████ of iTunes and Apple gift cards sold through third party retailers in the United States. ████████████████████████

The back of each iTunes gift card packaging states in red lettering: "Card cannot be used for payments outside of U.S. App Store or iTunes Store, including taxes." (Ex. 1). ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████ The backs of the gift cards include a warning: "Do not share your code with anyone you do not know." (Ex. 1). ██████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

5

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Before a gift card can be redeemed, however, the consumer must first register an account with Apple, called an "Apple ID." (Ex. 11; Ex. 16 at 97). To create an Apple ID, consumers must provide Apple with a valid email address, credit card or billing information, and their date of birth. (Ex. 12). Apple requires that all Apple ID accounts be verified with a telephone number, or email address associated with the Apple ID account. (Ex. 13). To redeem the activated gift card for store credit, Apple only requires the PIN code on the gift card. (Exs. 13, 14). Apple does not require consumers to provide any other documentation proving authenticity of the gift card before redemption. (*Id*.; Ex. 16 at 96:11-98:23).

### D. Apple's Terms and Conditions for Gift Cards

iTunes gift cards are subject to Terms and Conditions. A partial version appears on the back of the packaging sleeve attached to the gift cards. (Ex. 1). This partial version directs consumers to a web address containing the full terms and conditions – apple.com/us/go/legal/gc. (Ex. 15). There is also a reference to the website on the back of the gift card itself. (Ex. 1). The language on the gift card packaging sleeve states:

> **Terms and Conditions**
> Valid only on purchases made in the U.S. from Apple Media Services. Use requires an Apple ID and prior acceptance of license & usage terms. Not redeemable for cash, for resale, for shipments outside the U.S. & no refunds or exchanges (except as required by law). Data collection and use subject to Apple's Privacy Policy; see apple.com/privacy. Neither Apple nor Issuer is responsible for any loss or damage resulting from lost or stolen cards or for use without permission. Void where prohibited. Terms apply; see apple.com/us/go/legal/gc. App Store and iTunes gift cards are issued and managed by Apple Value Services ("Issuer"). © 2019 Apple Inc. all rights reserved.

The Terms and Conditions on Apple's website includes the following language:

6

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

You agree to not use Store Credit in any manner that is misleading, deceptive, unfair, or otherwise harmful to Issuer, Apple or its customers. We reserve the right, without notice to you, to void or deactivate Store Credit (including a portion of your Account balance) without a refund, suspend or terminate customer accounts, suspend or terminate the ability to use the Services, cancel or limit orders and bill alternative forms of payment if we suspect Store Credit was obtained, used, or applied to an Apple ID fraudulently, unlawfully, or otherwise in violation of these terms and conditions.

The Terms and Conditions also states that California law applies:

**Governing Law** Except [for residents of certain foreign countries], this Agreement and the relationship between you and Issuer shall be governed by the laws of the State of California, excluding its conflict of laws provisions. You and Issuer agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, to resolve any dispute or claim arising from this Agreement.

(Ex. 15). Therefore, when consumers purchase an iTunes gift card, Apple contends they become bound by the terms on the packaging, which include the choice-of-law-clause selecting California law. (Dkt. No 6 at p. 19).

## E. Apple Keeps Extensive Records Regarding Each Gift Card

7

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

[REDACTED]

## III.   LEGAL ARGUMENT SUPPORTING CLASS CERTIFICATION

### A.   Class Certification Should Be Granted

As the foregoing facts demonstrate, the merits strongly support Plaintiff's claims. However, the only issue on this motion is whether Plaintiff's claims can be adjudicated on a class-wide basis.  The Court has broad discretion to grant class certification. *See Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 712 (9th Cir. 2010).  Here, each of the requirements of Rule 23(a), Rule 23(b)(3), and Rule 23(c)(4) are met.  First, Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (internal quotation marks and citations omitted). Second, "[w]here a putative class satisfies all four requirements of 23(a), it still must meet at least one of the three additional requirements outlined in 23(b)." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL–CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

On a motion for class certification, the Court is required to "examine the merits of the underlying claim . . . only inasmuch as it must determine whether common

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 n. 8 (9th Cir. 2011) (citations omitted).  The "evidentiary proof" a plaintiff submits in support of class certification need not be admissible evidence.  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018).

