**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
Madeline P. Skitzki (Cal. Bar No. 318233)
mskitzki@jenner.com
Effiong K. Dampha (Cal. Bar No. 323554)
edampha@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone:   (213) 239-5100
Facsimile:    (213) 239-5199

**WEIL, GOTSHAL & MANGES LLP**
David R. Singh (Cal. Bar No. 300840)
david.singh@weil.com
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendants
Apple Inc. and Apple Value Services, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL SHAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC. and APPLE VALUE SERVICES, LLC,<br><br>Defendants. | Case No. 3:20-cv-1629-JO-BLM<br><br>The Honorable Jinsook Ohta<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: January 11, 2023<br>Hearing Time: 9:30 a.m.<br>Courtroom: 4C<br><br>**REDACTED** |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

ARGUMENT ........................................................................................................9

  I.  Plaintiff Has Not Shown That Common Issues Predominate. ..........................9

    A.  Plaintiff Offers No Class-Wide Proof Of Deception, Materiality, Or Reliance. ........................................................................................10

    B.  Numerous Other Individualized Issues Predominate. ...................16

  II.  Plaintiff Is Not An Adequate Or Typical Class Representative. .....................21

  III. Plaintiff's Class Is Unmanageable And Overbroad. ....................................23

  VI. The Court Should Not Certify Issues Classes Under Rule 23(c)(4). ...........23

CONCLUSION .................................................................................................25

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
No. ML 13-2438, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ......................12, 13

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) ..................................................................*passim*

*Borman v. Brown*,
59 Cal. App. 5th 1048 (2021) ........................................................................10

*In re Brazilian Blowout Litig.*,
No. CV 10-8452, 2011 WL 10962891 (C.D. Cal. Apr. 12, 2011).........................11

*Castillo v. Bank of Am., NA*,
980 F.3d 723 (9th Cir. 2020) ................................................................2, 17, 23

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...............................................................9, 10, 19, 20

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014)........................................................................25

*Conde v. Sensa*,
No. 14-CV-51, 2018 WL 4297056 (S.D. Cal. Sept. 10, 2018) ..............................17

*Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*,
219 F. Supp. 3d 962 (N.D. Cal. 2016)................................................................12

*Decker v. Mazda Motor of Am., Inc.*,
No. SACV 11-0873, 2013 WL 12129281 (C.D. Cal. Mar. 29, 2013) ...................15

*Ewert v. eBay, Inc.*,
No. C-07-02198, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)...........................19

*Faulk v. Sears Roebuck & Co.*,
No. 11-CV-02159, 2013 WL 1703378 (N.D. Cal. Apr. 19, 2013) .......................10

ii

*D.C. ex rel. Garter v. Cnty. of San Diego*,
  783 F. App'x 766 (9th Cir. 2019)............................................................................25

*Gross v. Vilore Foods Co.*,
  No. 20-cv-894, 2022 WL 1063085 (S.D. Cal. Apr. 8, 2022).................................11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)................................................................................................9

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992).......................................................................3, 21, 22

*Johnson v. Harley-Davidson Motor Co.*,
  285 F.R.D. 573 (E.D. Cal. 2012).............................................................................14

*Jones v. ConAgra Foods, Inc.*,
  No. C12-01633, 2014 WL 2702726 (N.D. Cal. June 13, 2014) .......................12, 22

*Junod v. NWP Servs. Co.*,
  No. 14-CV-1734, 2016 WL 6306030 (C.D. Cal. July 18, 2016) .....................17, 23

*Kosta v. Del Monte Foods, Inc.*,
  308 F.R.D. 217 (N.D. Cal. 2015) ......................................................... 1, 11, 12, 13

*Martin v. Dahlberg, Inc.*,
  156 F.R.D. 207 (N.D. Cal. 1994) ...........................................................................11

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)...................................................................18, 20, 21

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082 (1993)......................................................................................1, 11

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. 2015)..................................................................14

*Pepka v. Kohl's Dep't Stores, Inc.*,
  No. CV-16-4293, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ..........................21

*Rahman v. Mott's LLP*,
  693 F. App'x 578 (9th Cir. 2017)......................................................................24, 25

*Reitman v. Champion Petfoods USA, Inc.*,
  830 F. App'x 880 (9th Cir. 2020)............................................................................25

iii

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ..................................................................... 21

*Sanchez v. Wal Mart Stores, Inc.*,
   No. 2:06-CV-02573, 2009 WL 1514435 (E.D. Cal. May 28, 2009) ................ 15, 22

*Sandoval v. Pharmacare US, Inc.*,
   No. 15-CV-0120, 2016 WL 3554919 (S.D. Cal. June 10, 2016), *aff'd*,
   730 F. App'x 417 (9th Cir. 2018) ................................................................. 17

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ........................................................ 17

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ........................................................... 2, 11, 16

*Stickles v. Atria Senior Living, Inc.*,
   No. C 20-09220, 2021 WL 6117702 (N.D. Cal. Dec. 27, 2021) ..................... 24

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   308 F.R.D. 630 (N.D. Cal. 2015) ............................................................ 23, 25

*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ................................................... 12, 14

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................................ 17

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................................... 10, 21

*Vizcarra v. Unilever U.S., Inc.*,
   339 F.R.D. 530 (N.D. Cal. 2021) ................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................... 9

*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) .................................................................. 13

*Woodard v. Labrada*,
   No. EDCV 16-189, 2021 WL 4499184 (C.D. Cal. Aug. 31, 2021) .................. 21

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................. 11

iv

*Yoon v. Gap, Inc.*,
 No. CV 08-05712, 2010 WL 11597565 (C.D. Cal. Oct. 6, 2010) .........................22

*Zinser v. Accufix Rsch. Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001) ..........................................................................9, 20

**Statutes and Rules**

Fed. R. Civ. P. 23.......................................................................................*passim*

Cal. Civ. Code § 1761(d) ...............................................................................19

Cal. Civ. Code § 1780.....................................................................................19

