JAMES R. HAWKINS (SBN 192925)
james@jameshawkinsaplc.com
MALTE L. L. FARNAES (SBN 222608)
malte@jameshawkinsaplc.com
CHRISTINA M. LUCIO (SBN 253677)
christina@jameshawkinsaplc.com
MITCHELL J. MURRAY (SBN 285691)
mitchell@jameshawkinsaplc.com
**JAMES HAWKINS, APLC**
9880 Research Drive, Suite 200
Irvine, CA 92618
Tel.: (949) 387-7200
Fax: (949) 387-6676

Attorneys for Plaintiff RACHAEL SHAY,
on behalf of herself and all others similarly situated

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL SHAY, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> APPLE INC., a Delaware corporation; APPLE VALUE SERVICES, LLC, a Virginia limited liability corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 3:20-cv-1629-JO-BLM <br><br> **<u>CLASS ACTION</u>** <br><br> **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Date: January 11, 2023 <br> Time: 9:30 a.m. <br> Judge: Hon. Jinsook Ohta <br> Courtroom: 4C, 4th Floor <br><br> Complaint Filed: May 28, 2020 <br> Removal Filed: August 21, 2020 <br> Trial Date: None Set <br><br> **<u>UNDER SEAL</u>** |

## I.      INTRODUCTION

Defendant's Opposition does nothing to undermine the conclusion that class action treatment under Rule 23 is the superior vehicle for the adjudication of Plaintiff's claims. This case challenges Apple's unlawful and deceptive business practices around the sale of iTunes gift cards. Apple admits that it knowingly sold more than ███████ iTunes gift cards to putative Class Members during the Class Period that ███████ ████████████████████████. (Ex. 31, Interrogatory No. 24; Ex. 30, Requests 1-5). Apple argues that ███████ gift cards is a "miniscule percentage" of the total gift cards sold during the Class Period and that this type of gift card loss "impacts cards industrywide." These claims and defenses should be adjudicated on a class wide basis.

## II.     ARGUMENT

### 1.      PLAINTIFF SATISFIES RULES 23(a) AND 23(b)(3) [1]

### A.      Plaintiff is a Typical and Adequate Class Representative

Apple's argument that Plaintiff's claims are not typical of the Class lacks merit. All Class Members, including Plaintiff, were subject to the same unlawful business practices and exposed to the same representations and omissions, namely Apple knowingly marketed and sold iTunes gift cards as new even though they had ███████ █████████████████████████, and failed to disclose this material information to consumers. *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in by the same course of conduct."). These practices are not unique to Plaintiff. Indeed, Apple concedes that all Class Members, including Plaintiff, purchased iTunes gift cards which had ███████████████████ ███████████. The only variable between the Class Members is the amount of their gift cards.

---

[1] Plaintiff does not address the elements of Rule 23 that Apple does not challenge (i.e., numerosity, ascertainability, commonality, or adequacy of class counsel).

PLAINTIFF'S REPLY MEMORANDUM

Apple speculates that there is no typical experience that can be extrapolated class wide because some class members might have known about the gift card theft, yet purchased the gift card anyway, or purchased the gift cards because of "other characteristics", or would not have altered their purchasing decision because of a warning. Opp. at 22.  Tellingly, despite having access to a database of thousands of consumers who complained that their gift cards were already redeemed, Apple did not provide evidence of a single Class Member who knew the gift card was compromised but purchased it anyway. (Opp. at 6; Gomez Decl. ¶ 7 (███████████████████████████████████████████████████████████████████████). Class Members were deceived about the ██████████████ ██████ because Apple actively conceals this information from the public.[2] (See Dkt. 66). There is also no evidence that any Class Member purchased a gift card for "other characteristics." It is beyond dispute that the most important reason for purchasing an iTunes gift card is to obtain the stated amount of Apple credit. Further, Apple's expert did not survey any Class Members to determine the reason(s) why they purchased an iTunes gift card or whether a "warning" would have affected the purchase decision.

