JAMES R. HAWKINS (SBN 192925)
james@jameshawkinsaplc.com
MALTE L. L. FARNAES (SBN 222608)
malte@jameshawkinsaplc.com
CHRISTINA M. LUCIO (SBN 253677)
christina@jameshawkinsaplc.com
MITCHELL J. MURRAY (SBN 285691)
mitchell@jameshawkinsaplc.com
**JAMES HAWKINS APLC**
9880 Research Drive, Suite 200
Irvine, CA 92618
Telephone: (949) 387-7200
Facsimile: (949) 387-6676

Attorneys for Plaintiff RACHAEL SHAY,
on behalf of herself and all others similarly situated

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL SHAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a Delaware corporation; APPLE VALUE SERVICES, LLC, a Virginia limited liability corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:20-cv-1629-JO-BLM<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD**<br><br>Date: January 17, 2024<br>Time: 9:30 a.m.<br>Judge: Hon. Jinsook Ohta<br>Courtroom: 4C, 4th Floor |

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF MOTION ……………...  1

II.    THE COURT SHOULD APPROVE THE REQUESTED CLASS
       REPRESENTATIVE SERVICE AWARD  …………………..…  2

III.   THE COURT SHOULD APPROVE THE REQUESTED
       ATTORNEYS' FEES AND COSTS…………………………....5

       1.  Attorneys' Fees ………………………………………………  5

       2.  Percentage Basis …………………………………………… 6

       3.  Lodestar Cross-Check ……………………………………11

       4.  Class Counsel's Litigation Expenses Should be Reimbursed …….16

IV.    CONCLUSION …………………………………………..…17

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

## CASES

*Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253(2005) --------- 6, 7

*Barbosa v. Cargill Meat Solutions Corp*, 297 F.R.D. 431 (E.D. Cal. July 2, 2013) -------------------------------------------------------------------------------------- 11

*Beaver v. Tarsadia Hotels*, Case No. 11-cv-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) --------------------------------------------------------------- 9

*Birch v. Office Depot,* USDC Southern District, Case No. 06-CV-1690 DMS (WMC)------------------------------------------------------------------------------------ 9

Blum v. Stenson,
   465 U.S. 886 (1984)------------------------------------------------------------------ 14

*Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27 (E.D. Pa. 1985) ------------------------ 3

*Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.)*, 59 F.R.D. 616 (W.D. Pa. 1973)------------------------------------------------------------------------------- 3

*Brytus v. Spang & Co.* 203 F.3d 238 (3d Cir. 2000)----------------------------------- 6

Camacho v. Bridgeport Fin., Inc.,
   523 F.3d 973 (9th Cir. 2008)------------------------------------------------------- 14

*Camden I Condominium Ass'n, In*c. v. Dunkle, 946 F.2d 768 (11th Cir, 1991) ----- 8

*Cox v. Clarus Mktg. Grp.*, LLC, 291 F.R.D. 473(S.D. Cal. 2013)-------------------- 3

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-339 (1980)---------------- 11

*Derum v. Saks & Co.,* No. 14cv1921 JM(JLB), 2015 U.S. Dist. LEXIS 181071 (S.D. Cal. Dec. 3, 2015) ------------------------------------------------------------------ 3

*Dirienzo v. Dunbar Armored, Inc*., USDC Southern District, Case No. CV-09-2745 DMS JMA ------------------------------------------------------------------------------- 9

*Ford v. ECE Ent. Inc*., Case No. 14 cv677 JLS (JLB), 2015 WL 11439033  (S.D. Cal. Dec. 14, 2015)-------------------------------------------------------------------------- 8

*Fulford v. Logitech, Inc*., 2010 WL 807448(N.D. Cal. 2010) ------------------------- 3

*Green v. Gino Morena Enters., Ltd. Liab. Co.*, No. 13cv1332 JM(NLS), 2014 U.S. Dist. LEXIS 156072 (S.D. Cal. Nov. 4, 2014) -------------------------------------- 4

iii

*Green, et al. v. Penske Logistics, L.L.C., et al.*, USDC Southern District, Case No. CV-09-0069 DMS (CAB) -------------------------------------------------- 9

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) -------------------------------------17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) -----------------------------------------15

*Hopson v. Hanesbrands Inc.* (N.D. Cal. Apr. 3, 2009) 2009 U.S. Dist. LEXIS 33900 -------------------------------------------------------------------------------12

*Howell v. Advantage RN, LLC*, Case No 17-CV-883 JLS (BLM), 2020 WL 5847565(S.D. Cal. Oct. 1, 2020) --------------------------------------------------- 9

*Id.* ------------------------------------------------------------------------------------12

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) -------------10

*In Re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, (9th Cir. 2011) -------------------------------------------------------------------------- passim

*In Re DJ Orthopedics, Inc. Secs. Litig.*, No. 01-CV-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457 (S.D. Cal. June 21, 2004) ------------------------------------------17

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ----------------------- 2

*In re Omnivision Techs*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ----------------8, 11

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ------------ 8

*In re Pacific Enterprises Security Litigation*, 47 F.3d 373(1995 U.S. App. LEXIS 2330) --------------------------------------------------------------------------------10

