JAMES R. HAWKINS (SBN 192925)
james@jameshawkinsaplc.com
CHRISTINA M. LUCIO (SBN 253677)
christina@jameshawkinsaplc.com
MITCHELL J. MURRAY (SBN 285691)
mitchell@jameshawkinsaplc.com
**JAMES HAWKINS APLC**
9880 Research Drive, Suite 200
Irvine, CA 92618
Telephone: (949) 387-7200
Facsimile: (949) 387-6676


Attorneys for Plaintiff RACHAEL SHAY,
on behalf of herself and all others similarly situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL SHAY, individually and on behalf of all others similarly situated, | Case No. 3:20-cv-1629-JO-BLM |
| | **CLASS ACTION** |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT** |
| v. | |
| APPLE INC., a Delaware corporation; APPLE VALUE SERVICES, LLC, a Virginia limited liability corporation; and DOES 1 through 10, inclusive, | Date: February 28, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Jinsook Ohta<br>Courtroom: 4C, 4th Floor |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ……………………………………………………………..1

II.    FINAL APPROVAL SHOULD BE GRANTED……………………………2

  A. The Notice Process Was Completed In A Timely Manner ..………..……….2

  B. Notice Under Rule 23 Has Been Satisfied………………………..…………4

  C. The Substantive Terms of the Settlement are Fair and Merit Final

  Approval……………………………………….……………………………....6

    1. The Vigorously Disputed Strength of Plaintiff's Case and

       the Risk, Complexity, and Likely Duration of Further Litigation

       Supports the Reasonableness of the Settlement………………………..…10

    2. The Risk Of Maintaining Class Action Status Throughout Trial And

       Appeal Also Supports Final Approval…………………………….…12

    3. The Amount Offered In Settlement Is Reasonable And Supports Final

       Approval ..………………………………………………………………13

    4. The Advanced Stage Of The Proceedings Supports Final Approval…...13

    5. The Experience And Views Of Counsel Favor Final Approval………...14

    6. The Reaction Of The Class Supports Final Approval ……………….....14

III.    ALLOCATION AND DISTRIBUTION OF SETTLEMENT FUNDS…..15

IV. CONCLUSION………………………………………………………….…..16

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007)……………………….………………………10

*Castro v. Zenith Acquisition Corp.*,
  2007 WL 81905 (N.D. Cal. Jan. 9, 2007)……………………………….…...6

*Eisen v. Porsche Cars N. Am., Inc.*,
  2014 U.S. Dist. LEXIS 14301 (C.D. Cal. Jan. 30, 2014)……….…………..8

*Farrar v. Workhouse Group Inc.*,
  2023 WL 550505981 (C.D. Cal. July 24, 2023)……………………………..9

*Garcia v. Schlumberger Lift Solutions*,
  2020 WL 6886383 (E.D. Cal. Nov. 24, 2020)………………………………9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)………………………………………………6

*In re American Apparel, Inc. v. Shareholder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014)…………………………3, 14

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
  2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016)………………..5

*In re NVIDIA Corp. Derivative Litig.*,
   2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009)………………..6

*In re Omnivision Techs.*, Inc.,
  559 F. Supp.2d 1036 (N.D. Cal. 2008) ……………………………………7

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ………………………………..10

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA)*
*Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ………………………………………..5

