# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL SHAY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>APPLE INC., a Delaware corporation; APPLE VALUE SERVICES, LLC, a Virginia limited liability corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 3:20-cv-1629-JO-BLM<br><br>Assigned to: Hon. Jinsook Ohta<br><br>**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARD** |

ORDER GRANTING FINAL APPROVAL

## I.   INTRODUCTION

Plaintiff Rachel Shay ("Plaintiff"), on behalf of the conditionally certified Settlement Class, moves for final approval of a non-reversionary common fund settlement amount of $1,800,000, as well as for allocations toward an award of attorneys' fees and costs to Class Counsel, approval of class administration fees, and a class representative service award to her in this action, initiated May 28, 2020, against Apple Inc. and Apple Value Services (herein referred to collectively as "Defendants" or "Apple"). (*See* Notice of Motion and Motion for Order Granting Order for Final Approval ["Motion for Final Approval"], ECF No. 108.)

## II.   BACKGROUND

In this Action against Defendants, Plaintiff asserted the following claims: (1) Violations of the Consumers Legal Remedies Act; (2) Violations of the Unfair Competition Law; (3) Negligent Misrepresentation; and (4) Implied Warrant of Merchantability. (*See* ECF No. 18, Second Amended Complaint ["SAC"].) On May 3, 2021, the Court Dismissed Plaintiff's Claim for Breach of Implied Warranty of Merchantability, and, after Defendants filed their Answer to Plaintiff's remaining claims, the Parties began exchanging discovery. (*See* ECF No. 92-2, ¶¶4–7.) Following extensive discovery, Plaintiff moved for, and Defendants subsequently opposed, class certification. (*Id.*, ¶ 8–9.) Following oral arguments on the motion, but prior to the Court issuing a final decision, the Parties agreed to attend mediation before the Hon. Irma E. Gonzalez (Ret.). (*Id.*, ¶ 10.) Though mediation failed to immediately produce a mutually agreeable settlement, the Parties continued to negotiate under the guidance of Judge Gonzalez, and ultimately accepted a proposal by Judge Gonzalez. (*See* Declaration of James R Hawkins in Support of Motion for Final Approval of Class Action Settlement ["Hawkins Decl."], ECF No. 108-2, ¶ 7; ECF No. 92-2, ¶ 10.)

The proposed settlement class in this action consists of consumers who purchased Apple App Store & iTunes gift cards in California from May 2017 to March 2018 and in the United States from March 2018 to July 2020 which were (1) prior to purchase, subject to fraudulent pre-activation redemption attempts by unknown third parties, and (2) after purchase, fraudulently drained of value by said unknown third parties, and who were subsequently denied a refund or replacement gift card. (Settlement Agreement and Release ["Settlement"], attached as Exhibit 1 hereto, at ¶ EE.)

On October 6, 2023, the Court granted Plaintiff's Motion for Preliminary Approval of the Settlement Agreement and Release. Specifically, the Court preliminarily found that the Settlement was "fair, reasonable and adequate," and the Settlement "resulted from arm's length negotiations, has no obvious deficiencies, does not grant preferential treatment, and appeared to be within the range of possible approval." (*See* ECF No. 94, ¶ 1.) The Court also found that, for settlement purposes, the prerequisites for a class action under Fed. R. Civ. P. 23(a) were satisfied and that the action was maintainable as class action under Fed. R. Civ. P. 23(b)(3). (*Id.*, ¶¶ 3-4, 6.) In addition, the Court approved the notice plan, finding that it "me[t] the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and all due process requirements, is the best notice practicable under the circumstances; and constitutes due and sufficient notice to all persons entitled to notice." (*Id.*) No opposition was filed to the Motion for Preliminary Approval.

On December 4, 2023, Plaintiff filed a Motion for Award of Attorneys' Fees, Costs, and Class Representative Service Award. (*See* ECF No. 95 "Motion for Attorneys' Fees".) Apple filed an opposition to the Motion for Attorneys' Fees on January 3, 2024 (*see* ECF No. 105) and Plaintiff filed a reply on January 10, 2024 (*see* ECF No. 107.)