### B.    Plaintiff has Standing to Represent a Class of Out-of-State Consumers

Plaintiff purchased the iTunes gift card because she understood it possessed the value represented on the face on the gift card. (Shay Decl., ¶ 4).  Plaintiff would not have purchased the gift card had she known that it did not possess any value or was compromised. *(Id.,* ¶ 19). Plaintiff suffered harm in that she did not receive the value of the gift card, store credit, or a refund. Accordingly, Plaintiff has standing. *See Kwikset*, 51 Cal. 4th at 330 (consumers have standing to sue under the CLRA based on deceptive "Made in the USA" labels when they allege that they would not have purchased a product or would have paid less for a product if it were not for the alleged deceptive advertising); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (applying *Kwikset* to hold that when a consumer purchases merchandise on the basis of false information and when she alleges that she would not have made the purchase but for the misrepresentation, she has standing).

The California Supreme Court held that the CLRA requires a plaintiff to allege that he/she has suffered "some damage" because of a purported unlawful practice in order to have standing to sue. *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 641 (2009). In their holding, the California Supreme Court explained that "the statute provides that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Id*. Moreover, the California Supreme Court noted that the legislature, in drafting the act, "set a low but nonetheless palpable threshold of damage, and did not want the costs of a lawsuit to be incurred when no damage could yet be demonstrated." *Id*. at 646.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Here, Plaintiff alleges that she suffered damage because Apple represented that the gift card could be redeemed for the prepaid value at the App Store. Had she known that the representation was false or of the omissions at issue, she would not have purchased the gift card.

### C.   The Class is Adequately Defined and Ascertainable

While not specifically stated in Rule 23, many courts recognize an implicit requirement that a class be "ascertainable." "Under the law of th[e] [Ninth [C]ircuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' an individual to determine whether she is a class member with a potential right to recover." *Krueger v. Wyeth, Inc.*, 310 F.R.D 468, 475 (S.D. Cal. 2015) ("[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification."); *see also, Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017).

Here, Plaintiff seeks to certify the following classes:

**Nationwide Class**
All consumers who purchased an App Store & iTunes gift card in the United States from May 28, 2017 to the present, whose gift card was subject to a redemption attempt prior to activation, and whose gift card was redeemed by a third party prior to attempted redemption by the consumer or intended user.

**California Subclass**
All consumers who purchased an App Store & iTunes gift card in the State of California from May 28, 2017 to the present, whose gift card was subject to a redemption attempt prior to activation, and whose gift card was redeemed by a third party prior to attempted redemption by the consumer or intended user.

Here, class members can be identified based on objective characteristics and transactional facts including the purchase of an iTunes gift card, the location of purchase (United States or California), the date of purchase and activation (May 28, 2017 to the present), whether the gift card was subject to a redemption attempt prior

10
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

to activation, and whether the gift card was redeemed prior to redemption by the purchaser or intended user. (Ex. 7; Ex. 18 at 105-106; 115; Ex. 18 at 28, 35-38)

"Plaintiffs are not required to identify all class members at the time of certification. *In re Morning Song Bird Food Litigation,* 320 F.R.D. 540, 550 (S.D. Cal. 2017) citing *Astiana v. Kashi Co*., 291 F.R.D. 493, 500 (S.D.Cal. 2013). They need only provide an objective means for identifying the class members.  (*Id*.).

Accordingly, the classes are ascertainable because the class definitions are stated in terms of objective characteristics and common transactional facts that make the ultimate identification of class members possible.

**D.    The Requirements of Fed. R. Civ. P. 23 (a) are Met**

To demonstrate that certification is warranted, plaintiff must first show that the four prerequisites of Rule 23(a) are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

**1.    The Proposed Nationwide Class and California Class Are So Numerous that Joinder is Impracticable**

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." In this context, "impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-014 (9th Cir. 1964) (internal quotation marks omitted). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." *In re Facebook, Inc., PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from [the] facts before [it]. *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n. 5 (9th Cir. 1977). Plaintiff is not required to quantify with precision the number of class members. *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 233-34 (C.D. Cal. 2003).