OPPOSITION TO MOTION FOR CLASS CERTIFICATION
CASE NO. 3:20-CV-1629-JO-BLM

## **INTRODUCTION**

Plaintiff alleges that Apple violated the Consumers Legal Remedies Act ("CLRA") and committed negligent misrepresentation by failing to warn her of the miniscule risk that her App Store & iTunes gift card ("iTunes gift card") might get stolen through "point of sale" theft. She now seeks to certify a class of *all* consumers—whether or not they were injured and regardless of the cause of any injury—who purchased an iTunes gift card that was redeemed by a third party and had been subject to a redemption attempt before it was activated at the point of sale. But Plaintiff has not carried her burden to show that her claims can proceed on a class-wide basis. Plaintiff offers no evidence to show that the alleged misstatements or omissions would be material to the putative class and makes no attempt to exclude many class members who were never injured at all, were not injured by anything Apple did or did not do, or have already been made whole. For her part, Plaintiff failed to read the iTunes gift card packaging and continued to purchase iTunes gift cards even after the alleged theft that spawned this lawsuit—undermining her claim of class-wide proof of deception, materiality, and reliance and making her neither a typical nor adequate class representative. This Court should deny Plaintiff's motion for class certification for several independent reasons.

First, Plaintiff has not shown that there are "questions of law or fact common to the class" and that such questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(a)(2), (b)(3). Most significantly, Plaintiff's CLRA claim demands proof that the alleged misrepresentations were deceptive, material, and induced reliance—requiring Plaintiff to "offer some means of proving materiality and reliance by a reasonable consumer on a classwide basis in order to certify a class." *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 225 (N.D. Cal. 2015). Plaintiff's negligent misrepresentation claim requires more: individualized proof of reliance. *See, e.g.*, *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1091 (1993). But Plaintiff

offers nothing.  Plaintiff offers no expert report, no survey evidence, nothing other than her own say-so to allege class-wide deception, materiality, and reliance.  And Plaintiff's say-so is contradicted by her own admissions and the only expert declaration in the class-certification record, which both confirm that "the issue of reliance 'would vary from consumer to consumer' and the class should not be certified."  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022–23 (9th Cir. 2011) (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)).

Nor are these the only issues where one-off mini-trials would be required to adjudicate individual class members' claims.  Plaintiff also fails to acknowledge that her putative class includes numerous uninjured class members and class members whose injury was not caused by Apple's alleged misrepresentations or omissions.  Plaintiff offers no basis for excluding any putative class members who have already been made whole, whether by a refund from the third-party retailer of the gift card or through payment protection from a credit-card company or other financial intermediary.  Nor does Plaintiff address putative class members whose gift cards were redeemed by friends or loved ones, who failed to successfully redeem their cards for more prosaic reasons than theft (perhaps because they lost the card or the retailer failed to properly activate it), or who falsely claim to be within the class's scope.  The volume of uninjured class members alone justifies denying certification.  *See, e.g., Castillo v. Bank of Am., NA*, 980 F.3d 723, 732–33 (9th Cir. 2020).  At a minimum, the diversity of circumstances faced by members of the class—which extends also to the purpose for which they purchased gift cards (as business purchases fall outside the CLRA's reach), the fact and amount of their damages, their Article III standing, and choice of law—confirms that common issues do not predominate.

Second, Plaintiff's own unique circumstances, especially when coupled with the diversity of the putative class, confirm that Plaintiff is neither a typical class member nor an adequate class representative.  *See* Fed. R. Civ. P. 23(a)(3), (a)(4).  Plaintiff

argues that her claim is typical because "Plaintiff and the putative class members were exposed to the same material misrepresentations and omissions, and were injured in the same manner." Mem. in Supp. of Mot. for Class Cert., Doc. No. 59-1 at 16 ("Mot."). But Plaintiff admits that she did not even read the entire gift card package allegedly containing these alleged misrepresentations and omissions and that she continued buying gift cards even *after* she learned of the very risk she claims Apple was improperly withholding, making perfectly clear that any additional disclosure would not have been material to her purchasing decision. Plaintiff's "unique background and factual situation require [her] to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class," and "'there is a danger that absent class members will suffer'" as a result. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Third, a class action would be unmanageable and is not "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff's claim is unique, and her class definition is fatally overbroad. The resulting need for individualized resolution of class members' claims undermines any benefits of aggregation. Class certification should be denied. And there is no basis for granting Plaintiff's fallback request for issues classes, which suffer from the same defects and would only prolong Plaintiff's meritless, highly individualized litigation.

## BACKGROUND

### I.  Apple's Sale of iTunes Gift Cards.

Apple sells a variety of digital media products through the App Store, iTunes, and other Apple platforms. Although consumers can purchase digital media products from Apple using a credit or debit card, consumers may also buy gift cards—including the iTunes gift cards at issue here—that can be used to buy digital media products.

An iTunes gift card comes loaded with a specified amount of funds, which appears on the sleeve that holds the gift card. A representative example appears below:

3



Smith Decl. Ex. 1; *see also* Plaintiff's Exhibit ("PX") 1 (images of Plaintiff's gift card). Critically, when an iTunes gift card is on the rack in the store, the card has no value. Singh Decl. Ex. 3 ("Gomez Dep.") 35:8–18. The card is activated at the point of sale, when a series of electronic signals activates the card and renders it capable of redemption into an Apple ID account. Luongo Dep. 72:11–73:20; Singh Decl. Ex. 4 ("Barker Dep.") 51:12–52:5; Luongo Decl. ¶¶ 5-6. Once the card has been activated upon purchase, the consumer then removes the card from the sleeve, which reveals a unique redemption code covered by foil tape:



Smith Decl. Ex. 1. The consumer can then peel off the tape and input the code into her Apple ID account, which transfers the stored value on the gift card into an Apple ID account where it can be used to purchase digital media. Luongo Decl. ¶ 7.