Apple's reliance on *Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, is misplaced. *Sanchez's* reasoning for denying class certification – that "innumerable variations in the experiences and information possessed by consumers" for purchasing a product had some bearing on predominance under Rule 23 – is directly contradicted by the *In re Tobacco II Cases*. See, *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 481 (C.D. Cal. 2012) ("To the extent the holding in *Sanchez* was ever accurate – which this Court very much doubts – *Sanchez* is certainly no longer good law and has been recognized by courts to be 'directly contradicted by the *In re Tobacco II* decision'.") *Tait*, 289 F.R.D. at 481. (citation omitted).

---

[2] Even in this case, Apple has marked all this information "Confidential" subject to a protective order and sought to have this information seal from the public record.

PLAINTIFF'S REPLY MEMORANDUM

Moreover, Apple argues that Plaintiff's claims are not typical because Plaintiff "did not review the entire gift card packaging prior to purchase." (Opp. at 22). First, Plaintiff necessarily reviewed the gift card packaging because she intentionally purchased an iTunes gift card with a $50 denomination. Moreover, this is a red herring as nothing on the packaging disclosed that the gift card was compromised ███████ ███████████████████. But Apple knew this.

**B.    Plaintiff Has Demonstrated That Common Issues Predominate**

Apple argues that Plaintiff cannot establish predominance under Rule 23(b)(3) because: (1) Plaintiff offers no class-wide proof of deception, materiality, or reliance; and (2) individualized issues predominate. Opp. at 10-16.

### i.    Plaintiff Can Establish Materiality and Reliance on a Class Wide Basis at Trial

Rule 23(b)(3) does not require a plaintiff to prove materiality at the class-certification stage. *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). What Rule 23(b)(3) does require is that a plaintiff seeking class certification prove that each element of her claim is susceptible to class wide proof. *Id*. "Proof that statements were material to the plaintiff purchaser class, and that class members relied on those statements in making purchasing decisions, does not always require individualized evidence for each class member." *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 224 (N.D. Cal. 2015), citing *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010), as *modified on denial of reh'g* (Feb. 8, 2010) (plaintiffs satisfied materiality requirement on a classwide basis where court "assume[d] that a reasonable person would not knowingly commit a criminal act" and therefore the legality of possessing the product was material).

Here, the question is whether a reasonable person would find the following material: (1) the representation that the purchase of a gift card entitled the purchaser or recipient to redeem the gift card for the value displayed; and (2) Apple's concealment that ████████████████████████████████████████. It requires no

3

PLAINTIFF'S REPLY MEMORANDUM

stretch to conclude that the proper answer is "yes" – a reasonable person purchases a gift card because they believe they will receive equivalent value in the form of store credit and they would not purchase a gift card if they knew that the gift card was ████ ███████████████████████████████████████. The trier of fact does not need an expert to explain that when a consumer purchases a gift card, they consider what they will receive in exchange for their money – Apple store credit. Indeed, a source cited in the Wilcox Report expressly acknowledges the materiality of these representations, as it concludes that the risk of loss of the value of the gift card is a major concern for consumers in purchasing gift cards.  Wilcox Report, ¶ 29, fn. 27.

The source cited, "Get the Facts on Gift Cards," *Blackhawk Network*, April 6, 2020, states that "47% of consumers cite concerns over card expiration as their top barrier to gift card purchasing."  (*Id*. at p. 22). Card expiration is functionally identical to the value loss through the type of scheme which Apple concealed from consumers, except consumers have no agency to avoid this loss of value. It reasonably follows that consumers concerned about gift card expiration would be even more concerned about their gift card's value disappearing as a result of a known threat.  If the risk of expiration was the top concern to nearly half of surveyed consumers, then it stands to reason that a similar, less avoidable risk would likewise be a top concern for consumers. Such a concern is undeniably material to consumers and reliance can be safely inferred.

Apple advertises a US dollar value on the face of their gift cards which a reasonable consumer would undeniably interpret to mean that the purchased gift card wouldyield the corresponding dollar value in Apple credit. Apple's representation of the value of the gift card on the packaging is unquestionably material because the entire value of a gift card is its dollar value when redeemed. After all, that is the entire purpose of purchasing a gift card. Concealed facts to the contrary, such as the known fact that the gift card was ██████████████████████████████ and is at risk of losing its entire value completely outside of the consumer's control, is material under the CLRA, and reliance can be inferred.