*Jamil v. Workforce Res.*, Case No: 18-CV-27 JLS (NLS), 2020 WL 6544660 (S.D. Cal. Nov. 5, 2020) --------------------------------------------------------------------- 9

*Jordan v. Mutnomah County*, 815 F.2d 1258, (9th Cir. 1987) -------------------------15

*Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673 (S.D. Cal., Nov. 30, 2021) ----------------------------------------------------------------------------------- 9

*Laffitte v. Robert Half Internat. Inc.,* 1 Cal. 5th 480 (2016) --------------------- 11, 12

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26-50; 97 Cal. Rptr. 2d 797 (2000) ----------------------------------------------------------------------------- 6, 7

*LG Corp. v. Huang Xiaowen*, 2017 U.S. Dist. LEXIS 143409  (S.D. Cal. 2017)--15

MEMORANDUM OF POINTS AND AUTHORITIES

*Lopez v. Mgmt. & Training Corp.*, Case No. 17cv1624 JM(RBM), 2020 U.S. Dist.

LEXIS 70029, 2020 WL 1911571 (S.D. Cal. Apr. 20, 2020) (---------------------15

*Makaeff v. Trump Univ., LLC,*

No. 10CV0940 GPC WVG, 2015 WL 1579000 (S.D. Cal. Apr. 9, 2015)--------15

*McGrath v. Wyndham Resort Dev. Corp.*, Case No.: 15cv1631 JM (KSC), 2018

U.S. Dist. LEXIS 16095, 2018 WL 637858, (S.D. Cal. Jan 30, 2018)-----------15

*McIntosh v. McAfee, Inc.*,

No. C06-07694, 2009 WL 673976 (N.D. Cal. March 13, 2009)-------------------14

*n Re Businessland Secs. Litig.*, No. C-90-20476-RFP, 1991 U.S. Dist. LEXIS 8962

(N.D. Cal. June 14, 1991) -------------------------------------------------------------16

*Parkinson v. Hyundai Motor Am.*,

796 F. Supp. 2d 1160 (C.D. Cal. 2010)-----------------------------------------------14

*PLCM Group, Inc. v. Drexler*  22 Cal. 4th 1084 (2000) -------------------------------12

*Pokorny v. Quixtar, Inc.* Case No C 07-0201 SC, 2013 WL 3790896 (N.D. Cal.

Julu 18, 2013)-------------------------------------------------------------------------- 8

*Ramos v. Countrywide Home Loans, Inc., supra*, 82 Cal.App.4th at p. 628--------- 6

*Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS

255 (S.D. Cal. Jan. 2, 2014)--------------------------------------------------------- 3

*Richardson v. Colvin,*

No. 15-CV-1456-MMA-BLM, 2017 WL 1683062 (S.D. Cal. May 2, 2017) ----15

*Rippee v. Boston Mkt. Corp.,* Case No. 05-CV-1359 BTM (JMA)------------------- 9

*Rodriguez v. West Publishing Corp.*, 563 F. 3d 948(9th Cir. 2009) ----------------- 3

*Ruiz v. Xpo Last Mile, Inc.*, 2017 WL 6513962(S.D. Cal. 2017) ------------------ 8, 9

*Schneider v. Chipotle Mexican Grill Inc.*, 336 F.R.D. 588, (N.D. Cal. 2020)------- 6

Spangler v. Nat'l Coll. of Tech. Instruction,

No. 14-CV-3005 DMS (RBB), 2018 WL 846930 (S.D. Cal. Jan. 5, 2018) ------15

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) ----------------------------------- 2

*Van Vranken v. Atl. Richfield Co.*,

901 F.Supp. 294 (N.D. Cal. 1995) -------------------------------------------------14

MEMORANDUM OF POINTS AND AUTHORITIES

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043(9th Cir. 2002)-------------------- passim

*Watson v. Raytheon Company*, USDC Southern District, Case No. CV-10-cv-00634 LAB (RBB) ------------------------------------------------------------- 9

*Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224 (2001)-------------------- 16

*West v. Circle K Stores, Inc.*, No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006) ------------------------------------------------------- 16

<u>STATUTES</u>

Cal. Civ. Code § 1780 ------------------------------------------------------------- 5

Cal. Code Civ. Proc. §1021.5------------------------------------------------------- 5

Fed. R. Civ. Proc. 23-------------------------------------------------------------- 6

<u>TREATISES</u>

4 William B. Rubenstein et al., Newberg on Class Actions (4th Ed. 2008) ---2, 8, 14

Manual for Complex Litigation (Fourth)---------------------------------------- 11

Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: En Empirical Study, 53 U.C.L.A L. Rev. 1303 (2006) ------------------ 2

MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND SUMMARY OF MOTION

Even for a nationwide consumer class action, this case has been, and still is, complex and unusual.  It involves point-of-sale theft of App Store & iTunes gift cards, which are purchased and paid for by unsuspecting consumers. The legal theory of Defendants Apple Inc. and Apple Value Services, LLC's (collectively, "Defendants" or "Apple") liability has been hotly disputed and vigorously litigated by skilled attorneys on both sides. As the Court will recollect, after extensive discovery by both sides, Plaintiff's motion for class certification was still fiercely contested at the hearing on January 11, 2023. Thereafter, and before the Court published its ruling on class certification motion, the Parties worked diligently to reach a non-reversionary settlement of $1.8 Million to the Settlement Class ("the Settlement Amount").  In addition to the Settlement Amount, the settlement agreement also provides that Apple will pay the Administrative and Notice Costs to the Settlement Administrator (approximately $220,000.00), an award of attorney's fees and costs to Class Counsel, and a Class Representative Service Award to Plaintiff.  Now, pursuant to the procedures set forth in the settlement, Plaintiff respectfully requests that the Court award $600,000 in attorneys' fees and $22,653.30 in costs to Class Counsel and $10,000 to Plaintiff as a Class Representative Service Award. These amounts are reasonable and more than justified in this extraordinary case.

Pursuant to the Settlement Agreement (previously filed with Declaration of James Hawkins in support of Preliminary Approval, Dkt No. 92-2) Apple will pay the Attorneys' Fees and Costs in addition to the Settlement Amount.  (Settlement Agreement at ¶ 7.1; Dkt No. 92-2).  The Parties further agreed that 35 days before the Objection and Exclusion deadline, Class Counsel would apply for an award of attorneys' fee of no more than 33 1/3% of the Settlement Amount (or $600,000), as well as for costs and a service award.  Apple has agreed to pay and does not object to Class Counsel's application for attorneys' fees up to 25% of the Settlement

MEMORANDUM OF POINTS AND AUTHORITIES

Amount (or $450,000), subject to Court approval, but reserves the right to object to or oppose any attorneys' fees, costs, or expenses sought in excess of that amount. (*Id*.). In addition, while Apple recognizes that the settlement may entitle Class Counsel to seek a reasonable Service Award for Plaintiff, Apple reserves the right to object to the amount of the Service Award.

As demonstrated below, Plaintiff's request for attorneys' fees, costs and a service award are justified and well deserved and therefore should be granted.

## II.    THE COURT SHOULD APPROVE THE REQUESTED CLASS REPRESENTATIVE SERVICE AWARD

The Settlement Agreement contemplates that a reasonable service award will be requested on behalf of the Plaintiff/Class Representative, Rachael Shay, in addition to her respective claim share, for her individual efforts and risk in the representation of the entire class over the past 4 years. Pursuant to the Settlement, the Service Award, unlike the attorneys' fees and cost award, will be paid from the Settlement Amount. (Settlement at ¶ 7.2, Dkt No. 92-2). The proposed Service Award to Ms. Shay is $10,000 from the $1.8 Million Settlement Amount (or 0.5556%).

Named plaintiffs, as opposed to class members who are not named plaintiffs, and class representatives are eligible for reasonable incentive payments. *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003).

> Incentive awards are fairly typical in class action cases. See 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th Ed. 2008); Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: En Empirical Study, 53 U.C.L.A L. Rev. 1303 (2006) (finding twenty-eight of settled class actions between 1993 and 2002 included an incentive award to the class representatives). Such Awards are discretionary, *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), and are intended to compensate class representatives for work done on behalf of the class, to make up for financial and reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

1    general. Awards are generally sought after a settlement or verdict has
2    been achieved.

3    *Rodriguez v. West Publishing Corp.*, 563 F. 3d 948, 958-59 (9th Cir. 2009).

4         District courts typically consider several factors in determining whether to
5    award incentive payments, including: 1) the risk to the class representative in
6    commencing suit, both financial and otherwise; 2) the notoriety and personal
7    difficulties encountered by the class representative; 3) the amount of time and effort
8    spent by the class representative; 4) the duration of the litigation and; 5) the personal
9    benefit (or lack thereof) enjoyed by the class representative as a result of the
10   litigation. *See Cox v. Clarus Mktg. Grp.*, LLC, 291 F.R.D. 473, 483 (S.D. Cal.
11   2013).    Awards in the range of $5,000 - $40,000 have been well-documented in
12   other cases.  *See, e.g., Fulford v. Logitech, Inc.*, 2010 WL 807448, at *3, fn. 1 (N.D.
13   Cal. 2010) (collecting cases awarding service payments ranging from $5,000 to
14   $40,000); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27, 32 (E.D. Pa. 1985) (award
15   of $20,000 each to two class representatives in antitrust case, $40,000 total award);
16   *Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.)*, 59 F.R.D. 616, 617
17   (W.D. Pa. 1973), *aff'd* 494 F.2d 799 (3rd Cir.), *cert. denied* (1974) 419 U.S. 900
18   (payments of $17,500 to class members who aided in advancing Title VII case).