MEMORANDUM OF POINTS AND AUTHORITIES

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

    2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020)……………..…..5

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998)………………………………....………11

*McMahon v. Tuesday Morning, Inc.*,

    14-cv-05547-EMC (N.D. Cal. Feb. 23, 2017) …………………………7

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,

    863 F. Supp. 2d 928 (N.D. Cal. 2012) …………………………………8

*McPhail v. First Command Fin. Planning*, Inc.,

    2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) …..……………7

*Munday v. Federal Navy Credit Union*,

    2016 WL 7655807 (C.D. Cal. Sept. 15, 2016)…………..……………11

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd.* Co.,

    2:12- cv-03824 (E.D. Pa. Sept. 15, 2014)…………………………..……8

*Negrete v. Allianz Life Ins. Co. of N. Am.*,

    2015 U.S. Dist. LEXIS 168586 (C.D. Cal. Mar. 17, 2015)……………..…8

*Nichols v. SmithKline Beecham Corp.*,

    2005 WL 950616 (E.D. Pa. Apr. 22, 2005)……………………………8

*Officers for Justice v. Civil Service Comm'n*,

    688 F.2d 615 (9th Cir. 1982)…………………………...………………6, 9

*Pettit v. P&G*,

    2019 U.S. Dist. LEXIS 232217 (N.D. Cal. Mar. 29, 2019) …………..……5

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,

    390 U.S. 414 (1968)……………………………………………………10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,

    442 F.3d 741, 748 (9th Cir. 2006)…………………………….………..8

*Scott v. HSS Inc.*,

    2017 WL 7049524 (C.D. Cal. Dec. 18, 2017) …………………..……………7

iv

MEMORANDUM OF POINTS AND AUTHORITIES

*Staton v. Boeing Co.*,

 327 F.3d 938 (9th Cir. 2003) …………………..…………………………6, 9, 12

*Torrisi v. Tucson Elec. Power*,

 8 F.3d 1370 (9th Cir. 1993)…………………….……………………………….6

*Van Bronkhorst v. Safeco Corp.*,

 529 F.2d 943 (9th Cir. 1976)………………….……….…………………….…..6

*Weinberger v. Kendrick*,

 698 F.2d 61 (2d Cir. 1982) …………………..…………………………….10


**STATUTES**

28 U.S.C. § 1715(d) ……………………………………………………………….3, 5


**FEDERAL RULES**

Fed. R. Civ. P. 23(e)………………………………………………….…..…...5, 16

MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Rachael Shay ("Plaintiff") seeks final approval of a non-reversionary common fund settlement of $1.8 Million on behalf of a Settlement Class[1] of all consumers who purchased an Eligible Gift Card in the United States from March 2018 to July 2020 or in the State of California from May 2017 to February 2018, whose gift card was subject to a redemption attempt prior to activation, whose gift card was redeemed by an unknown third party prior to attempted redemption by the consumer or intended user, and who did not receive a refund or replacement gift card from Defendants Apple Inc. or Apple Value Services, LLC (collectively, "Apple" or "Defendant") or any third party.

The Settlement was preliminarily approved on October 6, 2023. (Dkt. No. 94). Pursuant to the Court's Preliminary Approval Order, the Court-approved Email Notice, Mail Notice, Publication Notice, and Website Notice were disseminated to the Settlement Class on November 2, 2023, informing them of their rights and benefits under the Settlement and of the January 8, 2024 deadline to submit a Claim Form.

Following the grant of final approval, and the effective date of the Settlement, pursuant to the terms of the Settlement, Class Members who submitted a valid claim will receive a 100% refund of the purchase value of their Eligible Gift Card(s).

Class Counsel requests the Settlement be finally approved, and the Service Award, Class Counsel's Attorneys Fees and Costs payment, and Administrative and Notice Costs be awarded in the amounts set forth in Class Counsel's separate Motion for Award of Attorneys' Fees, Costs, and Class Representative Service Award. (Dkt. No. 95).

///

///

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Settlement Agreement.

## II. FINAL APPROVAL SHOULD BE GRANTED

### A. The Notice Process Was Completed In A Timely Manner

The Court's Preliminary Approval Order stated:

> The Court approves the form and content of the Mail Notice, Email Notice, Publication Notice, and Website Notice appended to the Settlement Agreement as Exhibits 1, 4, 5, and 6. The Court finds that the proposed plan of notice and the proposed content of these Notices meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and all due process requirements, is the best notice practicable under the circumstances; and constitutes due and sufficient notice to all persons entitled to notice.
>
> …
>
> CPT Group, Inc. is appointed to serve as the settlement administrator ("Settlement Administrator"). The Settlement Administrator is authorized to implement the notice plan, claims procedure, and further administer the settlement in accordance with the Agreement and this Order.
>
> (a) No later than October 19, 2023, Apple shall provide to the Settlement Administrator the names, email addresses, and physical addresses for all Settlement Class Members with respect to whom it has records.
>
> (b) No later than November 2, 2023 (the "Notice Date"), the Settlement Administrator shall administer the Email Notice to the Settlement Class Members for whom Apple provides names and email addresses, and the Mail Notice to the Settlement Class Members for whom Apple provides names and physical addresses.

(c) No later than the Notice Date, the Settlement Administrator shall establish and maintain the Settlement Website.

(d) No later than the Notice Date, the Settlement Administrator shall publish the Publication Notice in print publications and in a digital media campaign.