On January 8, 2024, a potential class member, Hassan Chaalan, objected to the terms of the Settlement, arguing that (1) the release of claims is too broad in that it releases claims against non-party retailers arising from the relevant facts; (2) notice was inadequate; (3) the claims process was inadequate; and (4) the class was not adequately represented. (*See* Hasssan Chaalan's Objection to Proposed Class Settlement ["Objection"], ECF No. 106.) On January 31, 2024, Plaintiff moved for Final Approval, and shortly thereafter, filed a Response in Opposition to Chaalan's Objection. (*See* Motion for Final Approval; Plaintiff's Response in Opposition to Objection ["Opposition to Objection"], ECF No. 112.)

The Court held the final fairness hearing on February 28, 2024, during which the Parties expressed that they were still finalizing their *cy pres* proposal. The Court now issues its decision as follows: (1) Plaintiff's Motion for Final Approval is granted; (2) Plaintiff's Motion for Attorneys' Fees, Costs, and Class Representative Service Award is granted, as modified; and (3) Objector Chaalan's objections are overruled. The Court also approves the Parties' proposal to distribute 70% of the remaining Unclaimed Settlement Amount to the Consumer Federation of America ("CFA") and 30% of the remaining Unclaimed Settlement Amount to the Consumer Federation of California ("CFC").

## III. ANALYSIS

### A. Jurisdiction

This Court has subject matter jurisdiction over this litigation (the "Action") under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act. It also concludes that it has personal jurisdiction over the Parties to the Settlement, including Plaintiff, all members of the Settlement Class, and Defendants by virtue of their business practices in California, and at the very least by virtue of their failure to contest such jurisdiction in this action.

1

2

## B. Notice

3      Notice is adequate if it is "reasonably calculated, under all of the
4  circumstances, to apprise interested parties of the pendency of the action and afford
5  them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No.*
6  *1*, 623 F.2d 1338, 1351 (9th Cir. 1980). The notice process the Court ordered and the
7  parties followed involved direct Mail Notice and/or Email Notice to Known
8  Settlement Class Members—those for whom Apple had an email address or physical
9  address, as a result of their prior attempts to report the fraudulent redemption of an
10  Eligible Gift Card[1]—and Publication Notice for Unknown Class Members. (*See*
11  Declaration of Julie N. Green Regarding Execution of Notice Plan and
12  Administration Process in Support of Motion for Final Approval of Class Action
13  Settlement ["Green Decl."], ECF No. 108-3, ¶¶ 13-18 & Exh. A, B, C, D, E, F and
14  G.) Email Notice was sent to 960 Known Settlement Class Members for whom Apple
15  located an email address and Mail Notice was sent to 81 Known Settlement Class
16  Members for whom a valid mailing address was located but not an email address.
17  (*See id.* ¶¶ 13-16 & Exh. D, E.) Of the 960 Known Settlement Class Members who
18  received Email Notice, only 20 emails bounced and were determined to be ultimately
19  undeliverable, and therefore were sent a Mail Notice. Of the 81 Known Settlement
20  Class Members who received Mail Notice, only 5 were *ultimately* undeliverable
21  because no new address was found through skip trace, or because the notice was
22  returned a second time. (*See id.*)

23

24      In addition, the Settlement Administrator implemented a multi-channel digital
25  advertising campaign that included paid search using sponsored links on Google and
26  Bing platforms, a social media campaign delivering advertisements through
27  Facebook and Instagram Ad Exchange platforms, and a Nationwide Press Release

28

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to the, in the Settlement.

distributed to 900 associated press outlets and 452 influencers. (*See id.*, ¶¶ 17-18, Exh. F, G.)

The Court has determined that the notice issued here was reasonably calculated to apprise interested parties of the pendency of this action and to afford them the opportunity to object. *See* Fed. R. Civ. P. 23(e). Accordingly, such notice satisfies the due process requirements of the Fifth Amendment. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *Brown v. Ticor Title Inc.*, 982 F.2d 386, 392 (9th Cir.1992); *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

### C. Certification of the Class

At the preliminary approval stage, the Court certified the following Settlement Class under Federal Rule of Civil Procedure 23(c) for settlement purposes:

> "Nationwide Class" shall mean all consumers who purchased an Eligible Gift Card in the United States from March 2018 to July 2020, whose Eligible Gift Card was subject to a redemption attempt prior to activation, whose gift card was redeemed by an unknown third party prior to attempted redemption by the consumer or intended user, and who did not receive a refund or replacement gift card from Defendants or any third party.