Here, from 2017 to July 2021, Apple represents that ████████████ of iTunes and Apple gift cards sold through third party retailers in the United States. ████████████████████ Apple's gift cards are widely available through Apple's online and retail stores, as well as every type of third-party retailer throughout the United States. (Dkt. No. 1 at p. 6, ¶ 19; Ex. 16, 10:25-11:3). In 2017 and 2018 alone, Apple recorded approximately $7.5 billion in "deferred revenue" attributable in significant part to gift card sales. (Dkt. No. 1 at 7, fn. 1).

In addition, Apple produced approximately 1,300 records from ████████ which it represented was a "statistically significant" number of records "potentially related to the type of gift card fraud alleged in the SAC." (Ex. 7; Ex. 8, Ex. 17 at 171:13-17; Ex. 9, Responses to Requests No. 4, 10, and 19). Of those records, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████ Moreover, 661 individuals indicated on the Apple Community discussion board entitled "Gift Card already redeemed issue" that they had purchased "new" Apple gift cards and tried to redeem the codes, only to be told that the credit they had purchased through the gift card was "already redeemed by another account." (Ex. 21).

12

A review of this board and others like it on other sites indicate that hundreds, if not thousands, of consumers have suffered the same injury as Plaintiff. (Ex. 21, 23-25.). At least as to the Apple Community thread, these potential class members can be identified because Apple requires individuals to log-in to their Apple account before they can post to the Apple discussion board. (Ex. 21).

Based upon the heavily redacted nature of Apple's production, it is not currently possible for Plaintiff to see with specificity the location of the consumer complainants. Of course, this information is available to Apple, who maintains the unredacted records. Even so, as of July 1, 2021, the population of California was in excess of 39 million[5] and the overall population of the United States was 331,449,281 in the 2020 Decennial Census. (Lucio Decl. ¶ 22). Thus, approximately 11.7% of the United States population resides in California. Assuming the complaints are lodged on a proportionate basis from the state, the size of the California class alone from the sampling of complaints provided is in excess of 152. (Lucio Decl. ¶ 22). A finding of numerosity may be supported by common sense assumptions. *See, In re Tableware Antitrust Litig.,* 241 F.R.D. 644, 648 (N.D. Cal. 2007); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D.Ill. 2002)." *Gusman v. Comcast Corp.,* 298 F.R.D. 592, 596 (S.D. Cal. 2014). Accordingly, this is sufficient to establish numerosity.

### 2.      Plaintiff's Claims Raise Issues Common to the Class

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To show commonality, class members must have "suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The commonality requirement demands only that "class members' 'situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir.

---

[5] *See*, Quick Facts (https://www.census.gov/quickfacts/fact/table/CA) (last visited September 9, 2022).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1990)). Commonality does not "require that plaintiffs' have the same exact experience leading up to the harm." *Postpichal v. Cricket Wireless, LLC*, 2021 U.S. Dist. LEXIS 146166, at \*19 (N.D. Cal. Aug. 4, 2021). Plaintiff must demonstrate "the capacity of classwide proceedings to generate common answers" to common questions of law or fact that are "apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551. A perfect identity of facts and law is not required; relatively "minimal" commonality will suffice. *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012). For purposes of satisfying Rule 23(a)(2) "even a single common question will do." *Dukes,* 131 S. Ct. at 2556.