Critically, neither the gift card packaging nor the gift card itself includes any

4

explicit representations about the security of the gift cards. Contrary to Plaintiff's allegations, they do not include the words "secure," "valuable," "free from fraud," or any words to that effect. *See* Singh Decl. Ex. 6, at 6 (Plaintiff's responses to Requests for Admission 7–9). Moreover, the back of the gift card packaging advises consumers that "[n]either Apple nor Issuer is responsible for any loss or damage resulting from lost or stolen cards or use without permission." Smith Decl. Ex. 1. The back of the gift card packaging also states that "[t]erms apply" and directs consumers to the online Terms & Conditions, which state: "Neither Issuer nor Apple is responsible for lost or stolen Store Credit or Content Codes." Singh Decl. Ex. 1 (iTunes Store – Terms and Conditions). The choice-of-law provision in the online Terms & Conditions has changed over time: Before March 2018, there was no choice-of-law provision; from March 2018 until July 2020 there was a choice-of-law provision selecting California law; and from July 2020 to the present there has been a choice-of-law provision selecting Virginia law. Luongo Decl. ¶ 11.

## II. Point-of-Sale Theft Impacts Gift Cards Industrywide And Impacts An Exceedingly Small Number Of iTunes Gift Cards.

Prior to the rollout of the new "Apple Gift Card" (which replaced the iTunes gift cards at issue here[1]), third-party retailers sold millions of iTunes gift cards each year. *See* Singh Decl. Ex. 5, at 7 (Apple's response to Interrogatory 6). The vast majority of these cards were successfully redeemed by purchasers or intended gift recipients to their Apple ID accounts. However, a small minority were allegedly stolen and redeemed by unknown third parties before the purchaser or gift recipient could redeem the card. *See* Singh Decl. Ex. 2 ("Luongo Dep.") 36:19 – 37:6 ("[I]t's a very, very small number as against the overall business."); Gomez Decl. ¶ 9. Such theft is not unique to Apple gift

---

[1] In 2020, Apple replaced its iTunes gift card, which was usable only on digital media, with the Apple Gift Card, which can be used to purchase both digital media from Apple's online platforms and hardware (such as laptops or iPhones) from the Apple Store. Luongo Decl. ¶ 3. The putative class includes only purchasers of "App Store & iTunes gift card[s]," which Apple no longer sells or distributes.

5

cards.  To the contrary, this rare occurrence impacts cards industrywide.  *See* Luongo Dep. 106:13–107:3 ("[I]t's an issue across the industry.").

6



## III.   Plaintiff's Purchases of iTunes Gift Cards And Putative Class Action.

Plaintiff Rachael Shay is a frequent purchaser of gift cards, including iTunes gift cards. During her deposition, she stated that she purchased iTunes gift cards "for years" and estimated that she had purchased iTunes gift cards "over a hundred times" prior to April 3, 2020. Shay Dep. 52:6–16, 53:16–21. Plaintiff also confirmed that, prior to April 2020, she never experienced any difficulties loading funds from an iTunes gift card onto her Apple ID account. *See id.* 57:25–59:4. Nor was she aware of any instance prior to April 2020 in which a recipient of an iTunes gift card she had purchased could not load the funds from the card onto his or her Apple ID account. *See id.* 59:5–11.

On April 3, 2020, Plaintiff purchased a $25 iTunes gift card and a $50 iTunes

7

gift card from a Walmart store in Encinitas, California as gifts for her son. Shay Decl. ¶ 2. Plaintiff maintains that she "read the statement on the front of the packaging that she was purchasing a $25 and $50 gift card for the App Store & iTunes Store before purchasing the gift cards." Singh Decl. Ex. 6, at 4 (response to Request for Admission 4). But Plaintiff did not identify any specific or explicit representation that Apple made about the security of those gift cards prior to her purchase. Plaintiff also admitted she does not recall reading *anything* on the packaging prior to purchasing the gift cards. *See* Shay Dep. 73:1–15, 110:15–19, 136:1–5. Instead, as she explained, she believed the packaging made a generalized promise of "implied security." *Id.* 107:19-109:24.

Plaintiff gave both gift cards to her son on April 16, 2020. Shay Decl. ¶ 2. On April 21, 2020, Plaintiff's son attempted to redeem both gift cards. *Id.* ¶ 6. Although he was able to redeem the $25 gift card, he received a notification that the $50 card had already been redeemed. *See* Shay Dep. 78:15-17, 79:20-82:2; *see also* Shay Decl. ¶ 6. After Plaintiff contacted Apple to report that her son could not redeem the $50 gift card, an Apple customer service representative confirmed that the card had been redeemed by an Apple ID account allegedly unknown to Plaintiff. Shay Decl. ¶ 10. Consistent with its policy, Apple did not provide Plaintiff a refund. *See id.* ¶¶ 11–17.

Plaintiff alleges that, "[h]ad Apple disclosed to Plaintiff and Class Members that Apple did not have adequate systems, policies, and security measures in place to secure customers' Apple gift card account information and Apple gift card funds, Plaintiff and Class Members would not have purchased the Apple gift cards." SAC ¶ 30. But Plaintiff admitted that both she and her husband purchased iTunes gift cards even after this incident. *See* Shay Dep. 59:16-60:18.

Plaintiff filed suit and now seeks to represent classes of "[a]ll consumers who purchased an App Store & iTunes gift card in the United States" and "[a]ll consumers who purchased an App Store & iTunes gift card in the State of California" "from May 28, 2017 to the present, whose gift card was subject to a redemption attempt prior to

8

activation, and whose gift card was redeemed by a third party prior to attempted redemption by the customer or intended user." Mot. at 10. After this Court granted in part Apple's Motion to Dismiss, *see* Doc. No. 27, two claims remain—under the CLRA and for negligent misrepresentation—both alleging that Apple "represent[ed] and failed to disclose material facts about the gift cards . . . when [it] knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose." SAC ¶ 45; *see id.* ¶¶ 68–72.