PLAINTIFF'S REPLY MEMORANDUM

Further, Apple's contention that a claim for negligent misrepresentation cannot be certified because it requires proof of "actual reliance" that must be proved on an individual basis is inconsistent with applicable law.  Opp. at 11, fn. 2. In California, "[a] plaintiff is not required to allege that [] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th at 328. Instead, "[i]t is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing [plaintiff's] decision." *Whiteley v. Philip Morris Inc.*, 117 Cal. App. 4th 635, 678 (2004) (internal quotations omitted). Here, Plaintiff may satisfy predominance for her negligent misrepresentation claim for identical reasons as her consumer protection claim. "Like claims under the CLRA, common law… negligent misrepresentation claims benefit from a presumption of classwide reliance under California law." *Woodard v. Labrada*, No. EDCV 16-189 JGB (SPx), 2021 U.S. Dist. LEXIS 189649, at *101-02 (C.D. Cal. Aug. 31, 2021) (string citation) (certifying class re negligent misrepresentation claim).

### ii.    Common Issues Predominate Over Individual Issues

Apple argues that individualized issues predominate over common questions in five ways: (1) uninjured class members; (2) individualized standing inquiries; (3) determining "consumer" status; (4) individualized inquiries in establishing injury; and (5) individualized choice-of-law inquiries. Plaintiff addresses arguments 1, 2 and 4 together and then arguments 3 and 5 separately.

### a.    The Potential Existence of Uninjured Class Members Does Not Defeat Predominance

Apple's first, second and fourth predominance arguments are largely the same. Namely, Apple argues that Plaintiff's Class includes a large number of uninjured class members who may not have Article III standing. Opp. at 16, 17 and 19. Apple contends that some of the putative class members *may* not have suffered an injury because they *may* have been able to dispute the transaction with their credit card issuer and receive a refund while other class members *may* have received refunds from the third-party retailer

5

PLAINTIFF'S REPLY MEMORANDUM

who sold them the gift card. *Id*. at 16. Apple further argues that the purported existence of a large number of uninjured class members raises a question as to whether the Class has Article III standing. Opp. at 17-18.

In *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, the *en banc* court rejected the proposition that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members and affirmed class certification. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) [holding the "de minimis" requirement is "inconsistent with Rule 23(b)(3), which requires only that the district court determine after rigorous analysis whether the common question predominates over any individual questions, including individual questions about injury or entitlement to damages."], *cert. denied* by *Starkist Co. v. Grocery*, 2022 U.S. Lexis 4977 (U.S., Nov. 14, 2022).

The evidence overwhelmingly proves that Class Members did not receive refunds, thereby undermining Apple's argument that Plaintiff's Class may include many uninjured Class Members. (See Shay Decl., ¶ 11; Ex. 21-25). Indeed, Apple presented no evidence that third party retailers have a refund policy that would refund consumers or that credit card issuers have a chargeback policy that would reverse the charge under these circumstances. Thus, Apple's argument that individualized issues predominate because there is more than a de minimis number of uninjured class members lacks evidentiary basis. [3]

Apple's reliance on *Castillo v. Bank of America, NA*, 980 F.3d 723 (9th Cir. 2020) is similarly misplaced. In *Castillo*, the plaintiff argued that Rule 23(b)(3) certification was proper because "all of the alleged individualized inquires [were] mere questions of damages (and not liability)." *Id*. at 731. The Court disagreed, distinguishing between the *calculation* of damages and the *existence* of damages in the first place. As the Court explained, "[t]he issue [was] not that [the plaintiff was] unable to prove the extent of the

---

[3] The Court may modify the definition to exclude individuals who already received a refund if the Court believes the definition may include uninjured Class Members.