19        Class Counsel's request for a Service Award to Plaintiff is appropriate and
20   the amount requested is comparable to incentive awards approved by this Court.
21   *See Derum v. Saks & Co.,* No. 14cv1921 JM(JLB), 2015 U.S. Dist. LEXIS 181071
22   (S.D. Cal. Dec. 3, 2015) (approving $10,000 incentive award where class
23   representative "initiated the lawsuit, worked on the lawsuit, undertook the risks
24   associated with litigation, conferred a benefit on absent class members and
25   otherwise adequately represented the class' interests"); *Reed v. 1-800 Contacts,
26   Inc.*, No. 12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2,
27   2014) (awarding $10,000 enhancement award where class representative "devoted
28   significant time to pursuing this Action and his efforts resulted in a significant

3

settlement award for class members"); *Green v. Gino Morena Enters., Ltd. Liab. Co.*, No. 13cv1332 JM(NLS), 2014 U.S. Dist. LEXIS 156072 (S.D. Cal. Nov. 4, 2014) (approving $10,000 incentive awards where class representatives "assumed the risk of having a judgment entered against them in the event they did not prevail, and likewise faced repercussions from being identified as individuals who sued their employer on a class action basis.").

Here, Ms. Shay contributed to the prosecution of this action and the settlement in various ways. She initially sought the advice of counsel in this matter and was advised by Class Counsel of the time, costs, and risks associated with being a plaintiff in a lawsuit, and specifically, with being a plaintiff and class representative in a class action lawsuit; this included the risks if the case were lost, including a potential adverse judgment and personal liability for all of the defendant's costs incurred in the defense of large-scale class action litigation. (Shay Decl. at ¶¶4-5). She was also advised by Class Counsel that the lawsuit could last several years, and that she could resolve her own claims on an individual basis faster than by filing a class action on behalf of scores of unknown other individuals. Despite the risks and delays associated with this lawsuit, Ms. Shay agreed to proceed on behalf of the potential class, and assisted counsel in preparing the complaint, with investigation and discovery processes, and in the settlement phase. (Shay Decl. ¶¶ 6-14.) Indeed, Ms. Shay repeatedly put the interests of the class above her own interests when prior to the class certification motion, she rejected settlement offers on an individual basis from Apple. (Id. at ¶ 18-19.) She was advised by Class Counsel at the time that she would likely not be able to achieve a superior award if she continued with the class action as opposed to resolving her claims on an individual basis. Nevertheless, she decided to put the Class's interests before her own and she continued to act as a model class representative. (Id.) She met with and communicated with class council regularly over the past four years and has demonstrated her devotion to pursuing the class claims on behalf of

MEMORANDUM OF POINTS AND AUTHORITIES

unknown class members. (See generally, Declaration of Rachael Shay). Such work and commitment to the process and to others who are unknown to her warrants a heightened Service Award. (Shay Decl. ¶¶ 2-22).

Here, the requested Service Award for Ms. Shay is reasonable under the above criteria to compensate Ms. Shay for her retrospective service to the Class overall, and with regard to her work related to and participation in achieving the settlement. The proposed award is well within the Service Awards given to named plaintiffs in suits involving similar settlement funds. Plaintiff and Class Counsel therefore request that the Court approve a Service Award of $10,000 to Ms. Shay.

## III.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND COSTS

California law provides for payment of attorney's fees, costs and expenses in the event of recovery resulting from the type of violations alleged in this case. Cal. Civ. Code § 1780(e); Cal. Code Civ. Proc. §1021.5. Class Counsel requests an attorney's fees award of $600,000, which is equal to 33 1/3% of the Settlement Amount, but which is to be paid **in addition to, not out of,** the Settlement Amount to be paid to the Class. In addition, Class Counsel requests that the costs they have invested in the case having been advanced to the Class in prosecution of the matter be reimbursed, **also in addition to, not out of,** the Settlement Amount.

### 1.  Attorneys' Fees

With the guiding principle that class action settlements are favored and may not diminish an award of attorneys' fees, Class Counsel submits the $600,000 fee request here should be awarded, in light of the substantial hours expended to achieve this result, the litigation risks and complexities of prosecuting these types of cases, and in particular this case, the contingent nature of any fee, Class Counsels' experience in handling cases of this type, the fees commonly awarded in these cases, and the vindication of the Class's rights by securing a $1,800,000 settlement that will fully compensate all Class Members who submit valid claims.

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h).  In a case where state law claims are pursued in federal court, as in this case, state law also governs the calculation of attorney's fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The court may also still look to federal authority for guidance in awarding attorney's fees.  *Schneider v. Chipotle Mexican Grill Inc.*, 336 F.R.D. 588, 600 (N.D. Cal. 2020), *citing Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264, n. 4 (2005).

## 2.  Percentage Basis

In common fund cases, the court has discretion to employ either the percentage of the fund method or the lodestar method to calculate a proper fee award.  *In Re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011).  While attorney fees awarded under the common fund doctrine are based on a "percentage-of-the-benefit" analysis, while those under a fee-shifting statute are determined using the lodestar method, "[t]he ultimate goal … is the award of a 'reasonable' fee to compensate counsel for their efforts, irrespective of the method of calculation."  *Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1270 (2005) *citing Brytus v. Spang & Co*. 203 F.3d 238, 247 (3d Cir. 2000);  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26-50; 97 Cal. Rptr. 2d 797 (2000) [discussing determination of attorney fees under common fund doctrine and fee-shifting statutes]; *id*. at pp. 45–50 [trial court may use amount of attorney fees awardable under common fund doctrine to "cross-check" amount of fees awarded under fee-shifting statute]; *Ramos v. Countrywide Home Loans, Inc., supra*, 82 Cal.App.4th at p. 628 [same].