(Dkt. No. 94).

As detailed in the accompanying Declaration of Julie Green Regarding Execution of Notice Plan and Administration Process in Support of Motion for Final Approval of Class Action Settlement ("Green Decl."), CPT Group, Inc. ("CPT") successfully performed all duties related to the settlement process. CPT provided notice to all necessary government entities pursuant to 28 U.S.C. § 1715, received the data file containing the list of Known Class Members from Apple, updated mailing addresses, and beginning November 2, 2023, timely emailed and mailed the court-approved Email Notice (attached to the Green Decl. as Exhibit D) and Mail Notice (attached to the Green Decl. as Exhibit E) to all 960 Known Class Members for whom Apple located a valid email address and 81 Known Class Members for home a valid mailing address was located but not a valid email, including re-mailed as updated addresses were obtained. (*Id.* ¶¶ 5, 13-16). CPT also established a call center, dedicated case email, and settlement website which received approximately 228,000 views and 29,000 unique visitors. (*Id.* ¶ 9-11).

Following dissemination of the Email Notice, a total of 20 Email Notices were determined to be undeliverable. (*Id.* ¶ 15). These Class Members were sent a Mail Notice to the mailing address provided by Apple and updated through the National Change of Address database. (*Id.*).  In addition, 6 Mail Notices were returned to CPT by the U.S. Postal Service. CPT promptly re-mailed one of these notices after performing a computerized skip-trace. Ultimately only five Mail Notices remained undelivered following a skip-trace. (*Id.* ¶ 16). CPT successfully reached and delivered Email Notice to 940 out of the 960 Known Class Members

3

(97.9%) with a valid email address and Mail Notice to 96 out of the 101 Known Class Members (95.1%) with a valid mailing address and no valid email address, which represents approximately 99.52% of the Known Class Members. (*Id.* ¶ 7).

In addition to distributing direct notice to the Known Class Members, CPT and its strategic partners implemented the Publication Notice through a 60-day digital advertising campaign which was completed on December 31, 2023 and served a total of 27,209,341 viewable impressions prompting 16,256 link clicks to view the settlement website (attached to the Green Decl. as Exhibit F), disseminating a press release (attached to the Green Decl. as Exhibit G) to 900 associated press outlets and 452 influencers which resulted in 1,159 views and 213 click throughs to the settlement website.

The Notice Plan sought to reach approximately 76% of the Class Members through paid keyword search on Google & Bing, and through social media advertisement campaigns on Facebook and Instagram. (*Id.* ¶ 19). The digital campaign was supplemented by a press release, settlement website, and dedicated email and call center support. In sum, the Notice Plan was successfully and timely implemented in compliance with the Settlement Agreement and the Court's Preliminary Approval Order. (*Id.* ¶ 30).

### B.    Notice Under Rule 23 Has Been Satisfied

The period for Class Members to submit a Claim Form expired on January 8, 2024. (*Id.* ¶ 19). As of the date of the filing, there were 1,071 valid claims with a total of 1,423 gift cards and a total value of $101,403.41. (*Id.* ¶ 22). Of those, 1,041 valid claims are from the Known Class Members (i.e. Class Members who received either Email Notice or Mail Notice), all of whom the Parties have agreed to accept as valid claimants. (*Id.*). In addition, CPT received 30 valid claims submitted by Unknown Class Members (i.e. Class Members who received only Publication Notice), with a total of 92 valid gift cards with total value of $8,593.41.

During the Claims Period, CPT received a total of 274 Claim Form submissions, of which 36 claims were determined to be valid, 5 were determined to be invalid, and 234 were determined to be deficient, including due to fraud—e.g., attempts to submit as proof of purchase photographs readily found online.    For those claims that were deficient, CPT sent letters providing clear instructions on how to cure the deficiencies within 21 days. (Id. ¶¶ 19-24).

The claims rate associated with these valid claims is in line with the claims rates in other class action settlements primarily involving publication notice that have been granted final approval.  *See, e.g.*, *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 U.S. Dist. LEXIS 114235, *28 (N.D. Cal. Aug. 25, 2016) (0.14%); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, *128 (N.D. Cal. July 22, 2020) (0.3%); *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 (C.D. Cal. 2014) (3%); *Pettit v. P&G*, 2019 U.S. Dist. LEXIS 232217, *12 (N.D. Cal. Mar. 29, 2019) (4.6%).