> "California Subclass" shall mean all consumers who purchased an Eligible Gift Card in the State of California from May 2017 to February 2018, whose gift card was subject to a redemption attempt prior to activation, whose gift card was redeemed by an unknown third party prior to attempted redemption by the consumer or intended user, and who did not receive a refund or replacement gift card from Defendants or any third party.

(Settlement, ¶¶ EE.a–b.) The Settlement Class excludes Defendants, their parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which Defendants have a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members. (*Id.* at ¶ EE.c)

As there is no indication that anything has changed in terms of the requirements for a settlement-related certification, the Court now makes the certification of the Settlement Class final (for settlement purposes) for the reasons addressed in connection with the preliminary approval proceedings. (*See* ECF No. 94, ¶¶ 2-4; ECF No. 92-1, at pgs. 11-16.)

### D. The Merits of the Settlement

#### 1. Legal Standards Governing Settlement

Settlement of a class action lawsuit requires court approval. *See* Fed. R. Civ. P. 23(e). The court must find that a proposed settlement is fundamentally fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The Ninth Circuit previously instructed district courts that, in determining whether or not to approve a class settlement in accordance with Rule 23(e), the court could consider any or all of the following factors, if applicable:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). That list was not intended to be exhaustive, and a court is required to consider the applicable factors in the context of the case at hand. *See Officers for Justice*, 688 F.2d at 625.

Amendments to Rule 23 of the Federal Rules of Civil Procedure have formalized the consideration somewhat further. Now, in order for a court to determine that a settlement is "fair, reasonable, and adequate," the court must first consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3)[2]; and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These rule-based mandatory considerations overlap with factors previously established by Ninth Circuit as permissible to consider. Consideration of the factors the Ninth Circuit has customarily employed remains appropriate after the recent Rule 23 amendments. *See, e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021); *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

In addition to fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits. *See, e.g.*, *Officers for Justice*, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."). While balancing all of these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* The court, in evaluating the agreement(s) of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact. *See id.*

---

[2] Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

The court must determine the fairness of the settlement as a whole and cannot consider its individual components as severable parts; "[t]he settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026. *Id.* Thus, the court may not delete, modify, or rewrite particular provisions of a settlement. *See id.* "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

### 2. The Settlement is Fair

#### a. The Settlement is Fair, Adequate, and Reasonable

##### i. The Strength of the Case

Plaintiff's remaining claims, which are to be resolved by the Settlement, have twice survived Defendants' motions to dismiss. (*See* ECF No. 92-2, ¶ 5–6; ECF No. 21.) Defendants' willingness to settle these claims for $1.8 Million, and in particular, to refund one hundred percent of lost funds to all class members who have submitted a valid claim, suggests Defendants recognize the risk they would face at trial. Although Plaintiff and Class Counsel continue to assert the strength of Plaintiff's case on the merits, they also acknowledge the inherent obstacles to successful class litigation, including the difficulty in achieving and maintaining class certification, substantially increased costs, and drawn-out length of court proceedings. The uncertainties in outcome, expense, and duration of this litigation are ameliorated by this Settlement, and Plaintiff and Class Counsel believe this Settlement is fair, adequate, and reasonable. (*See* ECF No. 108-2 Hawkins Decl., ¶¶ 10, 17–18.) The Court is likewise convinced that this factor favors a finding of reasonableness.

##### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement. *See Dunleavy v. Nadler (In re Mego*

*Fin. Corp. Sec. Litig.*), 213 F.3d 454, 458 (9th Cir. 2000); *see also Nat'l Rural, 221 F.R.D.* at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

This case, having been filed on May 28, 2020, is approaching four years of litigation, and has been subject to multiple dismissal attempts and an attack on certification by Defendants. Plaintiff's investigation required the evaluation of thousands of documents produced by Defendants and multiple depositions of Defendants. Because the parties initiated mediation and settlement negotiations prior to the Court's ruling on class certification, no class has yet been certified outside of the settlement context.