The central contention in this case turns on the nature of Apple's misrepresentations and omissions. The case arises from a simple, common course of conduct and facts: the marketing of iTunes gift cards; Apple's uniform representation that if a consumer purchased an iTunes gift card, they would receive store credit in the amount of the gift card for use on the App Store as long as the gift card was not lost or stolen or used without permission; ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Here, Plaintiff contends that all class members' claims involve the same scheme and misrepresentations/omissions. Apple's representation that the purchase and possession of the card conferred the value reflected on the card in store credit is unquestionably material. *See*, *Stearns v. Ticketmaster*, 655 F.3d 1013,1019 (9th Cir. 2011) [materiality is measured by an objective reasonable person standard.] Thus, this case presents common questions of fact and law, each of which will drive the resolution of the litigation. Further, all questions will be determined under the same state law (California) based on the choice-of-law clause, thereby facilitating adjudication of the issues.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Common questions of law and fact include, *inter alia*: (1) whether Apple misrepresented, through its packaging and labeling, that the purchase of an iTunes gift card conferred on the purchaser or intended user the right to store credit in the amount of the gift card for App Store purchases; (2) whether Apple misrepresented, through its packaging and labeling, that if the physical iTunes gift card was not lost or stolen or used without permission that the purchaser or intended user would receive store credit in the amount of the gift card for purchases on the App Store; (3) whether Apple misrepresented, through its packaging and labeling, that if the purchaser or intended user did not share the gift card code with a third party that they would receive store credit in the amount of the gift card for purchase on the App Store or iTunes store; (4) whether Apple had a duty to disclose that its iTunes gift cards were prone to fraud; (5) whether Apple failed disclosed the fact that its iTunes gift cards were prone to fraud; (6) whether Apple's omissions are actionable under the CLRA; (7) whether Apple is in a fiduciary relationship with the consumer; (8) whether Apple had exclusive knowledge of material facts not known to the consumer; (9) whether Apple actively concealed a material fact from the consumer; and (10) whether Apple made partial representations but also suppressed some material facts.

In short, each putative class member's claim and injury stems from "standardized conduct" — specifically, Apple's misrepresentations and omissions concerning the characteristics its iTunes gift cards. The putative class members were all injured in not receiving the prepaid value of the gift card. Questions and answers regarding Apple's resulting liability will be common to the Class. Commonality under Rule 23(a)(2) is satisfied.

### 3. Plaintiff's Claims are Typical of the Class

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*,

15

591 F.3d 1105, 1124 (9th Cir. 2010)(citations omitted). The typicality requirement is "permissive" and requires only that "the representative's claims are reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* Generally, a plaintiff's claims are typical if they relate to a common scheme. *Pecover v. Elec. Arts Inc.*, 2010 U.S. Dist. LEXIS 140632, at *34 (N.D. Cal. Dec. 21, 2010).

Here, the typicality requirement is met for the same reasons that commonality is met. *See Dukes*, 131 S. Ct. at 2550-51 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge."). Plaintiff and the putative class members were exposed to the same material misrepresentations and omissions, and were injured in the same manner when they paid money to purchase gift cards for store credit of a certain value and did not receive the store credit because the credit was redeemed by a third party prior to redemption by the class member or the intended user. In other words, they received no store credit and paid money for a valueless gift card. Variation in denomination of the gift cards or third party retailer has no bearing on the typicality of Plaintiff's claims. See *Hanon*, 976 F.2d at 508 ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought") (internal citations and quotations omitted).

Moreover, the California Class is defined to include consumers who purchased their gift cards in California. Plaintiff is a California resident who purchased her gift card in Encinitas, California. Therefore, Plaintiff is also typical of the California class members.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

In addition, if Apple's defenses apply uniformly, as Apple contends, then the defenses of Plaintiff's claims are typical of the defenses of the class. In Apple's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 6), Apple argues that Plaintiff's claims fail as a matter of law because: (1) Plaintiff's injuries resulted from third-party conduct for which Apple is not responsible; (2) Apple implemented reasonable safety measures; (3) Apple has no legal duty to warn of the risk that its gift cards may be stolen; (4) Apple has no legal duty to disclose that it does provide a refund if its gift cards are stolen; and (5) Apple's disclaimer absolves it of any liability for third party theft of its gift cards. Because Apple's defenses would apply equally to both Plaintiff and the class, the defenses of Plaintiff's claims are typical of the class and the typicality requirement is met. Common questions as to these defenses also support certification.

### 4. Plaintiff and Her Counsel Will Fairly and Adequately Protect the Interests of the Class

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Plaintiff is an adequate representative because she is a member of the Class she seeks to represent, shares the same claims and interest in obtaining relief as all other class members, and has no conflicts of interests with other Class members. *Beck-Ellman*, 283 F.R.D. at 567; *In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011); *see Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, n. 13 (1982)(noting that where the claims of the class and class representatives are coextensive, there is no conflict). She has no interests antagonistic to those of other class members, and there is no evidence of any conflict. (Shay Decl. ¶ 21). She filed this case to get class members' money refunded and to hold Apple accountable. (Ex. 22 at 43:2-45:6). She has vigorously prosecuted this action including sitting for her deposition. *See Kesler v. IKEA U.S., Inc.*, 2008 U.S. Dist. LEXIS 97555, at *16 (C.D. Cal. Feb. 4, 2008) ("Indeed, she has demonstrated her commitment thus far by sitting for her deposition."). She is fully aware that she is seeking to pursue this

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

action on behalf of a class of consumers and of her potential duties as a class representative. (Ex. 22 at 123:3-125:12; Shay Decl. ¶¶ 20-22). Thus, Ms. Shay is adequate and qualified to be appointed as class representative.