## ARGUMENT

Plaintiff bears the burden of showing by a preponderance of the evidence not only the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—but also the "more demanding" requirements of Rule 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Under Rule 23(b)(3), "questions of law or fact common to class members" must "predominate over any questions affecting only individual members," and a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). It requires Plaintiff to "affirmatively demonstrate," with evidence, that she has satisfied all of Rule 23's prerequisites, and it directs courts to conduct a "'rigorous analysis'" and "'probe behind the pleadings'" to ensure she has done so. *Id.* at 350–51 (citation omitted); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) ("[P]laintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23[.]").

## I. Plaintiff Has Not Shown That Common Issues Predominate.

Rule 23(a)(2) requires Plaintiff to demonstrate with evidence that there are "questions of law or fact common to the class," and Rule 23(b)(3) imposes the "more

demanding" requirement that such common questions "predominate over any questions affecting only individual members." *Comcast*, 569 U.S. at 33–34. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). The predominance requirement "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (citation omitted).

Plaintiff has not met her burden to show that common issues predominate. Most significantly, Plaintiff has failed to offer any means whatsoever of proving deception, materiality, or reliance on a class-wide basis. This failure alone dooms class certification, especially in light of the objective evidence from Apple's expert that these elements are ill-suited to class-wide resolution. More still, Plaintiff fails to acknowledge and account for numerous other individualized issues going to injury, causation, damages, and more, that together swamp any common issues in the case.

**A. Plaintiff Offers No Class-Wide Proof Of Deception, Materiality, Or Reliance.**

Deception, materiality, and reliance are essential elements of Plaintiff's CLRA and negligent misrepresentation claims. *See Faulk v. Sears Roebuck & Co.*, No. 11-CV-02159, 2013 WL 1703378, at *8 (N.D. Cal. Apr. 19, 2013) ("[A] consumer seeking to recover damages under the CLRA must not only be exposed to an unlawful practice but also have relied upon and been harmed by the practice.") (citation omitted); *Borman v. Brown*, 59 Cal. App. 5th 1048, 1060 (2021) (The elements of negligent misrepresentation are "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.").

While "CLRA claims can be subject to common proof on a classwide basis under some circumstances," the burden is on Plaintiff to "offer some means of proving materiality and reliance by a reasonable consumer on a classwide basis in order to certify a class." *Kosta*, 308 F.R.D. at 225, 229–30. In other words, Plaintiff must offer common proof that "a reasonable person 'would attach importance'" to the "'existence or nonexistence'" of the alleged representations or omissions "'in determining his choice of action in the transaction in question.'" *Gross v. Vilore Foods Co.*, No. 20-cv-894, 2022 WL 1063085, at *6 (S.D. Cal. Apr. 8, 2022) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 332 (2011)). "If the misrepresentation or omission is not material as to *all* class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns*, 655 F.3d at 1022–23 (quoting *In re Vioxx*, 180 Cal. App. 4th at 129) (emphasis added).

The requirements of a negligent misrepresentation claim are even more strict, as a claim for negligent misrepresentation requires "actual reliance" that must be proved on an individual basis. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752, 2017 WL 3727318, at *29 (N.D. Cal. Aug. 30, 2017); *see Mirkin*, 5 Cal. 4th at 1091 (rejecting the proposition that "California law . . . affords a presumption of reliance" for negligent misrepresentation claims); *Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 217 (N.D. Cal. 1994) (same).[2] Plaintiff's negligent misrepresentation claim also requires her to defeat the application of the economic loss rule, which likewise calls for a "case-by-case" analysis. *Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*, 219 F.

---

[2] Plaintiff erroneously claims that "the same presumption of reliance is applicable to [her] negligent misrepresentation claim" as her CLRA claim. Mot. at 21. But the only case she cites in support suggests there is, at the very most, a "presumption or inference" of reliance that a defendant "may rebut" with "evidence that . . . class members did not rely on the alleged misrepresentations or omissions in deciding to purchase Defendant's products." *In re Brazilian Blowout Litig.*, No. CV 10-8452, 2011 WL 10962891, at *8 (C.D. Cal. Apr. 12, 2011). That case is inconsistent with the California Supreme Court's holding that no presumption of reliance applies to common-law claims for negligent misrepresentation. *See Mirkin*, 5 Cal. 4th at 1091. And any such presumption—if one exists—is readily rebutted by Apple's expert, Dr. Wilcox, and Plaintiff's own admissions.

OPPOSITION TO MOTION FOR CLASS CERTIFICATION
CASE NO. 3:20-CV-1629-JO-BLM

Supp. 3d 962, 969–70 (N.D. Cal. 2016).

Courts in this Circuit thus routinely refuse to certify a class where (as here) a plaintiff fails to offer adequate proof that a reasonable consumer would find alleged misrepresentations or omissions material—even where (unlike here) a plaintiff offers expert testimony purportedly showing as much. *See, e.g.*, *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 549 (N.D. Cal. 2021) (denying class certification where an expert's "opinions do not constitute common proof of whether the [misrepresentations] are material to a reasonable consumer because [the expert] did not test the [misrepresentations] to determine whether they are material to consumers' decision to purchase the [product] at issue"); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1045 (C.D. Cal. 2018) (denying class certification where the plaintiffs did not provide "evidence subject to common proof that the [challenged] statement was . . . likely to deceive a reasonable consumer"); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML 13-2438, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017) ("Absent a consumer survey or other market research to indicate how consumers reacted to the [statements], and how they valued these statements compared to other attributes of the product and the energy supplement market generally, Plaintiffs have not offered sufficient evidence of materiality across the class."); *Kosta*, 308 F.R.D. at 230 (finding no "evidence to prove materiality on a classwide basis" where the plaintiff's expert "does not state that she reviewed any particular labels at issue, that she surveyed any consumers who purchased [the product], or even that the particular attributes challenged . . . would have been material to consumers"); *Jones v. ConAgra Foods, Inc.*, No. C12-01633, 2014 WL 2702726, at *15–16 (N.D. Cal. June 13, 2014) (finding that "Plaintiffs lack common proof of materiality" where their expert "did not explain *how* the challenged statements . . . were a factor in any consumer's purchasing decisions" and "did not survey any customers to assess whether the challenged statements were in fact material to their purchases").