PLAINTIFF'S REPLY MEMORANDUM

damages suffered by each individual plaintiff at this stage." *Id*. at 732. "Instead, it [was] that [the plaintiff had] been unable to provide a common method of proving the fact of injury and any liability." *Id*. (emphases added).  Thus, the Court affirmed the district court's denial of certification, holding "[i]ndividual differences in *calculating* the amount of damages will not defeat class certification where common issues otherwise predominate . . . , [but] if the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance." *Id*. at 730 (emphases added) (quotation marks, citation, and brackets omitted).

Moreover, Apple's reliance on *Algarin v. Maybelline* for the proposition that the proposed class is overly broad as it includes uninjured purchasers is unpersuasive. Opp. at 17. In *Algarin*, Maybelline argued, in the context of the *ascertainability* requirement (which Apple concedes), that because the class did not exclude purchasers who received refunds through Maybelline's Refund program, it was overbroad and not ascertainable. *Algarin v. Maybelline, Ltd. Liab. Co.*, 300 F.R.D. 444, 455 (S.D. Cal. 2014) (internal citation omitted).  Unlike Maybelline, however, Apple admits that it did not provide a refund program for "already redeemed" gift cards. (Opp. at 8 ["Consistent with its policy, Apple did not provide Plaintiff a refund."]). In addition, unlike *Algarin*, Apple has not provided any evidence that Class Members actually received a refund.

Finally, *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) does not support Apple's argument. In *TransUnion*, the Supreme Court, considering an appeal from a judgment in a FCRA class action, expressly held open the question whether every class member must demonstrate standing *before* a court certifies a class. *TransUnion*, 141 S.Ct. at 228 n.4 ("We do not here address the distinct question whether every class member must demonstrate standing *before* a court certifies a class." (citation omitted)). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *TransUnion*, 141 S.Ct. at 2208 (citation omitted). Here, the Court can conclude that Plaintiff's evidence is capable of establishing liability on a class-wide basis, sufficient to show an injury-in-fact traceable to Apple's

PLAINTIFF'S REPLY MEMORANDUM

conduct, and redressable with a favorable ruling - therefore Plaintiff has adequately demonstrated Article III standing at this stage.  *Olean*, 31 F.4th at 682 ("We need not consider the [defendants'] argument that the possible presence of a large number of uninjured class members raises an Article III issue, because the [plaintiffs] have demonstrated that all class members have standing here.").

### b.   Determining "Consumer" Status Does Not Defeat Predominance

Third, Apple contends that the Court would have to engage in individualized inquiries to determine whether each class member is entitled to protection under the CLRA as a "consumer." Opp. at 19. But Apple admits iTunes gift cards could not be used to purchase hardware (such as laptops, iPhones, tablets, or headphones) from the Apple Store. Opp. at 5, fn. 1. Therefore, it is "more likely" that consumers purchased iTunes gift cards for "personal, household, or family purposes" than for business purposes.

However, even assuming some consumers did purchase or acquire gift cards for non-consumer purposes, this would not defeat class certification. There is no requirement that "the identity of the class members . . . be known at the time of certification." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (citations omitted). "If class actions could be defeated because membership was difficult to ascertain at the class certification stage, 'there would be no such thing as a consumer class action.'"  *Id*. As long as the class definition is sufficiently definite to identify putative class members, "[t]he challenges entailed in the administration of this class  are not so burdensome as to defeat certification." *Id*.

Indeed, courts have repeatedly rejected this argument in the context of certification motions.  See e.g., *Gold v. Midland Credit Management, Inc.*, 306 F.R.D. 623, 2014 WL 5026720 (N.D. Cal. 2014) (rejecting argument that certification should be denied on basis that individualized inquiry was necessary into whether debt was for consumer  purpose); *Butto  v.  Collecto,  Inc.*,  290  F.R.D.  372  (E.D. N.Y 2013) (same); *Wells v. McDonough, NPC*, 188 F.R.D. 277 (N.D. Ill. 1999) (same); *Aguayo v.*

PLAINTIFF'S REPLY MEMORANDUM

*United States Bank* (S.D.Cal. Apr. 1, 2015, No. 08-CV-2139 W (LSP)) 2015 U.S.Dist.LEXIS 189722, at *1-3.) (same); *Astiana v. Kashi Co.*, 291 F.R.D. at 500.