In cases such as this, where a common fund is established, but the fees and costs are to be paid separately in addition to the settlement fund, courts are careful to consider the "total settlement package" when determining fee awards. "The award to the class and the agreement on attorney fees represent a package deal.

Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery." *Apple Comput., Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1269, 24 Cal. Rptr. 3d 818, 826 (2005). "[T]he size of the class recovery [is] influenced by and therefore related to the size of the fee even though the fee [is] paid directly by the defendant and not out of the class recovery … . '… "[A] defendant is interested only in disposing of the total claim asserted against it; … the allocation between the class payment and the attorneys' fees is of little or no interest to the defense."' *Lealao, supra*, 82 Cal.App.4th at 34.

Here, the total settlement package totals between $2,492,653.30 and $2,642,653.30 as follows:

| Settlement Amount | $1,800,000.00 |
|---|---|
| Class Administrative Costs | $220,000.00 |
| Attorney's fees | $450,000.00  (at 25%), <u>or</u>  $600,000.00 (at 33 1/3%) |
| Costs Advanced | $22,653.30 |
| **Totals** | **$2,492,653.30 to $2,642,653.30** |

Under the percentage of the fund method, the court awards some specific percentage of the fund as fees. The Ninth Circuit benchmark rate is twenty-five percent (25%). *In Re Bluetooth Headset Products, supra*, 654 F.3d at 942. Meeting the benchmark rate, however, does not end the selection analysis. "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino, supra*, 290 F.3d at 1048. Relevant factors when determining the percentage ultimately awarded may include: (1) the result achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Id*. at 1048-50.

The Ninth Circuit also commented:

1
2
3
4
5
6
7
8
9

> The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case. As we said in WPPS, in passing on post-settlement fee applications, "courts cannot rationally apply any particular percentage whether 13.6%, 25% or any other number- In the abstract, without reference to all the circumstances of the case." Id. at 1298; *See also Camden I Condominium Ass'n, In*c. *v. Dunkle,* 946 F.2d 768. 775 (11th Cir, 1991) (noting with approval that district courts are increasingly "supporting their percentage awards with particular findings showing factors considered." (quoting Herbert Newberg, Attorney Fee Awards 2.07 (1st Ed. 1986))).

10
11
12

*Vizcaino, supra*, 290 F.3d at 1048 (9th Cir. 2002). "While the benchmark is not per se valid, it is a helpful 'starting point.'". *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 955 (9th Cir. 2015) quoting *Vizcaino*, 290 F.3d at 1048.

13
14
15
16
17
18
19
20
21

In *Vizcaino*, for example, the court approved of the district courts upward adjustment from the 25% benchmark because of the exceptional results obtained following litigation of a risky case, as well as the benefits generated beyond the monetary results. *Id*. at 1048-1049. Other factors commonly considered in determining a reasonable percentage include the reaction of the class, the effort, experience, the skill of council, the complexity of issues, risks of nonpayment assumed by class counsel, in comparison with class counsel's lodestar. *See Ruiz v. Xpo Last Mile, Inc*., 2017 WL 6513962, at *7 (S.D. Cal. 2017) (awarding a 35% contingent fee from the common fund, and $246,889.98 in costs reimbursement.)

22
23
24
25
26
27
28

Additionally, as several courts in the Ninth Circuit - including this Court - have observed, attorneys' fee awards from settlements involving a common fund, as this settlement involves, frequently exceed the 25 percent benchmark. *Ford v. ECE Ent. Inc*., Case No. 14 cv677 JLS (JLB), 2015 WL 11439033, at *5 (S.D. Cal. Dec. 14, 2015) (*citing In re Omnivision Techs*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *Pokorny v. Quixtar, Inc*. CASE NO C 07-0201 SC, 2013 WL 3790896, at *4 (N.D. Cal. Julu 18, 2013 )); *Jamil v. Workforce Res*., Case No: 18-CV-27 JLS