Class Counsel and Defense Counsel have been in regular contact with CPT Group throughout the Notice Process. (Declaration of James R. Hawkins in Support of Plaintiff's Motion for Final Approval, ¶ 5). CPT also provided weekly reports regarding the mailed and emailed notices as well as progress reports regarding the digital media campaign. (*Id.*).

The reaction by class members to the settlement has been positive. One objection to the settlement was filed with the Court [Dkt. No. 106]. Class Counsel will address the objection in a subsequent filing. No Class Members opted out of the settlement. (Green Decl. ¶ 29).

Additionally, as necessitated by 28 U.S.C. § 1715(d), more than ninety days have elapsed since notice of the settlement for any governmental agency to object or intervene. No objections or intervention requests have been made.

**C. The Substantive Terms of the Settlement are Fair and Merit Final Approval**

Final approval should be granted to the Settlement because its terms are fair and reasonable. Ultimately, the decision whether to grant approval to a settlement of a class action is a matter left to the discretion of the trial court. *See Castro v. Zenith Acquisition Corp.*, 2007 WL 81905, at *1 (N.D. Cal. Jan. 9, 2007). In exercising that discretion, the Court should bear in mind that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit has held that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). An evaluation of the benefits under any proposed settlement "must also be tempered by the recognition that any compromise involves concessions on the part of all the settling parties. Indeed, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *In re NVIDIA Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 24973, at *16 (N.D. Cal. Mar. 18, 2009) (quoting *Officers for Justice*, 688 F.2d at 624).

This proposed Settlement satisfies the foregoing criteria. The terms of the Settlement provide Class Members with meaningful relief that addresses the precise alleged legal injury (a claimed misrepresentation regarding the value of Apple gift cards) that was alleged in the Second Amended Complaint. (*See, e.g.*, Dkt. No. 18 ¶ 5). Unlike class settlements that release class members' claims for mere illusory relief, here the recovery provides each Class Member who submitted a valid claim with a 100% refund of the purchase value of their gift card from the $1.8 million Gross Settlement Amount. At the Class Member's election, payment will be provided by paper check, direct deposit, or e-check.

The Settlement Agreement's consideration is fair and reasonable. To be fair, a settlement need not reimburse class members for all their claimed damages or even a majority of that amount. This is because the very nature of a compromise that takes into account the risks of continued litigation makes the offering of even vastly reduced consideration in compromise of the disputed claims perfectly proper. Here, the settlement provides far more than vastly reduced consideration. Indeed, the $1.8 million in settlement consideration amounts to over 71% of the damages calculated by Plaintiffs' expert. *See* Hawkins Decl., at ¶ 9. This percentage far exceeds the range of settlement consideration amounts approved by this and other courts, particularly in light of the contentious and uncertain outcome of this complex and protracted action. *See, e.g.*, *Scott v. HSS Inc.*, 2017 WL 7049524, at *6 (C.D. Cal. Dec. 18, 2017) (approving as fair class action settlement that provided settlement consideration amounting to 3.9% of recoverable damages at trial); *McMahon v. Tuesday Morning, Inc.*, 14-cv-05547-EMC, ECF No. 82 at 2:2-10 (N.D. Cal. Feb. 23, 2017) (approving settlement amount that was 4.75% of estimated potential liability); *In re Omnivision Techs.*, Inc., 559 F. Supp.2d 1036, 1042 (N.D. Cal. 2008) (class settlement providing consideration of between 6-9% of potential recovery at trial was inherently fair and reasonable); *McPhail v. First Command Fin. Planning*, Inc., 2009 U.S. Dist. LEXIS 26544, at *21–22 (S.D. Cal.

Mar. 30, 2009) ("the result achieved, a 7% recovery of the estimated damages, falls within the range of typical recoveries in complex securities class actions"); *Nichols v. SmithKline Beecham Corp.*, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005) (approving settlement that represented between 9.3% and 13.0% of claimed damages); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd.* Co., 2:12- cv-03824, ECF No. 665 (E.D. Pa. Sept. 15, 2014) (approving settlement in complex antitrust pharmaceutical action where "[t]he Settlement amount—$15 million—is reasonable in light of the damages estimates, which were between $23 million and $1 billion, [and] the risks of litigation that I have described").