Even if the class had been certified, it would likely need to survive a motion for summary judgment and would still need to overcome its burden of proof and Defendants' affirmative defenses at trial, as well as any challenges raised on appeal. Such extended proceedings would delay and possibly diminish Plaintiff's and the Class's opportunity to obtain relief. Likewise, attorneys' fees and costs could have ended up consuming a large portion of any eventual recovery. Against all of this, the Settlement offers the parties immediate and certain relief, especially considering Defendants' concession that all Class members deemed Valid Claimants will be made entirely whole. This factor therefore weighs in favor of approving the Settlement.

### iii. The Risk of Maintaining Class Action Status

As discussed above, the Court did not rule on the class certification motion due to the Parties' decision to mediate Plaintiff's claims and negotiate a settlement. Nevertheless, there is a risk that the Court would have narrowed the proposed classes, that Defendants would have filed a petition to appeal pursuant to Rule 23(f), or of decertification at a later stage. In contrast, this Settlement provides for provisional certification and ensures each member of the class has an equal opportunity to

achieve relief through Plaintiff's lawsuit. For this reason, this factor also favors final approval of the Settlement.

### iv. The Amount Offered in the Settlement

The Court's evaluation of a proposed settlement looks primarily to compare "the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Thus, in determining whether the relief offered by way of settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement to the parties' "estimates of the maximum [recovery] in a successful litigation." *See Dunleavy*, 213 F.3d at 459; *see also Rodriguez*, 563 F.3d at 965. *But see Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) ("While a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action.") (omitting internal citation).

Plaintiff has achieved a non-reversionary settlement in the total gross amount of $1,800,000. As noted at the preliminary approval stage, Plaintiff estimates a potential recovery of $2.52 million. Thus, at $1.8 million, the Settlement Amount in this case represents approximately 71% of the Settlement Class's potential recovery, making the Settlement Amount a fair and reasonable result for the Settlement Class considering the risks and expenses avoided. (*See* ECF No. 92-1, at 6.) Because the Settlement is designed to provide refunds for the fraudulently drained gift cards, class members who provided proof of purchase are being made entirely whole, without having to engage in an even lengthier litigation process. Nor is there any risk here of overcompensation. Because the Settlement adequately remedies all known class members' harms, provides for present litigation and administrative costs, and provides Plaintiff with compensation for her personal efforts, the Court believes that

1    the amount offered in settlement reflects a fair compromise and weighs in favor of
2    final approval of the Settlement.

3                 v.   The Extent of Discovery Completed and the Stage of
4                       the Proceedings

5       Extensive discovery and a thorough investigation are essential before a Class
6    Plaintiff can reasonably assess strengths and value to broker a fair class settlement.
7    It was established at the preliminary approval stage that the Parties engaged in
8    substantial fact discovery, including thousands of pages of document discovery and
9    numerous depositions, completed significant motion practice including two rounds
10    of motions to dismiss and a motion for class certification, and attended a full-day
11    mediation. (*See* Hawkins Decl. ¶ 8d; ECF No. 92-2, ¶ 7.) In total, Plaintiff issued and
12    Apple answered thirty-one interrogatories, thirty-one requests for production, and
13    thirty-eight requests for admission. Apple issued and Plaintiff responded to twenty-
14    two interrogatories, eighteen requests for production, and sixteen requests for
15    admission. (*Id.*) Apple produced and Plaintiff reviewed more than 2,500 documents,
16    consisting of approximately 20,500 pages. Class Counsel deposed three Rule
17    30(b)(6) designees for Apple, and Apple's counsel also deposed Plaintiff. (*Id.*)

18
19       Class Counsel's investigation was sufficient to clearly understand the strengths
20    and weaknesses of all claims and defenses raised and to contemplate the risks to both
21    sides incurred by continued litigation. (*See* Hawkins Decl. ¶ 8-10.) While more
22    discovery may have been taken – at some expense – had this case proceeded, the
23    information Plaintiff and her counsel obtained allowed them to feel comfortable
24    about their ability to value the potential recovery. (*See, e.g.*, Hawkins Decl. ¶ 13.) At
25    this stage, the Court sees no reason to doubt that Plaintiff was in a sufficient position
26    to know the strengths (and weaknesses) of her case, its value, and whether or not the
27    settlement figure "output" properly accounted for those "inputs." As such, this factor
28    also favors final approval of the Settlement.