For the reasons set forth in the accompanying declarations, Plaintiff's counsel is adequate and should be appointed as Class Counsel. (See generally, Declarations of James R. Hawkins, Christina M. Lucio, Malte L. L. Farnaes, and Mitchell J. Murray). They are experienced class action litigators who have litigated many complex actions. *See, In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (In evaluating the adequacy of counsel, "a court may examine the attorneys' professional qualifications, skill, experience, and resources. The court may also look at the attorneys' demonstrated performance in the suit itself."). Plaintiff's counsel has diligently litigated this case and will continue to do so.

**E. The Predominance Requirement of Rule 23(b)(3) is Met**

Plaintiff seeks certification under Rule 23(b)(3). Rule 23(b)(3) requires two separate inquires: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods for adjudicating the controversy. In addition, class damages must be sufficiently traceable to the plaintiff's liability case. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Here, all the elements of Rule 23(b)(3) are met.

**1. Common Questions of Fact or Law Predominate**

Predominance tests whether classes are sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Courts hold "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. The "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *In re Hitachi*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Telev. Optical Block Cases*, No. 08cv1746 DMS (LS), 2011 U.S. Dist. LEXIS 135, at *13 (S.D. Cal. Jan. 3, 2011).

Predominance is readily met in certain cases alleging consumer fraud. *Amchem*, 52 1 U.S. at 625. Consumer fraud claims (like this one) based upon uniform misrepresentations and omissions are readily certifiable where the misrepresentations and causation are "susceptible to proof by generalized evidence," even if individualized issues remain. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all class members in a single adjudication. *Id*.

The inquiry of predominance typically begins with an analysis of the relevant causes of action.  Here, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). The statute requires that plaintiffs in a CLRA action "show not only that a defendant's conduct was deceptive but that the deception caused the harm." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009). In a class action alleging violation of the CLRA, "[c]ausation, on a classwide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Id*. Stated differently, "reliance on the alleged misrepresentations may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to the class members." *Chavez v. Blue Sky Natural Bev.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010). Under California law, a misrepresentation or omission is material:

> if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably

19

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

find that a reasonable man would have been influenced by it.

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) cert. denied, 132 S. Ct. 1970 (2012) (internal citations omitted).

Plaintiff's CLRA claim depends on whether the misrepresentations are "unlawful, unfair, deceptive, or misleading to *reasonable* consumers," an objective standard. *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 U.S. Dist. LEXIS 173789 at * 12 (N.D. Cal. Dec. 15, 2014) (emphasis in original). The statute allows "plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material." *In re ConAgra Foods, Inc.*, 90 F. Supp 3d 919, 983 (C.D. Cal. 2015) (citations omitted). A plaintiff does not need to demonstrate individual reliance. *Id.* Therefore, causes of action requiring an objective test make such claims amenable to class actions. *Tait v. BSH Home Appliances, Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012).

Further, as the Court previously recognized a duty to disclose under the CLRA can arise in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." Dkt. No. 17 at p. 9-10,

The deceptive or unlawful nature of the representation is a determination not made with regard to each class member, but under a single, objective, and common "reasonable consumer" standard. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "This objective test renders claims under the … CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Tait,* 289 F.R.D. at 480 (internal citations and quotations omitted).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff's claim for negligent misrepresentation is also suitable for class adjudication as it is based on the same facts as the statutory claims. In addition, the same presumption of reliance is applicable to Plaintiffs' negligent misrepresentation claim. *In re Brazilian Blowout Litig.*, No. CV 10-8452-JFW (MANx), 2011 WL 10962891, at *8 (C.D. Cal. Apr. 12, 2011) (recognizing presumption of reliance for and certifying common law negligent misrepresentation claims).