Courts are particularly reluctant to certify a class where (again, as here) a defendant offers "[e]xpert evidence show[ing] that materiality and reliance varies from consumer to consumer." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014); *see, e.g.*, *Webb v. Carter's Inc.*, 272 F.R.D. 489, 503 (C.D. Cal. 2011) ("In light of this persuasive evidence that materiality and reliance would vary from consumer to consumer, the Court concludes that those elements are not subject to common proof . . . and that individual issues predominate with respect to the CLRA claims.").

Here, Plaintiff presents no evidence whatsoever to carry her burden to "offer some means of proving materiality and reliance by a reasonable consumer on a classwide basis" and the only relevant evidence in the record—including Plaintiff's own admissions and Apple's expert report—is squarely to the contrary. *Kosta*, 308 F.R.D. at 225, 229–30. Plaintiff's utter lack of evidence on this score is stark, especially when compared to the expert evidence still deemed insufficient to support certification in the cases cited above. The only declarations Plaintiff offers in support of her Motion are from herself and her counsel, none of whom is qualified to opine about an objective reasonable consumer's expectations and preferences. Plaintiff presents no expert testimony at all, much less testimony showing that a reasonable consumer's purchasing decisions would have been impacted by the alleged misstatements. Plaintiff instead relies solely on legal citation to argue that she *may* show reliance under the CLRA "under a single, objective, and common 'reasonable consumer' standard." Mot. at 20. But even if "a class-wide presumption of reliance and causation is *available*" to Plaintiff, she has "not shown that [she is] *entitled* to the presumption[] because [she has] not made a sufficient showing that the statements. . . were material to the class." *5 Hour Energy*, 2017 WL 2559615, at *7.

The only evidence Plaintiff does offer—her own testimony—tends to show that the alleged omissions are *not* material because she did not read the gift cards' packaging and continued to purchase iTunes gift cards even after she discovered that the $50 gift

card she purchased in April 2020 was subject to point-of-sale theft. Shay Dep. 59:16 – 21; Singh Decl. Ex. 7, at 12–13 (Plaintiff's response to Interrogatory 18); *see Townsend*, 303 F. Supp. 3d at 1043 ("[M]ateriality means that without the misrepresentation, the plaintiff would not have acted as he did." (citation omitted)).  Plaintiff continued to purchase iTunes gift cards even after she discovered that the $50 gift card she purchased in April 2020 was subject to point-of-sale theft.  *See* Shay Dep. 59:16 – 21; Singh Decl. Ex. 7, at 12–13 (Plaintiff's response to Interrogatory 18).  Plaintiff's husband, too, continued to purchase iTunes gift cards.  *See* Shay Dep. 60:15–18; Singh Decl. Ex. 6, at 7–8 (Plaintiff's response to Request for Admission 12).  Plaintiff's lack of objective evidence showing that the alleged omissions would be material to a reasonable person, especially when coupled with her own behavior to the contrary, fails to carry her burden to show predominance.  *See Algarin*, 300 F.R.D. at 454, 457 ("[I]t sounds in common sense that making repeat purchases indicates that the customer's expectations have been met."); *see, e.g., In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1088 (C.D. Cal. 2015) (denying certification due to plaintiff's admission that "he would have purchased NJOY e-cigarettes even if the packaging had disclosed" the alleged omission); *Johnson v. Harley-Davidson Motor Co.*, 285 F.R.D. 573, 581 (E.D. Cal. 2012) (The fact that "the former named plaintiffs, knowing that the motorcycles cause excessive heat, would still buy and recommend the class motorcycles . . . indicates that there are multiple factors affecting what 'reasonable consumers' would consider material.").

The only expert testimony in the class-certification record, from Apple's expert Dr. Ronald Wilcox, roundly undermines Plaintiff's claim that deception, materiality, and reliance are susceptible to class-wide proof.  Dr. Wilcox's unrebutted report offers a litany of evidence-based reasons why there "are innumerable variations in the experiences and information possessed by consumers, in the factors that influence consumers' purchasing decisions, and in the manner by which consumers react to

product warnings and the disclosure of safety information." *Sanchez v. Wal Mart Stores, Inc.*, No. 2:06-CV-02573, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009). Those reasons include the following:

- *First*, class members vary in the factors they consider when making gift card purchasing decisions, meaning that the degree to which any disclosure would affect their purchasing decisions would vary. *See* Wilcox Report ¶¶ 25–33; *see, e.g.*, *Algarin*, 300 F.R.D. at 457 (citing "varying factors that influence purchasing decision[s]" as a reason to deny certification).

- *Second*, consumers' diverse past experiences with gift cards would impact their evaluation of any disclosure. *See* Wilcox Report ¶¶ 34–38.

- *Third*, class members may already be aware of the risk of the type of theft alleged by Plaintiff, as Plaintiff herself was. *See id.* ¶¶ 39–41.

- *Fourth*, class members likely vary in their perception of any disclosed risk for reasons including, but not limited to, their prior experiences with similar events, environmental cues (like where they shop for gift cards), and varying risk of financial loss due to the gift card amount and potential remedies for theft. *See id.* ¶¶ 42–51. Here, where the incidence of the alleged theft is low, this "far-fetched concern mean[s] that each consumer would respond very differently to the disclosure of this risk." *Decker v. Mazda Motor of Am., Inc.*, No. SACV 11-0873, 2013 WL 12129281, at *8 (C.D. Cal. Mar. 29, 2013).

- *Fifth and finally*, consumers' variations in risk preferences will lead them to respond differently even to identical disclosures perceived identically. *See* Wilcox Report ¶¶ 52–55.

The bottom line is that "[c]lass members are likely to react differently to the disclosure of safety information." *Sanchez*, 2009 WL 1514435, at *2. Just as in the cases cited above, "reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns*, 655 F.3d at 1022–23.