Courts consistently find that it is not arduous to ask potential class members the simple question of whether an individual transaction is a 'consumer' transaction.  See, *Butto,* 290 F.R.D. at 383 (citations omitted). Indeed, "courts in this circuit have found proposed classes ascertainable even when the only way to determine class membership is with self-identification through affidavits." *Krueger v. Wyeth, Inc*., 310 F.R.D. 468, 476 (S.D. Cal. 2015); *In re Pfa Ins. Mktg. Litig*., No. 4:18-cv-03771 YGR, 2021 U.S. Dist. LEXIS 244526, at *67 (N.D. Cal. Nov. 3, 2021). Thus, Class Members can be asked to self-identify by answering a single question in a claim form under penalty of perjury – whether they purchased the iTunes gift card for personal or business purposes. Such an approach is accepted because a sworn statement, made under penalty of perjury, has some inherent reliability and people are not expected to lie in connection with a judicial proceeding. *See, Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2016 U.S. Dist. LEXIS 184861, at *49 (C.D. Cal. Mar. 23, 2016).

### c. Individualized Choice-of-Law Issues Do Not Defeat Predominance

Finally, Apple argues that individualized choice-of-law issues would defeat predominance and preclude class certification. Opp. at 20. Specifically, Apple argues that the terms and conditions for gift cards did not include a choice-of-law clause for part of the class period.  However, as detailed in the Reply Declaration of Mitchell J. Murray, the only time period in which there was not a choice-of-law provision providing for California law was for gift cards with the URL from https://www.apple.com/us/go/legal/gc from May 2017 to May 2018. All other class periods during the Class Period and gift cards provide for California law.

With regards to the Virginia choice-of-law provision from July 31, 2020, Apple replaced the iTunes gift card with the Apple Gift Card in July 2020. (Opp. at 5, fn. 1; Luongo Depo. at 11). Accordingly, Plaintiff only seeks to certify a class until July 31, 2020, which renders the Virginia choice-of-law provision moot.

PLAINTIFF'S REPLY MEMORANDUM

## C.     The Class Mechanism is Superior and Plaintiff's Claims are Manageable

As explained by the Ninth Circuit, "[i]n light of the small size of the putative class members' potential individual recovery, class certification may be the only feasible means for them to adjudicate their claims." *Leyva*, 716 F.3d at 513-14*; Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d 1152, 1163 (9th Cir. 2001) (superiority satisfied where class members would recover, at most, $1,330). Here, the potential individual recovery will range from $10 to $500 which makes this case the only feasible means for Class Members to adjudicate their claims, as evidence by the lack of any other cases encompassing the Class.

### 2.     PLAINTIFF HAS SATISFIED EACH OF THE REQUIREMENTS FOR ISSUE CERTIFICATION UNDER RULE 23(c)(4)

Because all the issues for establishing liability can be determined based on common proof, certification is the superior method for resolving this action. If for any reason, the predominance requirement is not deemed satisfied, the Class should be certified for liability purposes only under Rule 23(c)(4), as the Rule 23(a) requirements are satisfied. An adjudication as to the common issues, such as materiality and duty to disclose would assist Class Members in their individual claims and obviate the need for multiple trials on the same issues. Each individual class member could then prove liability and damages on an individual basis, either by trial or through another mechanism to be determined by the parties and approved by the Court. This would certainly be more efficient than multiple trials to resolve the same issues.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) certify the Class and Subclass as defined as to the negligent misrepresentation claim; (2) certify the Class and Subclass as defined as to the CLRA claim; (3) appoint the named Plaintiff as class representative; and (4) appoint Plaintiff's counsel as Class Counsel. If for any reason certification is denied, Plaintiff requests leave to amend.

PLAINTIFF'S REPLY MEMORANDUM

Dated: December 30, 2022          **JAMES HAWKINS APLC**


By:   /s/ Mitchell Murray
      James R. Hawkins
      Malte L. L. Farnaes
      Christina M. Lucio
      Mitchell J. Murray

      Attorneys for Plaintiff and the putative class

PLAINTIFF'S REPLY MEMORANDUM