8

(NLS), 2020 WL 6544660, at *4 (S.D. Cal. Nov. 5, 2020) (approving an attorneys'
fees award of one-third of the common fund); *Howell v. Advantage RN, LLC*, Case
No.: 17-CV-883 JLS (BLM), 2020 WL 5847565, at *5 (S.D. Cal. Oct. 1, 2020)
(approving an attorneys' fees award of one-third of the common fund); *Ruiz v. XPO
Last Mile, Inc.*, Case No.: 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *8 (S.D.
Cal. Dec. 20, 2017) (approving an attorneys' fees award of 35 percent of the
common fund). Indeed, "district courts in this circuit have routinely awarded fees
of one-third of the common fund or higher after considering the particular facts and
circumstances of each case," and the Ninth Circuit has upheld such awards. *See
Beaver v. Tarsadia Hotels*, Case No. 11-cv-01842-GPC-KSC, 2017 WL 4310707,
at *10 (S.D. Cal. Sept. 28, 2017) (collecting cases); *Khoja v. Orexigen
Therapeutics, Inc.*, 2021 WL 5632673, at *9 (S.D. Cal., Nov. 30, 2021). *See also
Birch v. Office Depot,* USDC Southern District, Case No. 06-CV-1690 DMS
(WMC) (Hon. Dana M. Sabraw -- awarding attorneys' fees of 40% of $16,000,000
settlement in pre-certification class action); *Rippee v. Boston Mkt. Corp.,* Case No.
05-CV-1359 BTM (JMA) (Hon. Barry T. Moskowitz -- awarding a 40% fee on a
$3,750,000 class action); *Watson v. Raytheon Company*, USDC Southern District,
Case No. CV-10-cv-00634 LAB (RBB) (Hon. Larry B. Burns -- awarding
attorneys' fees of 33-1/3% of a $2,000,000 settlement in a certified employment
class action); *Dirienzo v. Dunbar Armored, Inc*., USDC Southern District, Case No.
CV-09-2745 DMS JMA (Hon. Dana M. Sabraw -- awarding attorneys' fees of 33-
1/3% of $1,500,000 settlement in a pre-certification class action); *Green, et al. v.
Penske Logistics, L.L.C., et al*., USDC Southern District, Case No. CV-09-0069
DMS (CAB) (Hon. Dana M. Sabraw - awarding attorneys' fees of 33% of a
$500,000 settlement in a pre-certification class action)

Here, the $600,000 fee award requested by Class Counsel is equal to one-
third of the Settlement Amount. However, Apple has agreed to pay an attorneys'
fee award, as well as Class Counsel's reasonable costs and the Administrative and

Notice Costs, in addition to the Settlement Amount. Therefore, when the total settlement package is taken into account, it is only 22.7% of the maximum possible total settlement package ($2,642,653.30), and 24.07% of the minimum possible total settlement package ($2,492,653.30). In either case, the fee requested falls below the Ninth Circuit benchmark of 25% when considering the total settlement package secured by Plaintiff and Class Counsel.

Here, among other factors detailed in several of the Court's previous orders and motions by the parties, including Plaintiff's Motion for Class Certification and Motion for Preliminary Approval, Class Counsel has exhaustively litigated this case for nearly four years. Class Counsel defended against numerous challenges to the complaint to survive with an operative Second Amended Complaint; filed and argued a class certification motion; conducted extensive discovery including depositions of three Apple designees, among other work. See Hawkins Decl. at ¶¶ 21-30. Class Counsel negotiated the $1.8 million in settlement proceeds for the Class, a substantial result in light of the claims being pursued. The risk of nonpayment assumed by Class Counsel was not insignificant, especially in light of the disputed nature of the claims and the contingency-based nature of their agreement with Plaintiff. The effort, experience, and skill of Class Counsel all contributed to the Settlement.

Class Counsel's attorneys' fees request is justified under the facts of this case for undertaking a complex, risky, expensive, and time-consuming litigation on a contingency fee basis. *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379, (1995 U.S. App. LEXIS 2330); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989). First, Class Counsels' expertise in class actions weighed heavily in negotiating and providing a benefit to the Settlement Class following the Parties' full briefing on Plaintiff's certification motion and oral argument. Given the complexities and uncertainties of litigating this case, as described above, and for obtaining a hard-fought settlement, an upward deviation from the 25%

10

benchmark would be warranted.  "Indeed, one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (Fourth), § 14.121, p. 193.

Second, this is not a case where a substantial settlement and a recovery of a large attorneys' fee was a foregone conclusion. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-339 (1980) (recognizing the importance of a financial incentive to entice qualified attorneys to devote their time to complex, time-consuming cases in which they risk nonpayment). In light of the risks of loss at any stage of this litigation, i.e., the pleading stage, denial of Rule 23 certification, unfavorable result at trial and/or appeal, the recovery for the Class, much less attorneys' fees, was never a foregone conclusion.

### 3.  Lodestar Cross-Check

Although Class Counsel seeks approval of a fee reflective of a percentage of the Settlement Amount, "[a]s a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *In re Omnivision*, 559 F. Supp. 2d at 1048. Courts often cross-check the reasonableness of a percentage fee award against the lodestar-multiplier method. See, e.g. *In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 941-42 (9th Cir. 2011). Where the cross-check is utilized, the "calculation need entail neither mathematical precision nor bean-counting" and is not intended to be a "full-blown lodestar inquiry."  As the Eastern District has stated, "Where the use of the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Barbosa v. Cargill Meat Solutions Corp*, 297 F.R.D. 431, 451 (E.D. Cal. July 2, 2013); see also *Laffitte v. Robert Half Internat. Inc.,* 1 Cal. 5th 480, 505 (2016). ("Courts generally have not been required to closely scrutinize each claimed attorney-hour, but have instead used information on attorney time spent to 'focus

on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys'". [Citations omitted]).