In exchange for the $1.8 million in settlement consideration, Class Members will release their claims against Apple and the other defined Released Persons. *See* Settlement Agreement at Definitions ¶¶ V-W; *Id.* at ¶¶ 8.1-8.2. The Settlement Agreement properly tailors this release of claims to cover those claims related to the factual allegations in the SAC. *See Id.* at Definitions ¶ V.   These claims encompass not only claims against Apple, but also claims based on the factual allegations in the SAC against certain non-party retailers and integrators.   Such "[r]eleases of non-parties in class action settlements are readily approved and enforced." *Eisen v. Porsche Cars N. Am., Inc*., 2014 U.S. Dist. LEXIS 14301, *26-27 (C.D. Cal. Jan. 30, 2014); *Negrete v. Allianz Life Ins. Co. of N. Am*., 2015 U.S. Dist. LEXIS 168586, *39 (C.D. Cal. Mar. 17, 2015); *see, e.g.*, *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 951 (N.D. Cal. 2012) (enforcing release for non-party banks).

The Settlement's bargained-for release of claims, therefore, is fair, reasonable, and supports final approval because "a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006).

Further, the Settlement is the result of arms-length negotiations between the parties. Indeed, before reaching a settlement, the Parties engaged in a full-day mediation session before an experienced neutral mediator, Hon. Irma E. Gonzalez (Ret.). Hawkins Decl. at ¶ 7. At the end of the mediation session, the mediator made a mediator's proposal, which the Parties ultimately accepted. *Id.* The fact that the Parties chose to accept the mediator's proposal, which reflected "the settlement terms the mediator believed were fair and reasonable" rather than an amount determined by the parties, also weighs in favor of final approval. *See Farrar v. Workhouse Group Inc.*, 2023 WL 550505981, *5 (C.D. Cal. July 24, 2023); *Garcia v. Schlumberger Lift Solutions*, 2020 WL 6886383, *13 (E.D. Cal. Nov. 24, 2020).

There is no set formula to determine whether a proposed settlement meets fairness and reasonableness criteria needed for judicial approval. Instead, "[t]o determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (citation and internal quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Here, analysis of these factors demonstrates that final approval should be granted.

MEMORANDUM OF POINTS AND AUTHORITIES

**1. The Vigorously Disputed Strength of Plaintiff's Case and the Risk, Complexity, and Likely Duration of Further Litigation Supports the Reasonableness of the Settlement.**

Basic to the process of deciding whether a proposed compromise is fair and equitable "is the need to compare the terms of the compromise with the likely rewards of litigation." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 389 (C.D. Cal. 2007) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ("To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." (citations omitted)). "In so doing, a court must 'apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Acosta*, 243 F.R.D. at 389 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

Although Class Counsel believed fully in the merits of the case, it is undeniable that real obstacles were present that could have precluded any recovery. This much is confirmed by reviewing the briefing on Plaintiff's motion for class certification (Dkt. No 59). Apple strenuously opposed class certification arguing, *inter alia*, that there is a *de minimis* risk that iTunes Gift Cards will be compromised by third party theft; that a reasonable consumer may not find this risk material, such that individualized proof of reliance is necessary; and that putative class was unmanageable and overbroad because it did not attempt to exclude class members who were never injured, were not injured by any act or omission by Apple, or were already made whole through other means. (Dkt. No. 69). Apple further argued that Plaintiff was neither a typical nor adequate class member because she did not read the gift card package containing the alleged misrepresentations and omissions and because she continued buying gift cards even after she learned of the alleged risk of third party theft. *Id.* Apple further argued that Plaintiff could not certify a

MEMORANDUM OF POINTS AND AUTHORITIES

nationwide class or California class after July 2020, when Apple updated its gift card terms and conditions to select Virginia law as the governing law. *Id.* Apple has further represented that it has strong summary judgment arguments, including that: (1) the applicable terms of use disclaim liability for loss or damage resulting from cards that were lost, stolen, or used without permission; (2) some of the putative class members' claims are barred by the applicable statutes of limitation; (3) Apple has no duty to disclose with respect to the CLRA because any risk of fraud does not relate to the central function of a gift card; and (4) gift card credit redeemable only for digital content is not a tangible good or service actionable under the CLRA. And even if Plaintiff were able to certify a class and prevailed through summary judgment and trial and was awarded damages, recovery could be delayed by years if there was an appeal. Thus, Plaintiff and the Class faced a real risk that the Court (on summary judgment) or a jury (at trial) would find that Plaintiff or the Class's claims fail as a matter of law or would interpret the gift card's disclaimer and terms of use in a manner unfavorable or fatal to the Class's claims.