### vi. The Experience and Views of Counsel

In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should rely upon, the judgment of experienced counsel for the parties. *See Nat'l Rural*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Throughout the litigation, Plaintiff was represented by counsel with ample experience handling class action/complex litigation. (*See* ECF No. 92-1 at p. 13-14.) Class Counsel utilized their ample experience to thoroughly investigate and evaluate the strength of Plaintiff's claims and Defendants' defenses. (*See id.* at p. 17-18.) Having conducted such an investigation and relying on experience with similarly complex class actions, Class Counsel considers the instant Settlement to be fair, adequate, and reasonable. (*See* Hawkins Decl. ¶¶ 15.) This factor, therefore, weighs in favor of approving the Settlement.

### vii. The Reaction of the Members of the Class to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action [sic] are favorable to the class members." *Nat'l Rural*, 221 F.R.D. at 529. Here, the Parties received only a single objection and zero opt-outs, in comparison with the 1,071 valid claims which will result in Class Member compensation. (Green Decl. ¶¶ 28, 31.) Therefore, this factor strongly supports approving the Settlement.

viii. Signs of Collusion

Based on the record before the Court, nothing explicitly or implicitly suggests the instant Settlement was in any way the product of collusion. In particular, the Court notes the absence of the signs identified by the Ninth Circuit as potentially presenting such an issue. This settlement agreement is the product of good faith, arm's length negotiations, which were informed and guided by the neutral perspective of a respected Mediator—Hon. Irma E. Gonzalez (Ret.)—and during these negotiations, Class Counsel continued to zealously advocate on behalf of the Plaintiff and the Class even in working towards a mutually agreeable compromise with Defendants. (*See* Hawkins Decl. ¶ 7; ECF 92-2, ¶ 35.) As a result, the Court safely concludes that there is no concern here with respect to potential collusion.

ix. Adequate Representation of the Class (Rule 23(e)(2)(A))

Representation of a class will be adequate where Plaintiff and Class Counsel have no conflicts of interest with the members of the class, and where those representative parties have taken steps to vigorously prosecute the action on the class's behalf. *Espinosa v. Ahearn* (In re *Hyundai & Kia Fuel Econ. Litig.*), 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1020). Such conflicts of interest are apparent where higher value claims of some class members are "compromised by a class representative with lesser injuries who may settle more valuable claims cheaply," or where subgroups among the class have "differing, even adversarial, interests in the allocation of limited settlement funds." *Partl v. Volkswagen, AG* (*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*), 895 F.3d 597, 607–08 (9th Cir. 2018).

Objector Chaalan has not challenged Plaintiff and Class Counsel's prosecution of this action, and so it is presumed to be sufficient. Further, Chaalan's contention that the Settlement unfairly releases class members' claims against non-party

retailers does not persuade the Court that any conflict of interests exists. Any such claims against these non-party retailers concern an identical injury and ultimately arise from the same facts as those claims against Defendants, and failure to instate such a release would allow for potential unlawful double recovery. Further, Chaalan fails to identify any conflict of interest presented by the Notice and Claims Processes. Because class payments consist of refunds from purchased gift cards, the amount each class member will receive is tailored to that member's specific harm and in no way prejudices others in the class.

Therefore, the Court concludes Plaintiff and Class Counsel adequately represented the class. They achieved a significant monetary outcome by way of the Settlement. There is nothing to suggest inadequacy.

x.  Arm's-Length Negotiation (Rule 23(e)(2)(B))

As discussed above, settlement followed a mediation and further post-mediation negotiations, all under the guidance of an experienced mediator and retired Federal Judge. (*See* Hawkins Decl. ¶ 7.) The Court is consequently satisfied that the Settlement resulted from arm's length negotiations.

xi. Adequate Relief for the Class (Rule 23(e)(2)(C))

The Court has already considered "the costs, risks, and delay of trial and appeal." With respect to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," known class members will receive full relief regardless of whether they submitted a claim, as will unknown class members who provided adequate proof of purchase of an Eligible Gift Card (those subject to reactivation redemption attempts during the Class Period). The Settlement is also non-reversionary, with uncashed checks (if any) ultimately reverting to a cy pres.