Here, the central issues to be resolved on a class wide basis are: (1) whether Apple's representation that a consumer would receive store credit in the amount of the gift card was deceptive or misleading; (2) whether Apple knew that the gift cards were compromised; (3) whether Apple misrepresented or omitted material facts concerning the value and security of its gift cards; (4) whether the misrepresentation or omission was likely to deceive a reasonable consumer; (5) ███████████████████ ██████████████████████████████ and (6) ██████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ Here, Plaintiff seeks to prove on a class-wide basis that Apple misrepresented that (1) the gift cards had certain characteristics, uses and benefits (namely, prepaid credit for the App Store) (Cal. Civ. Code §1770(a)(5)), (2) the gift cards were of a particular standard, quality or grade (e.g. secure and valuable in the amount of the prepaid credit) (Cal. Civ. Code §1770(a)(7)), and (3) the gift cards were supplied in accordance with a previous representation when they were not (e.g. that they were secure, valuable gift cards redeemable at the App Store for prepaid amount of the card.). (Cal. Civ. Code §1770(a)(16)). It also seeks to prove that Apple's representation that a consumer would receive credit in the amount of the gift card was a misrepresentation (negligent or otherwise).

Plaintiff respectfully submits that the common evidence demonstrates that ████████████████████████████████████████

21

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Therefore, there is sufficient evidence for the Court to conclude that these common representations or omissions were deceptive and misleading.

Thus, each of Plaintiff's claims lends itself to proof by common inquiry and therefore satisfies the predominance requirement set forth by Fed. R. Civ. P. 23(b)(3).

### 2.   Common Evidence Will Prove Plaintiff's Remedies

Under the CLRA, in addition to restitution, Plaintiff can recover actual damages, punitive damages, injunctive relief, and attorneys' fees and costs. *See Doe 1 v. AOL LLC,* 719 F. Supp. 2d 1102, 1110 (N.D. Cal. 2010).

Plaintiff may also recover punitive damages under the CLRA. Civ. Code § 1780. An award of punitive damages does not require individualized inquiries because each class member would receive a pro rata share of the award. There can be no dispute that questions relating to Apple's knowledge of its own scheme and/or purposeful wrongdoing, which are needed to secure punitive damages for Plaintiff's CLRA claims, raise exclusively common issues. *See Westways World Travel, Inc. v. AMR Corp.,* 218 F.R.D. 223, 238 (C.D. Cal. 2003) (denying argument in a RICO context that the defendant's intent raised individual questions and noting "no case law points to such a proposition"); *see also*, Newberg on Class Actions § 17:39 (4th ed.) ("punitive damages issues easily qualify as common issues for class action treatment in a Rule 23(b)(3) voluntary class [because] common questions associated with punitive awards will satisfy the common questions requirement for class actions").

All that is required at certification is for plaintiff to "present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (internal quotations and citation omitted). Where the amount of damages or restitution is subject to a formulaic calculation, common

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

questions predominate. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 493 (C.D. Cal. 2006) (holding that for purposes of class certification, it is sufficient that plaintiffs show "a facially plausible method" for establishing proof of monetary relief on a class-wide basis). Here, Plaintiff seeks damages in the amount of the gift cards purchased by class members and not credited by Apple, as well as other statutory and punitive damages. The damages may be measured by the promised value of the store credit – i.e. the amount prepaid on the gift card (and typically appearing on the face of the card). These amounts are easily determined by a review of Apple's records. No price premium damages model or expert is needed. Plaintiff's proposed damages methodology is sufficient at this stage.

### 3. A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (internal citation omitted).

The superiority requirement is met where, as here, "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *In re Google Referrer Header Privacy Litigation*, 869 F.3d 737, 743 (9th Cir. 2017); *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); Amgen, 133 S. Ct. at 1202. Here, Plaintiff and her counsel have incurred thousands of dollars in litigation, which far exceeds the potential recovery of any individual pursuing her own action. (Hawkins Decl. ¶ 8). William B. Rubenstein, Newberg on Class Actions § 8:40 (4th ed. 2017) ("the existence of small claims may be a strong factor in upholding a class.").