15

## B. **Numerous Other Individualized Issues Predominate.**

Along with Plaintiff's failure to offer class-wide proof of deception, materiality, and reliance, Plaintiff fails to carry her burden to show why myriad other individualized issues—including relating to injury, standing, "consumer" status under the CLRA, damages, and choice of law—do not predominate over any common questions.

*1. Uninjured class members:* First and foremost, Plaintiff's putative class includes a large number of uninjured class members. Plaintiff has not proposed any methodology for identifying and excluding uninjured class members, and, in any case, determining whether each class member was injured and was injured by Apple's alleged misstatements and omissions demands an individualized inquiry.

The reasons why class members may be uninjured are diverse. For example, Dr. Wilcox notes that putative class members who purchased gift cards using their credit card may be able to dispute the transaction with their credit card issuer and can receive a refund. Wilcox Report ¶¶ 48–49.

More still, the class definition—which does not limit which "third party" may redeem a gift card—includes individuals whose gift cards were redeemed by a relative or friend or other person connected to the purchaser or recipient.

The existence of a large number of uninjured class members renders the class fatally overbroad. *See Castillo*, 980 F.3d at 732–33 (affirming district court's denial of

OPPOSITION TO MOTION FOR CLASS CERTIFICATION
CASE NO. 3:20-CV-1629-JO-BLM

class certification where proposed class was overbroad); *Junod v. NWP Servs. Co.*, No. 14-CV-1734, 2016 WL 6306030, at *6 (C.D. Cal. July 18, 2016) ("Courts in this circuit have consistently denied certification where class definitions include both harmed and unharmed members").  Directly on point here: courts in this Circuit refuse to certify CLRA classes where, as here, the class definition fails to "exclude purchasers who have already received refunds."  *Algarin*, 300 F.R.D. at 455; *see e.g.*, *Conde v. Sensa*, No. 14-CV-51, 2018 WL 4297056, at *17 (S.D. Cal. Sept. 10, 2018) (denying certification of class that did "not exclude purchasers who have already received funds from the FTC settlement"); *Sandoval v. Pharmacare US, Inc.*, No. 15-CV-0120, 2016 WL 3554919, at *8 (S.D. Cal. June 10, 2016) ("[C]lass certification is not proper . . . to the extent that the class includes consumers . . . who obtained full refunds"), *aff'd*, 730 F. App'x 417 (9th Cir. 2018); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010) (denying certification of class that did "not exclude persons who already have received refunds or replacement parts").  Even if the existence of uninjured class members does not alone defeat certification, the need for individualized inquiries to determine whether each class member is indeed injured and whether the mechanism of their injury is consistent with Plaintiff's allegations counsels against predominance.

> *2. Individualized standing inquiries*:  Plaintiff also has failed to carry her burden to show that key prerequisites for Article III standing—an injury-in-fact traceable to Defendants—can be proved on a class-wide basis.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages.").

> Plaintiff's putative class demands individualized inquiries into standing on several fronts.  *First*, the high number of uninjured class members within Plaintiff's putative class and the diverse reasons why they are not injured calls for individualized inquiries into each class members' alleged harm.  *Second*, the putative class also

17

includes many individuals whose injuries were not traceable to any purported misrepresentations or omissions by Apple. As explained above, there are likely many class members for whom the risk of theft was known or would have had no impact on their purchasing decisions. *See supra* at 15; *see, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (finding a class definition fatally overbroad where it included members who "learned of the [alleged omissions] before they purchased [the product]"). This is the case for Plaintiff herself, as she purchased gift cards after learning of the alleged omissions. *See supra* at 8. Further undermining class-wide proof of causation are class members who are not actually victims of the point-of-sale theft underlying Plaintiff's claims. ██████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████ Or it could occur where individuals claimed the funds themselves and are falsely claiming that an unrelated account redeemed their gift card. *See, e.g.*, Luongo Dep. 43:12–44:11, 136:16–137:7.

Injury and traceability will be especially painstaking to prove given how rarely point-of-sale theft occurs. Even though, according to Plaintiff, Apple's allegedly "defective design, manufacture and/or packaging of the Apple gift cards" rendered all gift cards vulnerable to point-of-sale theft, SAC ¶ 18, this supposed "defect" (the existence of which Apple disputes) manifested at most in a small minority—a fraction of a percent—of iTunes gift cards. *See* Luongo Dep. 39:2–12, 95:18–96:10; Gomez Decl. ¶ 9. Millions of other consumers were able to successfully redeem their iTunes gift cards. Determining which of the millions of iTunes gift card consumers purchased a gift card that was subject to "point-of-sale" theft, were in fact injured by it, and whose injury is traceable to the alleged misrepresentations or omissions by Apple is a highly individualized inquiry ill-suited to class-wide resolution.

*3. Determining "consumer" status*: Individualized inquiries will also be required

to determine the context and purpose of each class member's gift card purchase, as putative class members who purchased gift cards for business purposes would not be "consumers" entitled to recover under the CLRA. Cal. Civ. Code § 1780; *see Ewert v. eBay, Inc.*, No. C-07-02198, 2010 WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010) ("[S]ellers who purchased [products] for business purposes would not be 'consumers' entitled to recover under the CLRA"). The CLRA allows recovery only by a "consumer," defined as "an individual who seeks or acquires . . . any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d).

Plaintiff's proposed class likely includes many non-"consumers." Dr. Wilcox cites a survey finding that 63% of respondents had received a gift card from their employer, Wilcox Report ¶ 29, and Plaintiff herself stated in her deposition that she purchased gift cards for use in her husband's business, Shay Dep. at 121:9–17. Plaintiff "failed to suggest any potentially viable means for determining the consumer status of class members [under the CLRA] without engaging in individualized inquiry into the circumstances of each class member. . . . By failing to show how class members' consumer status can be determined without individualized inquiry, plaintiff[] ha[s] failed to meet [her] burden of establishing that common questions of law and fact predominate." *Ewert*, 2010 WL 4269259, at *9 (citation omitted).

*4. Individualized inquiries in establishing injury*: Plaintiff also has failed to carry her burden to offer a basis for "measur[ing] damages resulting from the particular . . . injury on which . . . liability in this action is premised." *Comcast*, 569 U.S. at 36. Rather than proposing a model or offering an expert declaration describing how such a model could work, Plaintiff claims without any support that "the amount of damages . . . is subject to a formulaic calculation" because "[t]he damages may be measured by . . . the amount prepaid on the gift card (and typically appearing on the face of the card)," which is "easily determined by a review of Apple's records." Mot. at 22–23. But Plaintiff has not shown that this blunt approach supports class-wide calculation of

19

the fact or amount of damages.

As explained above, many class-members have not been injured at all or have been compensated in whole or in part. Even injured members will vary in the degree to which any alleged misrepresentations or omissions actually harmed them, since, as Dr. Wilcox's report makes a clear, consumers vary widely on the value they would ascribe to any disclosure of the risk of theft—which will require individualized inquiries to "'translat[e] . . . the *legal theory of the harmful event* into an analysis of the economic impact *of that event*.'" *Comcast* 569 U.S. at 38 (citation omitted). The evidence further shows that gift cards are frequently purchased at a discount to their face value—which is one more individualized inquiry that must be undertaken to determine each class member's damages. *See, e.g.*, Wilcox Report ¶ 36 (quoting one consumer who "buy[s] iTunes gift cards at 15% off"); *id.* ¶ 30 (describing "gift card purchase discount[s]"). Given that class members may recover only to the extent of their injury, individualized inquiries are required to determine the amount each class member paid for their gift cards and the extent of their loss, and to determine whether and to what extent Apple's alleged misstatements and omissions caused that loss.

5. *Individualized choice-of-law issues*: Plaintiff disregards that choice-of-law issues "compound the [ ] disparities" among class members and further undermine predominance. *Zinser*, 253 F.3d at 1189 (alteration in original) (citation omitted). Plaintiff claims that "all questions will be determined under the same state law (California) based on the [gift cards'] choice-of-law clause." Mot. at 14. But that is not so, as the gift cards did not include a choice-of-law clause for part of the class period—which will necessitate individualized choice-of-law inquiries across the nationwide class—and included a Virginia choice-of-law clause for another portion of the class period. *See supra* at 5. Here, as in *Mazza*—which likewise involved putative class members whose consumer-protection claims would be governed by the laws of California, Virginia, and many other states—"[b]ecause the law of multiple

20

jurisdictions applies," material variations in state consumer-protection laws "overwhelm common issues and preclude predominance." *Mazza*, 666 F.3d at 596.[3]

These issues, taken together, confirm that individual issues are "more prevalent [and] important" than any common issues. *Tyson Foods*, 577 U.S. at 453 (citation omitted). Plaintiff cannot avoid her burden to show predominance by further narrowing the definition of the class—as she has already done by revising the class definition to cover only those consumers whose iTunes gift cards were redeemed by a third party and had a redemption attempt prior to activation. *Compare* Mot. at 10*, with* SAC ¶ 32 (excluding from the class definition the requirement of a prior activation attempt). Any effort by Plaintiff to "defin[e] the class to include only those individuals who were 'injured' . . . threatens to create a 'fail safe' class," which Rule 23 does not permit. *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016). These classes are "unfair," "unmanageable," and "should not be certified." *Pepka v. Kohl's Dep't Stores, Inc.*, No. CV-16-4293, 2016 WL 8919460, at *3 (C.D. Cal. Dec. 21, 2016) (rejecting class definition limited to individuals who did not provide "prior express consent" as improper because it improperly sidestepped individualized inquiries into *whether* each class member provided prior express consent).

## II.    Plaintiff Is Not An Adequate Or Typical Class Representative.

Rule 23(a)'s typicality and adequacy requirements "assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. "[C]ertification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* (citations omitted). The defendant does not need to show that it will *prevail* on those defenses; rather, if there is a mere "danger" that the named plaintiff will be "preoccupied with

---

[3] Numerous decisions following *Mazza* have held that material variations in state law with respect to negligent misrepresentation "preclude certification of a nationwide class alleging claims under the various states' common law of [] negligent misrepresentation." *Woodard v. Labrada*, No. EDCV 16-189, 2021 WL 4499184, at *40 (C.D. Cal. Aug. 31, 2021) (collecting cases).

defenses unique to [her]," then she is not an adequate or typical class representative. *Id.* (citation omitted); *see Yoon v. Gap, Inc.*, No. CV 08-05712, 2010 WL 11597565, at *5 (C.D. Cal. Oct. 6, 2010) (holding that individualized defenses can defeat certification "[w]hether or not these defenses would ultimately be found to have merit").

Here, as in *Sanchez v. Wal Mart*, *"*Plaintiff's claims do not satisfy either the typicality or the adequacy requirements for many of the same reasons that her claims do not satisfy the commonality and predominance requirements." 2009 WL 1514435, at *3. Here, as there, "[t]he putative class will include persons [like Plaintiff] who knew about the alleged hazard, yet purchased the product anyway; people[] . . . who bought the [product] because of . . . other characteristics; and many others for whom the 'warning' would have made no difference in their purchase decision." *Id.* "As a result, there is no 'typical' claim or experience, certainly not Plaintiff's experience, that can be extrapolated classwide" and "the typicality requirement has not been satisfied." *Id.*

Even were there a typical claim or experience in the class, Plaintiff's would not be it. Plaintiff argues that "[she] and the putative class members were exposed to the same material misrepresentations and omissions, and were injured in the same manner." Mot. at 16. But Plaintiff's claims are not typical of putative class members because disclosure would not have impacted her purchasing decision: she did not review the entire gift card package prior to purchase and continued to buy gift cards even after learning of the risk of theft. Shay Dep. 73:1–15, 110:15–19, 136:1–5; *see Algarin*, 300 F.R.D. at 458 (denying certification where "the named Plaintiffs' reliance on the alleged misrepresentations was not typical of other class members"); *Jones*, 2014 WL 2702726, at *8 (finding the plaintiff inadequate when her "deposition revealed that she never visited the websites"). Plaintiff's admissions prove that any *de minimis* risk of point-of-sale theft could not have been material to her and that any supposed injury was not caused by Apple's alleged misrepresentations or omissions. Plaintiff is thus an atypical and inadequate class representative.

22

### III.   **Plaintiff's Class Is Unmanageable And Overbroad.**

To determine whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," the Court must consider "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Courts routinely find that putative classes are unmanageable and improper when they are overbroad and sweep in unharmed class members. *See Castillo*, 980 F.3d at 732–33 (affirming district court's denial of class certification where proposed class was overbroad); *Junod*, 2016 WL 6306030, at *6 ("Courts in this circuit have consistently denied certification where class definitions include both harmed and unharmed members").

As explained above, the class definition is overbroad on several scores, including because it includes numerous putative class members who were made whole by third-party retailers or financial institutions and because Plaintiff's class definition includes loss or theft situations other than point-of-sale theft. *See supra* at 16–18. Plaintiff has failed to even acknowledge the existence of uninjured class members, much less has she proposed a methodology for identifying them and excluding them from the class.

Given the substantial overbreadth of the class definition, the heterogeneity of the class members' claims and the unique features of Plaintiff's claims, the difficulty of managing a class action, and available non-class alternatives, this Court should find that Plaintiff has not carried her burden to prove each of the requirements of Rule 23.

### VI.   **The Court Should Not Certify Issues Classes Under Rule 23(c)(4).**

Rule 23(c)(4) provides that, "[w]hen *appropriate*, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4) (emphasis added). "[A] Rule 23(c)(4) issues class must still meet the requirements of Rule 23(a) and (b)." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015). Certification of issues classes thus "requires that common questions predominate over individual questions with respect to only the specific issue that is certified." *Stickles v. Atria Senior Living, Inc.*, No. C 20-09220, 2021 WL

23

6117702 at *7 (N.D. Cal. Dec. 27, 2021). "Certification of an issues class under Rule 23(c)(4) is 'appropriate' only if it 'materially advances the disposition of the litigation as a whole.'" *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017) (quoting William B. Rubenstein, 2 Newberg on Class Actions 4:90 (5th ed. 2012)).

This Court should deny Plaintiff's fallback request for certification of issues classes (Mot. at 24–25) because the classes Plaintiff proposes cannot satisfy Rule 23's requirements and certifying issues classes would not "materially advance resolution of the *entire* case." *Rahman*, 693 F. App'x at 579.

*First*, many of the issues Plaintiff proposes to certify demand the same sort of individualized inquiries that doom Plaintiff's request for certification of the entire action. For example, Plaintiff seeks to certify issues relating to the materiality of alleged misrepresentations and omissions, including "whether Apple had exclusive knowledge of material facts," "whether Apple actively concealed a material fact," "whether Apple made partial representations but also suppressed some material fact," and "whether Apple misrepresented a past or existing material fact." Mot. at 25. But Plaintiff again offers no support for the claim that these issues of materiality are any more amenable to class-wide resolution or why Plaintiff is a typical class member with respect to these issues—these issue classes must accordingly fail. *See supra* at 10–23.

Similarly, many of Plaintiff's proposed issues classes relate to the nature of Apple's representations to consumers. *See* Mot. at 24. But, as explained above and in Dr. Wilcox's expert report, the diversity of consumer interactions with and perceptions of any such representations overwhelms any common issues relating to such representations, and such classes thus likewise fail to meet Rule 23's strict demands. *See supra* at 14–16. So, too, should this Court deny Plaintiff's requests for certification of other issues raising individualized questions on their face, such as "whether Apple is in a fiduciary relationship with the consumer," whether specific "iTunes gift cards had deteriorated unreasonably or were altered or used," and "whether Apple intended

24

to induce Plaintiff's reliance." Mot. at 24–25. Plaintiff's proposed issues classes do not solve the problems of her broader class and it would "stretch[] the rule beyond its intended application" to "divi[de] . . . multiple issues for certification . . . where the aggregation of those issues would otherwise not be certifiable." *Tasion Commc'ns*, 308 F.R.D. at 639 (citation omitted).

*Second,* even if Plaintiff's issues classes could satisfy Rule 23, certification should still be denied because resolving these issues "would leave many other issues to be adjudicated." *Id.* at 640. Plaintiff's issues classes do not resolve key questions of reliance, standing, damages, and so on—which would still demand individualized inquiries. *See supra* at 10–21. "Unlike the typical Rule 23(c)(4) case where there is certification of liability, leaving only damages to be litigated on an individual basis . . . certification here of [Plaintiff's issues] would resolve only [a few] of many issues necessary to establish only liability." *Taison Commc'ns*, 308 F.R.D. at 640.

Here, as in the many cases where courts in this Circuit refuse to allow the narrow exception for issue classes under Rule 23(c)(4) to swallow Rule 23 whole, certification would not "fundamentally advanc[e] the resolution of the litigation" and should be denied. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 581 (C.D. Cal. 2014); *see, e.g.*, *Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 882 (9th Cir. 2020) (affirming denial of issue classes where "numerous individualized issues affecting determinations of liability make Rule 23(c)(4) certification inefficient"); *D.C. ex rel. Garter v. Cnty. of San Diego*, 783 F. App'x 766, 768 (9th Cir. 2019) (affirming denial of liability-only class where "[plaintiff] failed to show that damages could be efficiently calculated on a classwide basis"); *Rahman*, 693 F. App'x at 580 (affirming denial of certification of "liability-only class" as it would not "materially advance the litigation").

## CONCLUSION

This Court should deny Plaintiff's motion for class certification.

DATED: November 18, 2022

JENNER & BLOCK LLP

WEIL, GOTSHAL & MANGES LLP


By:   /s/ David R. Singh
_____
Attorneys for Defendants
Apple Inc. and Apple Value Services, LLC
Email: david.singh@weil.com

26