The *Laffitte* court explains that the lodestar cross-check is simply to guard against an unreasonable windfall to plaintiffs' attorneys and therefore "emphasized that the cross-check does not override the trial court's primary determination of the fee as a percentage of the common fund and thus does not impose an absolute maximum or minimum on the fee award." *Laffitte*, 1 Cal. 5th at 505. On a lodestar cross-check, only when the multiplier is extraordinarily high or low [should] the trial court [] consider whether the percentage method should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id*. The *Laffitte* Court affirmed a multiplier on a lodestar cross-check of between 2.03 and 2.13 as reasonable to award a fee of one-third of the recovery. *Laffitte*, 1 Cal. 5th at 488, 506.[1]

The lodestar method is calculated by multiplying the number of hours reasonably expended on the litigation … by a reasonable hourly rate. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *PLCM Group, Inc. v. Drexler* 22 Cal. 4th 1084, 1095 (2000), more recently, *Hopson v. Hanesbrands Inc.* (N.D. Cal. Apr. 3, 2009) 2009 U.S. Dist. LEXIS 33900. Courts may adjust the lodestar figure upward by using a positive multiplier to reflect numerous "reasonableness" factors,

---

[1] Many district courts in California have declined to apply a lodestar cross-check when parties settle early in the case. See, e.g. *Glass v. UBS Financial Services, Inc.*, No. 06-4066-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (finding "no need to conduct a lodestar cross-check [as] [c]lass counsel's prompt action in negotiating a settlement while the state of the law remained uncertain should be fully rewarded"); *Lopez v. Youngblood*, No. 07-0474-DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ("A lodestar cross-check is not required in this circuit, and in a case such as this, is not a useful reference.")

MEMORANDUM OF POINTS AND AUTHORITIES

including the (1) quality of representation, (2) class benefits, (3) complexity and novelty of issues presented, and (4) risk of nonpayment. *Id*. State and federal courts often grant multipliers of four or more. (*See*, *Vizcaino*, 290 F.3d at 1051 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.")).

Class Counsel has spent a significant amount of time litigating this case to secure this excellent result on behalf of the Settlement Class Members.  These hours were spent on, among others, the following tasks: investigating the claims and Plaintiff; interviewing Plaintiff and reviewing documents provided by her; drafting the complaint, the First Amended Complaint, and the Second Amended Complaint; opposing the motions to dismiss; preparing for and attending court hearings; drafting written discovery, including multiple rounds of interrogatories and requests for production; drafting a Person Most Qualified Deposition Notice; reviewing publicly available information; reviewing information regarding other currently pending actions concerning point-of-sale theft of gift cards; meeting and conferring with Defendant's counsel to obtain relevant documents and information; reviewing extensive records of customer complaints and iTunes gift card design and production and marketing materials produced by Defendant; retaining consultants; working with the experts/consultants to analyze the data provided;  taking three Defendant designee depositions and defending Plaintiff's deposition; performing legal research regarding Plaintiff's claims and Defendant's defenses thereto; drafting various stipulations; preparing Rule 26 reports; drafting and arguing the class certification motion; drafting a mediation brief and preparing a damages analysis prior to mediation; attending a private mediation session; negotiating, drafting, and revising the Term Sheet and Settlement Agreement and Release of Class Claims; drafting and revising the motion for preliminary approval of the Settlement Agreement and accompanying documents; correspondence with the Settlement Administrator regarding the notice documents and notice plan; traveling

13

and attending court hearings; conferences with the client; overseeing the administration process; working with the administrator to ensure that the notice process is carried out properly; and drafting the motion for attorneys' fees. (Hawkins Decl. ¶¶ 21-30).

Here, Class Counsel has so far spent 778.9 hours of attorney and para-professional time prosecuting the case resulting in a lodestar fee of $553,415.00 to which Plaintiff's Counsel respectfully requests the application of a very modest 1.084 risk multiplier. This does not consider the work that is still to be done to draft and file the motion for final approval and continue to monitor the claims process.

This is on the low end of the standard of reasonableness within the Ninth Circuit. *See, e.g., Vizcaino*, 290 F.3d at 1051 and fn. 6 (approving 3.65 multiplier and collecting cases "finding a range of 0.6-19.6, with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range"); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) ("Where appropriate, multipliers may range from 1.2 to 4 or even higher"); *McIntosh v. McAfee, Inc.*, No. C06-07694, 2009 WL 673976, *2 (N.D. Cal. March 13, 2009) (recognizing a range from "2 to 4 or even higher"); Van Vranken v. Atl. Richfield Co., 901 F.Supp. 294, 298-99 (N.D. Cal. 1995) (holding that a 3.6 multiplier is "well within the acceptable range for fee awards in complicated class action litigation"); see also 4 Newberg on Class Actions § 14.7 (stating that courts typically approve 25% to 33.34% percentage awards with lodestar cross-checks of 1.9 to 5.1).

The lodestar itself is reasonable and well-supported. In determining the reasonableness of the hourly rates which make up counsels' lodestar, a court must set rates according to what the market commands for analogous litigation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community for the purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

14

The reasonableness of Class Counsel's rates is confirmed by comparing such rates with the rates of comparable counsel practicing complex and class litigation.  See Hawkins Decl. ¶¶32-33, Exs. 1 & 2; *see also, e.g., Spangler v. Nat'l Coll. of Tech. Instruction*, No. 14-CV-3005 DMS (RBB), 2018 WL 846930, at *2 (S.D. Cal. Jan. 5, 2018) (approving rates of $825 for named partner and $795 for partner, as well as $525 for senior associate); *LG Corp. v. Huang Xiaowen*, 2017 U.S. Dist. LEXIS 143409  (S.D. Cal. 2017) (finding a rate of $850 to $890 an hour for lead counsel reasonable);  *Lopez v. Mgmt. & Training Corp.*, Case No. 17cv1624 JM(RBM), 2020 U.S. Dist. LEXIS 70029, 2020 WL 1911571 (S.D. Cal. Apr. 20, 2020) (approving attorneys' fee request with rates ranging from $500 to $900 per hour); *McGrath v. Wyndham Resort Dev. Corp.*, Case No.: 15cv1631 JM (KSC), 2018 U.S. Dist. LEXIS 16095, 2018 WL 637858, at *7-10 (S.D. Cal. Jan 30, 2018) (approving attorneys' fee request from class counsel with rates ranging from $450 to $850);  *Makaeff v. Trump Univ., LLC*, No. 10CV0940 GPC WVG, 2015 WL 1579000, at *4 (S.D. Cal. Apr. 9, 2015) (approving hourly rates ranging from $250 to $440 for associates, and $600 to $825 for partners, finding these were consistent with rates "previously approved by this Court and in this District in class action settlements, and with this Court's familiarity of the rates charged in the San Diego community"); *Richardson v. Colvin*, No. 15-CV-1456-MMA-BLM, 2017 WL 1683062, at *2 (S.D. Cal. May 2, 2017) (approving rate of $770 and citing other cases approving rates of $800, $656, and $666.68 ).

The hours expended were also reasonable. In determining whether the number of hours expended on the litigation was reasonable, the district court examines whether "the time spent was reasonably necessary and that its counsel made 'a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Jordan v. Mutnomah County*, 815 F.2d 1258, 1263 at fn. 8 (9th Cir. 1987) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  Plaintiff's counsel staffed and managed this case as efficiently as

MEMORANDUM OF POINTS AND AUTHORITIES

possible. All of the time submitted to the Court for compensation is (i) of the kind and character that Plaintiff's counsel would normally bill to fee-paying clients, (ii) time that counsel normally track and seek to be paid for at the conclusion of successful contingency litigation, and (iii) added value to the case and was reasonably necessary to give the Plaintiff and the Class the best possible chance for a favorable outcome.

Where a fee must be based on lodestar, a court may adjust it upward by using a positive multiplier to reflect "reasonableness" factors, including, (1) quality of representation, (2) class benefits, (3) complexity and novelty of issues presented, and (4) risk of nonpayment. I*n re Bluetooth, supra*, 654 F.3d at 941-42. "Multipliers can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 255 (2001).

As detailed throughout this Motion, the quality of representation was excellent, resulting in significant benefits to the Class. This result was achieved by analyzing complex and novel legal issues. The result was achieved despite complex and disputed factual and class certification issues, and a vigorous defense to all claims. The case was undertaken on a completely contingent basis and presented a high risk Class Counsel may not have been paid or reimbursed for over $22,500 in costs advanced.

### 4.    Class Counsel's Litigation Expenses Should be Reimbursed

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *West v. Circle K Stores, Inc.*, No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 76558, at *25 (E.D. Cal. Oct. 19, 2006); *see also In Re Businessland Secs. Litig*., No. C-90-20476-RFP, 1991 U.S. Dist. LEXIS 8962 at *6 (N.D. Cal. June 14, 1991) (overruling objection that litigation expenses should be within the requested 30% fee).

Class Counsel have incurred costs of $22,653.30 to successfully prosecute

MEMORANDUM OF POINTS AND AUTHORITIES

this Action. Hawkins Decl. ¶ 37, Exh.3. These expenses were incidental and necessary to the effective representation of the Class. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *In Re DJ Orthopedics, Inc. Secs. Litig.*, No. 01-CV-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457, at *21 (S.D. Cal. June 21, 2004). These costs were incurred for such things as filing fees for pleading and motions, service of process, court reporter for depositions and transcripts, postage, messenger services, consultants, mediation fee, attorney service fees. Hawkins Decl. ¶39, Ex. 3.   Class Counsel respectfully requests approval of their out-of-pocket litigation costs as they were reasonable and necessarily incurred during the pendency of this Action.

## IV.    CONCLUSION

Class Counsel respectfully requests the Court grant Class Counsel's application for an award of attorneys' fees and costs, and a Class Representative Service Award, all in the amounts requested.

Respectfully submitted,

Dated: December 4, 2023            JAMES HAWKINS APLC

By:    s/ Mitchell J. Murray
       JAMES R. HAWKINS
       MALTE L. L. FARNAES
       CHRISTINA M. LUCIO
       MITCHELL J. MURRAY

       Attorneys for Plaintiff