There exists a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Although both Apple and Class Counsel were and remain prepared to litigate the action to trial and through appeal, the Class would have faced several hurdles—including a motion for decertification and/or a possible petition to appeal any class certification order pursuant to Rule 23(f), if the court were to grant the pending motion for class certification; summary judgment motions; and other possible appeals—before even reaching trial. Further, "[a]s in any case, there is a substantial risk of losing at trial." *Munday v. Federal Navy Credit Union*, 2016 WL 7655807, at *8 (C.D. Cal. Sept. 15, 2016).

There is little doubt that continued litigation of this case through any appeal of any certification order or motions for decertification, summary judgment, and trial would be costly and fraught with risk. The trial itself would be expensive,

complex, and uncertain. Further, it is likely that any trial outcome would be vigorously challenged on appeal. According to the Ninth Circuit's "Frequently Asked Questions," a civil appeal takes approximately from the notice of appeal to oral argument and an additional 3 to 12 months from the time or argument to the time of a decision.[2] Thus, without a settlement, the Class faced real and uncertain hurdles as well as a significant and meaningful delay in obtaining any redress.

Given this context, procedural posture, and history, the proposed Settlement, which provides Class Members with a $1.8 million recovery, is unquestionably fair and worthy of final approval. The first and second factors, therefore, favor approval of the Settlement Agreement.

## 2. The Risk Of Maintaining Class Action Status Throughout Trial And Appeal Also Supports Final Approval.

A closely related factor requires the Court to assess the likelihood that Plaintiff can obtain and maintain certification of the Class through the duration of trial and any appellate review. *See Staton*, 327 F.3d at 959.

Here, Plaintiff moved to certify a nationwide class and a California subclass pursuant to Rule 23(b)(3) and an issue class pursuant to Rule 23(c)(4). Plaintiff's theory of liability on class certification was that Apple knew that certain iTunes Gift Cards were compromised by redemption attempts prior to the gift card's activation at the point of sale, that the risk of total loss with respect to these specific gift cards was not *de minimis*, and that Apple failed to disclose this material information to the purchasers of those specific gift cards. (ECF No. 59). Apple vigorously opposed certification arguing, *inter alia*, that there is a *de minimis* risk that iTunes Gift Cards will be compromised by third party theft; that a reasonable consumer may not find this risk material, such that individualized proof of reliance is necessary; and that putative class was unmanageable and overbroad because it did not attempt to

---

[2] https://www.ca9.uscourts.gov/general/faq/ (Last visited January 25, 2024).

exclude class members who were never injured, were not injured by any act or omission by Apple, or were already made whole through other means. (ECF No. 69). Apple also argued that Plaintiff was neither a typical nor adequate class member because she did not read the gift card package containing the alleged misrepresentations and omissions and because she continued buying gift cards even after she learned of the alleged risk of third party theft. *Id.* Apple further argued that Plaintiff could not certify a nationwide class or California class after July 2020, when Apple updated its gift card terms and conditions to select Virginia law as the governing law. *Id.*

Given the hotly contested class certification arguments, the risk to Plaintiff and the Class Members of having the Court deny certification, in whole or in part, and if granted, having the a favorable class certification order scrutinized anew on a motion to decertify or on appeal cannot be ignored. The third factor, therefore, also supports final approval of the Settlement.

### 3. The Amount Offered In Settlement Is Reasonable And Supports Final Approval

The amount offered as settlement consideration is reasonable, fair, and supports final approval. The Settlement Agreement calls for Apple to pay $1.8 million in settlement consideration. As detailed above, this amount corresponds to over 71% of the potential damages calculated by Plaintiff's expert, thereby placing it well above a reasonable range when measured against the damages sought by the Class at trial and the risks faced by continued litigation. The Settlement amount is also entirely non-reversionary and payable to all Class Members who submit a valid claim form. The fourth factor thus also supports final approval.

### 4. The Advanced Stage Of The Proceedings Supports Final Approval

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. Unquestionably, the Parties had an ample basis and record upon which to

entertain settlement discussions. By the time this Settlement was reached, the Parties had briefed two rounds of motions to dismiss; completed substantial fact discovery, including thousands of pages of document discovery and numerous depositions; and fully briefed class certification. *See* Hawkins Decl. at ¶ 8. In addition to the extensive factual record, the Parties had the benefit of a full-day mediation session before an experienced mediator, Hon. Irma E. Gonzalez (Ret.). *Id.* at ¶ 7. Armed with this wide array of information, counsel for the Parties were more than adequately equipped to entertain and properly weigh any settlement discussions and offers. This factor favors final approval of the Settlement Agreement.

### 5. The Experience And Views Of Counsel Favor Final Approval

As courts in the Ninth Circuit have recognized, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re American Apparel, Inc. v. Shareholder Litig.*, 2014 WL 10212865, at *14 (C.D. Cal. July 28, 2014) (citation omitted). This presumption is justified because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (citation omitted). Class Counsel have a documented record and experience in litigating class actions, as the Court found in appointing them Class Counsel. (Dkt. No. 94). It is Class Counsel's view, based on their experience and knowledge of this case, that this Settlement is fair, reasonable, and furthers the interests of the members of the Class. *See* Hawkins Decl. at ¶¶ 15-18. Thus, this factor favors final approval.

### 6. The Reaction Of The Class Supports Final Approval

The Class was provided notice of the proposed Settlement in accordance with the Court-approved Notice Plan. *See* Green Decl. at ¶¶ 9-20. In response, the reaction of the Class has been positive. As a result of the supplemental media campaign, thousands of potential Class Members clicked the link to view the

MEMORANDUM OF POINTS AND AUTHORITIES

settlement website prompting hundreds of potential Class Members to submit claims. (*Id.* ¶ 17). More to the point, with an estimated 29,570 potential Class Members, only one individual filed an objection to the Settlement (Dkt. No. 106) which the Parties contend has no merit.[3] Class Counsel will separately file their response to the objections. Class Counsel hereby incorporates by reference their response. For the reasons set forth in the response, the objection should be overruled and should not delay final approval.

## III.    ALLOCATION AND DISTRIBUTION OF SETTLEMENT FUNDS

Based on the allocation and distribution of the Settlement Amount set forth in the Settlement Agreement, Class Representative and Class Counsel request the Court approve the following payments:

| Settlement Amount | $1.8 million |
|---|---|
| Total Class Payments | Approx. $101,403.41 |
| Class Counsel's Attorneys' Fees | $600,000 |
| Class Counsel's Costs | $22,653.30 |
| Class Representative Service Award | $10,000 |
| Administrative and Notice Costs | $204,000 |
| **Remaining Settlement Amount to Cy Pres**[4] | Approx. $861,943.29 |

///

///

---

[3] The lone objector is represented by counsel who separately represents an overlapping putative class action litigation against Target, *Chen v. Target*, No. 0:21-cv-1247 (D. Minn).

[4] The Parties are meeting and conferring regarding a proposed *cy pres* recipient and will submit a supplemental declaration to the Court regarding their proposal.

## IV.    CONCLUSION

The requisites of Rule 23(e) have been satisfied. The Settlement is fair, adequate, and reasonable. The Class Representative and Class Counsel have adequately represented the Settlement Class; the settlement was negotiated at arm's length between experienced counsel with the experience of a retired District Court Judge, Hon. Irma E. Gonzalez (Ret.); and the relief provided to the Settlement Class is adequate, taking into account the costs, risks, and delays of further litigation, trial and appeals. Fed. R. Civ. P. 23(e)(2)(A)-(C)(i). The additional factors of Rule 23(e)(2)(C)(ii)&(III) – the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, and the terms of any proposed award of attorney's fees, including timing of payment – are also satisfied as shown by the record and applicable case law. The Settlement otherwise treats all Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D).

There was no opposition to Plaintiffs' Preliminary Approval Motion. (Dkt. No. 92). The Notice process was successful. No government agency has objected to or commented against the Settlement and only one individual filed an objection to the Settlement which is without merit. All aspects of Rule 23(e) have been fulfilled. For all these reasons, the Court should grant Plaintiff's final approval motion and enter an order of final approval of the Settlement.

Dated: January 31, 2024            **JAMES HAWKINS APLC**

By:    /s/ Mitchell J. Murray
       James R. Hawkins
       Christina M. Lucio
       Mitchell J. Murray

       Attorneys for Plaintiff