The Court discusses the proposed award of attorneys' fees in the following section. For purposes of settlement approval, however, there is nothing glaring in the

Settlement insofar as attorneys' fees are concerned that causes the Court to pause in giving its approval. The Court is not aware of any agreement amongst the parties other than their Settlement. There is nothing here to trouble the Court in connection with a determination that the Settlement is fair, adequate, and reasonable.

### b.  Resolution of Objections

After a court issues preliminary approval of a proposed class-action settlement, class members have the opportunity to object. Fed. R. Civ. P. 23(e)(5)(A). The objection must (1) "state whether it applies only to the objector, to a specific subset of the class, or to the entire class," and (2) "state with specificity the grounds for the objection." *Id.* Objectors must also have standing to object, and only "aggrieved" class members have standing. *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011). Thus, "[i]f [effecting the objectors' requested change] would not actually benefit the objecting class member, the class member lacks standing." *Id.* (cleaned up). Objectors must also "provide evidence to show that [they are] a class member," at least where a prior court order requires them to do so. *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF (HRL), 2011 WL 1877988, at *3 n.4 (N.D. Cal. May 17, 2011). In addition to meeting standing requirements, the objector also "bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement." *In re LinkedIn User Privacy Litig.,* 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)).

The proposed Settlement received only one objection featuring four specific challenges, which are addressed in turn. (*See* Objection, ECF No. 106.)

#### i.  Release of Claims Against Non-Parties

Objector Chaalan challenges the release terms of the Settlement, particularly the release of non-party retailers who sold Apple Gift Cards subject to fraudulent redemption, as overly broad. (Objection, ECF No. 106 at 4.)

The release of non-party retailers is common practice in cases such as this, where the released claims against these non-parties concern an identical injury arising from common facts. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590–91 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006). Here, potential claims against non-party retailers would be identical to those presently brought against Defendants, and the restrictive nature of the class limits released claims only to those who purchased gift cards subject to pre-activation attempts. Accordingly, the release terms are not overly broad.

## ii. Adequacy of Notice

Objector Chaalan challenges the use of notice by publication to reach unknown class members, in comparison with the direct mail and email notice provided to known class members who had previously complained to Apple and provided proof of purchase. (Objection, ECF No. 106 at 7.)

Under Rule 23(e)(1)(B), prior to final approval of a settlement, notice must be given to all class members "in a reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Reasonable notice is that which "is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and such notice may be made using "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(1)(2)(B). Although direct notice must be given, when possible, notice by publication may be appropriate "where it is not reasonably possible or practicable" to ascertain those members' identities. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950); *Tuttle v. Audiophile Music Direct, Inc.*, 2023 U.S. Dist. LEXIS 229241, *14–15, 17 (W.D. Wash. Dec. 26, 2023) (finding that use of publication, taken together with direct mail and direct email efforts where identities of class members were known, provided adequate notice).

The Court concludes based on the record, as discussed above, that direct notice was not practicable given the lack of contact information for unknown class members, and that the notice provided was consistent with minimum due process and the law. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 775 (9th Cir. 2022). The Court approved this plan at the preliminary approval stage and sees no reason now to withdraw that approval.

### iii. Adequacy of Claims Process

Objector Chaalan asserts that the claims process created by the Settlement is unduly burdensome because it requires unknown class members to provides proof of purchase upon filing their claim. (Objection, ECF No. 106 at 11.)

Under Rule 23, "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Essentially, a claims process may not be "so burdensome as to discourage class members from submitting claims." *Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 232 (2016). In evaluating these processes, courts have generally upheld "proof of purchase" requirements in such class action settlements, as these requirements "ensure that payment is properly made to individuals belonging to the settlement class." *Tuttle v. Audiophile Music Direct, Inc.*, 2023 U.S. Dist. LEXIS 229241, *32–33 (W.D. Wash. Dec. 26, 2023). *See e.g., Craft Brew Alliance, Inc.*, No. 17-cv-01027, 2020 U.S. Dist. LEXIS 74801, 2020 WL 1972505, at *21 (N.D. Cal. Feb. 5, 2020) (upholding a claims process that required both proof of purchase and age certification, in order "to ensure that only those who are legally allowed to purchase Kona Beers received compensation under the Settlement Agreement").

Here, although only unknown class members must provide proof of purchase at the time of filing their claim, all class members were required to provide proof of purchase at one point in the process. Known class members, who received direct

notice, provided proof of purchase at the time they first complained to Defendants. This proof of purchase requirement was successful at weeding out many fraudulent claims, which was especially important here given that this is a case "premised on fraudulent activity." (Green Decl., ¶¶ 24, 27.)

Further, any class member unable to submit proof of purchase at the settlement stage would likewise be precluded from recovery had the case proceeded to trial, for lack of proof of damages. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 130467, *43–44 (N.D. Ohio Sept. 23, 2016). Thus, the process is no more burdensome than the evidentiary requirements to recover damages at trial.

It is clear to the Court that the claims process was not unduly burdensome and was in fact both reasonable and necessary.

### iv. Adequacy of Representation

Based on his first three challenges, Chaalan asserts that Plaintiff and Class Counsel do not provide adequate representation of the class. (Objection, ECF No. 106 at 13.) As indicated above, however, the Court finds these concerns do not make representation of the class inadequate.[3]

### 3.    Cy Pres

The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307-08 (9th Cir. 1990). *Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity. *See id.*

The Settlement provides that if there are funds remaining in the Unclaimed Settlement Amount after paying the Administrative and Notice Costs and the

---

[3] *See supra* section II.2.a.iv, Adequate Representation of the Class.

Attorneys' Fees and Costs, the Parties would present a proposal to the Court regarding a *cy pres* distribution. The Parties propose distributing the remainder of the Unclaimed Settlement Amount to the Consumer Federation of America ("CFA") and the Consumer Federation of California ("CFC"). The remainder of the Unclaimed Settlement Amount will be allocated 70% to the CFA and 30% to the CFC in roughly the same proportion to the number of Eligible Gift Cards sold outside of California and the number of Eligible Gift Cards sold in California during the Class Period, and in light of Plaintiff's claim under the Consumer Legal Remedies Act. The Court finds that the proposed *cy pres* recipients have a sufficient nexus to the class claims in this Action and thus approve the proposed distribution of the remainder of the Unclaimed Settlement Amount to the CFA and CFC.

### E. Attorneys' Fees, Costs, and Service Award

Class Counsel moved for approval of their request for $600,000 in attorneys' fees, representing 33.33% of the gross settlement amount, reimbursement of $22,653.30 in costs, a class representative enhancement award of $10,000 to Plaintiff, and approval of $204,000 in settlement administration costs. Defendants filed an opposition to the attorney's fees request, arguing that Class Counsel should be awarded only twenty-five percent of the settlement amount, or $450,000. The Court awards the requested costs and the $10,000 class representative enhancement award to Plaintiff, but only $450,000 in attorney's fees, with the outstanding amount reverting to the *cy pres*.

#### 1. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, the Court is not bound by the Parties' Settlement as to the amount of fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941–43

(9th Cir. 2011). Instead, the Court must ensure that the award is reasonable. *Id.* at 941. The Court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052 (9th Cir. 2002) (cleaned up).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029. The "percentage of the fund" method is typically used.

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits made available to class members rather than the actual amount ultimately claimed. *Young v. Polo Retail*, LLC, No. C-02-4546-VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount made available) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).

If a court applies the percentage method, it will generally also calculate the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See, e.g.*, *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel

by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000).

In support of their attorneys' fees request, Class Counsel have emphasized the unusual complexity of this action, "even for a nationwide consumer class action." (Motion for Attorneys' Fees, Costs and Class Representative Service Award ["Motion for Attorneys' Fees"], ECF No. 95-1 at 7.) Plaintiff and Class Counsel also contend the Court should consider the "total settlement package" when determining the attorneys' fee award. Specifically, Plaintiff and Class Counsel argued they negotiated an award of attorneys' fees and costs to be paid by Defendants *in addition to* the settlement amount of $1,800,000 and therefore the "total settlement package" value was between $2.4 Million and $2.6 Million. (*Id.; Apple Comput., Inc. v. Superior Court,* 126 Cal. App. 4th 1253, 1269 (2005) ["The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."].) Further, Plaintiff and Class Counsel assert that the resulting settlement amount, achieved in spite of the considerable risks and complexity of subject matter in this case, provides a substantial benefit on Plaintiff and the Settlement Class and favors an award of 33.33%. *Id.* at 16. Plaintiff and Class Counsel contend that their request for fees is supported by a cross-check based on Class Counsel's lodestar. Prior to receipt of Objector Chaalan's objection and the preparation and filing of the final approval motion, Class Counsel asserts its lodestar amount was approximately $553,415, and that at the time of the Final Approval Hearing, its lodestar would surely surpass the requested $600,000. *Id.* at 20. Finally, Class Counsel asserts that as a state case being adjudicated in federal court on the basis of diversity jurisdiction, the issue of attorneys' fees ought to be governed by state law, which favors a thirty-three percent benchmark. *Id.* at 11.

Defendants dispute the applicability of state law in calculating the percentage of fees and argued at the final approval hearing that Plaintiff's own motion for attorneys' fees applied federal law. (ECF No. 105, at 6-8.) Defendants also contend Plaintiff and Class Counsel failed to prove the existence of factors warranting a fee award in excess of 25%, arguing that the case at hand is not unusually complex, and the resulting Settlement is good but not particularly exceptional, pointing to the dismissal of some of Plaintiff's claims throughout the process as evidence of the banality of the result. (*Id.* at 8-10.) Defendants assert that the mere fact that the case was taken on contingency basis and litigated for a number of years "does not justify an upward deviation," nor does the market rate for similar cases. (*Id.* at 11-12.)

In considering the Parties' arguments and the existing record, the Court agrees with Defendant. Regardless of whether federal or state law applies, the Court finds that Class Counsel recovered a common fund that confers a substantial, but not exceptional, benefit on the Settlement Class and therefore grants an award of attorneys' fees to Class Counsel of $450,000.

### 2. Litigation Costs

Class Counsel is also entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Defendants challenge the award of litigation costs in this case, in particular, the costs attributed to the use of experts. Defendants suggest that Plaintiff and Class Counsel have provided insufficient documentation to justify the extent of that use. The representative parties contend, however, that the information and analysis

provided by the experts enabled Class Counsel to obtain a favorable settlement for Plaintiff and the Settlement Class.

The Court finds that the record sufficiently establishes the reasonableness of the requested costs, including those for Plaintiff's expert expenses. The Court approves the requested amount of $22,653.30.

### 3. Class Representative Service Award

When awarding a proposed Class Representative Service Award, district courts generally evaluate "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action . . . ." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (cleaned up).

Here, Plaintiff and Class Counsel move for an award of $10,000 for Plaintiff's work on the case. The Court has reviewed Plaintiff's declaration and finds the requested award is reasonable given the actions Plaintiff took to protect the interests of the class and the amount of time and effort she expended. The absence of objections to the award by class members, including the objection by Chaalan, further suggests the award is not unreasonable.

Thus, the Court finds the award to plaintiff of $10,000 is appropriate.

### 4. Administrative and Notice Costs

CPT Group, Inc., the independent settlement administrator selected by the Parties and approved by the Court, requests $204,000 for providing notice and claims administration services as provided in the Settlement. (ECF No. 108-3, ¶¶ 32-33.)

1  Based on the Court's assessment of the administration fees and notice costs
2  associated with administering the Settlement, the Court grants the Administrative and
3  Notice Costs to CPT Group, Inc. in the amount of $204,000.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Final Approval of Class
Action Settlement and Entry of Judgment is GRANTED, Plaintiff's Motion for
Award of Attorneys' Fees, Costs, and Class Representative Service Award is
GRANTED AS MODIFIED, and the Objection of Hassan Chaalan to Proposed Class
Settlement is OVERRULED.

The Court retains jurisdiction over the Parties, including Class Members, for
the purposes of construing, enforcing, and administering the Order and Judgment, as
well as the Settlement itself.

The Court finds, pursuant to Rules 54(a) and (b) of the Federal Rules of Civil
Procedure, that Final Judgment of Dismissal with prejudice as to the Defendants
["Judgment"] should be entered forthwith and further finds that there is no just reason
for delay in the entry of the Judgment, as Final Judgment, in accordance with the
Settlement. The Clerk is DIRECTED to enter this Judgment pursuant to Federal Rule
of Civil Procedure 58.

IT IS SO ORDERED.

Dated:  _3/18/24_

_____
HON. JINSOOK OHTA
U.S. DISTRICT COURT JUDGE