Further, hundreds or thousands of individual actions would consume significant judicial resources. *See Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 946-

23

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

947 (9th Cir. 2009); *Delarosa v. Boiron, Inc.*, 275 F.R.D. at 594. *Soto v. Diakon Logistics (Delaware), Inc.,* No. 08-CV-33-L WMC, 2013 WL 4500693, *7 (S.D. Cal. Aug. 21, 2013), clarified on denial of reconsideration (S.D. Cal., Nov. 5, 2013, No. 08CV0033 L WMC) 2013 WL 5939787 (prospect of 300 individual actions supported finding of superiority where potential recovery could exceed $50,000 per class member).Finally, there is no evidence that any other consumer is pursuing an individual claim against Apple for the issues in this case.[6] As such, this case is the most appropriate vehicle by which the class and Apple can resolve these claims.

### F.    Certification of an Issue Class Would Advance this Litigation

Rule 23(c)(4) "authorizes the district court in appropriate cases to isolate the common issues … and proceed with class treatment of those particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Adjudicating certified issues can advance the case and promote judicial economy. *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 175-76 (N.D. Cal. 2015). "These considerations are closely related to the significance of the issue to be certified: the more significant the common issue, the more likely class-wide adjudication of that issue will advance the litigation*." Valenzuela v. Union Pac. R.R. Co.*, 2017 WL 1398593, *3 (D. Ariz. Apr. 19, 2017).

Here, Plaintiff seeks to certify the following issues for purposes of the second element of her CLRA claim: (1) whether Apple represented that the iTunes gift cards had characteristics, uses, or benefits that they did not have (Civ. Code § 1770(a)(5); (2) whether Apple represented that the iTunes gift cards were original or new and whether the iTunes gift cards had deteriorated unreasonably or were altered or used (Civ. Code 1770(a)(6)); (3) whether Apple represented that the purchase of an iTunes gift card conferred a right to store credit at the App Store or iTunes store (Civ. Code § 1770(a)(14); (4) whether Apple represented that the iTunes gift cards had been

---

[6] Another action against Apple in the Northern District of California involves "victim-assisted" gift cards scam which is not at issue in this case. (Ex. 26).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

supplied in accordance with a previous representation when it had not. (Civ. Code § 1770(a)(16)). Each of these issues is an element of the CLRA. *See* CACI No. 4700.

In addition, other prohibited practices under the CLRA involve a failure to disclose. *See Gutierrez v. Carmax Auto Superstores California*, 19 Cal.App.5th 1234, 1258 (2018). "In the CLRA context, a fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a '"reasonable [consumer]"' would deem it important in determining how to act in the transaction at issue." *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 256 (2011). Therefore, Plaintiff also seeks to certify the following issues for purposes of her CLRA claim: (1) whether Apple is in a fiduciary relationship with the consumer; (2) whether Apple had exclusive knowledge of material facts not known or reasonably accessible to the consumer including, *inter alia*, ███████████████████████████████ ████████████████; (3) whether Apple actively concealed a material fact ███████ ████████████████████████████████████████████; and (4) whether Apple made partial representations but also suppressed some material fact including, *inter alia*, ████████████████████████████████████ ████████████████████████████ An issue certification on whether Apple engaged in unfair methods of competition and unfair or deceptive acts would allow for a single adjudication of the most significant issue of each class member's CLRA claim.

Finally, Plaintiff seeks to certify the following issues for purposes of her negligent misrepresentation claim: (1) whether Apple misrepresented a past or existing material fact; and (2) whether Apple had reasonable ground for believing the representation to be true; and (3) whether Apple intended to induce Plaintiff's reliance on the misrepresentation. *See*, *Veolia N. Am. LLC v. Jones Lang Lasalle Am's Inc.*, 21-CV-2096 TWR (BGS), at *7 (S.D. Cal. June 1, 2022). Plaintiff will use the same common evidence to prove her negligent misrepresentation as her CLRA claim.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Dated: September 9, 2022          **JAMES HAWKINS APLC**

By:     /s/ Mitchell J. Murray
          James R. Hawkins
          Malte L. L. Farnaes
          Christina M. Lucio
          Mitchell J. Murray


          Attorneys for Plaintiff and the putative class

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION